# EXHIBIT A

# STATE OF NORTH CAROLINA

File No. 18976

21-CVS-

Mecklenburg _____ County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| HELEN BARBARA RYAN | |
| **Address** | **CIVIL SUMMONS** |
| **City, State, Zip** | ☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE) |

G.S. 1A-1, Rules 3, 4

| **VERSUS** | Date Original Summons Issued |
|---|---|
| Name Of Defendant(s) | |
| MECKLENBURG COUNTY and | Date(s) Subsequent Summons(es) Issued |
| THE KANIA LAW FIRM, P.A. | |

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Mecklenburg County | The Kania Law Firm, P.A. |
| c/o County Manager | Registered Agent- Richard J. Kania |
| 600 East 4th Street | 600-A Centrepark Drive |
| Charlotte                    NC  28202 | Asheville                    NC      28805 |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served.  You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued | Time | ☐ AM |
|---|---|---|---|
| James P. Galvin, Esq. | 11·24·21 | 1·09 | ☐ PM |
| Thurman, Wilson, Boutwell  Galvin, P.A. | Signature | | |
| 301 S. McDowell Street, Suite 608 | | | |
| Charlotte                    NC  28204 | ☒ Deputy CSC      ☐ Assistant CSC      ☐ Clerk Of Superior Court | | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time | ☐ AM |
|---|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | | | ☐ PM |
| | Signature | | |
| | ☐ Deputy CSC      ☐ Assistant CSC      ☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial.  The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

(Over)

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG **FILED**

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS- $18976$.

2021 NOV 24 P 1: 09

HELEN BARBARA RYAN MECKLENBURG CO.. C.S.C.

|  |  |
|---|---|
| Plaintiff, BY | ) |
|  | ) |
| VS. | ) |
|  | )  COMPLAINT |
| MECKLENBURG COUNTY and | ) |
| THE KANIA LAW FIRM, P.A. | ) |
|  | ) |
| Defendants | ) |
|  | ) |

**NOW COMES,** Plaintiff Helen Barbara Ryan, by and through the undersigned counsel, hereby submit its Complaint complaining of Defendants Mecklenburg County and The Kania Law Firm ("Kania"), seeking relief as follows:

## PARTIES AND JURISDICTION AND VENUE

1. Plaintiff Helen Barbara Ryan is a citizen and resident of Mecklenburg County, North Carolina.

2. Defendant Mecklenburg County is a Body Politic and Corporate located in Mecklenburg County, North Carolina.

3. Upon information and belief, The Kania Law Firm, P.A. is a Professional Association located in Asheville, North Carolina.

4. This is an action for negligent misrepresentation, negligence, fraud, negligent infliction of emotional distress, and punitive damage.

5. The real estate and improvements located at 4810 Drakestone Court, Charlotte, North Carolina 28037 (the "Property") is the subject matter of this Complaint.

6. This Court has proper jurisdiction and is the appropriate venue for the adjudication of Plaintiffs claims.

## FACTUAL ALLEGATIONS

7. On or about January 8, 2018, Defendants instituted a tax foreclosure under case caption 18-CVD-495 (the "Foreclosure Action") on the Property.

8. Defendant Kania was at all times relevant to this Complaint acting as the agent of Defendant Mecklenburg County for the purposes of conducting a foreclosure sale of the Property.

9. Plaintiff was not provided proper notice of the Foreclosure Action and that procedural failure is subject to a current appeal pending before the North Carolina Court of Appeals.

10. The Court of Appeals' purview regards whether the sale pursuant to the Foreclosure Action should be set aside. It will not take up the consideration of the civil damages related to the claims pled herein.

11. The instant action concerns matters outside of the consideration of the Foreclosure Action.

12. Specifically, this action concerns the conduct of the Defendants regarding their refusal to allow Plaintiff to exercise her right of redemption regarding her Property and the Foreclosure Action.

13. Conduct and dates relevant to the claims of this action include but are not limited to the following:

    a. On or about September 12, 2018, Plaintiff first became aware of the Foreclosure Action and contacted the Mecklenburg County Tax Office and was informed that she owed a past due tax amount of $21, 438.25.

    b. On or about September 14, 2018, Plaintiff paid (via telephone) $21,438.25 and was told by the Mecklenburg Tax Office's authorized representative that this amount constituted payment in full. The payment was debited from Plaintiff's account that day and was posted as received on September 17, 2018.

    c. On September 18, 2018, the Defendants proceeded to conduct the foreclosure sale on the Property anyway.

    d. On October 15, 2018, a Jacob Belk filed a notice of final upset bid in the amount of $407,925.00.

    e. On October 31, 2018, Jacob Belk was the first to inform Plaintiff that a foreclosure sale was conducted on the Property.

    f. After several unsuccessful attempts to make live contact with a representative from Kania's office, Plaintiff sent an email on November 23, 2018 communicating that the tax debt regarding the Property had been paid and that the foreclosure sale proceeded in error and that she otherwise wished to exercise her redemption rights.

    g. On or about November 28, 2018, Elisabeth Nelson, a tax collections paralegal for Kania, responded to Plaintiff and confirmed receipt of the prior communications and represented to Plaintiff that the "bid has closed as of 10/25/18, and your right of redemption no longer exists" and that "the payment that you had made for that year [2018] appears to be refunded".

h. Upon information and belief, Jacob Belk tendered payment of the high bid to Kania on November 28, 2018, the same day that Ms. Nelson decided to respond to Plaintiff.

i. Kania did not file a motion to confirm the foreclosure sale until December 4, 2018.

j. By order of the court the foreclosure sale was confirmed on December 6, 2018.

14. Subsequent to the above events, Plaintiff was evicted from the Property and her family home was demolished.

15. On January 3, 2019, Plaintiff was refunded the taxes for 2014, 2015, and 2016 that had been previously paid.

## COUNT ONE: FRAUD

16. Plaintiff herein re-alleges and incorporates by reference all prior paragraphs of this Complaint.

17. Defendants, by and through one or more of its agents and representatives, represented to Plaintiff that she could not exercise her right of redemption on the Property.

18. Defendants' representations were false at the time they were made. The false representations and/or concealment by Defendants concerned material past or existing facts.

19. Defendants' false representations and/or concealment were reasonably calculated to deceive and were made with the intent to deceive Plaintiff and to induce Plaintiff to act on them.

20. Defendants were the only one who could communicate about and/or process the payments required to be made by Plaintiff in order for her to exercise her right of redemption.

21. Defendants knew the representations were false at the time they made them.

22. Defendants' false representations and/or concealment of material facts did in fact deceive Plaintiff, and Plaintiff reasonably relied upon Defendants' false representation and/or concealment and she acted on them.

23. As a result of Defendants' false and fraudulent representations and/or concealment, Plaintiffs have suffered damages, including being fraudulently induced into entering the Agreement, which Plaintiffs would not have done absent the false representations, which has actually and proximately caused damage to Plaintiff's in an amount exceeding

$25,000.00, and Plaintiff is entitled to a Judgment against Defendants directing Defendants to pay damages in excess of $25,000.00.

24. Defendants' actions as described herein were willful, wanton, and in reckless disregard of Plaintiff's rights, and entitle Plaintiff to an award of punitive damages and attorneys' fees in an amount to be determined by this Court.

## COUNT TWO: NEGLIGENT MISREPRESENTATION

25. Plaintiff hereby incorporates all prior paragraphs.

26. Defendants made representations to Plaintiff regarding the status of the Property, payment of taxes, and Plaintiff's redemption rights.

27. Defendants concealed or otherwise omitted proper representations by not allowing the Plaintiff to redeem the Property.

28. The representations, concealment and/or omissions were false and were reasonably calculated to deceive.

29. At the time the representations, concealment and/or omissions were made Defendants knew or should have known they were false.

30. The representations, concealment and/or omissions were made with the intent to deceive Plaintiff.

31. Plaintiff reasonably relied upon those representations, concealment and/or omissions to their detriment and was in fact deceived.

32. The negligent misrepresentations of Defendant damaged Plaintiff in excess of $25,000.00.

## COUNT THREE: NEGLIGENCE

33. Plaintiff herein re-alleges and incorporates by reference all prior paragraphs of this Complaint.

34. Defendants owed a duty to Plaintiff to conduct a foreclosure sale and processing both redemption payments and further requests to exercise redemption rights with the exercise of reasonable care.

35. Defendants' breached that duty as described in this Complaint.

36. As a direct and proximate result of Defendants' negligence, Plaintiff has been damaged and is entitled to a Judgment against both Defendants in the amount of Plaintiff's actual damages, consequential damages, attorneys fees, costs, interest and additional damages that may be discovered.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

37. The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

38. Defendants were negligent as stated above.

39. It was foreseeable to the Defendants that his negligence would cause Plaintiff severe emotional distress.

40. The conduct of Defendants in fact caused Plaintiff severe emotional distress.

41. As a proximate result of the negligence of Defendant, Plaintiff sustained emotional damages and is entitled to recover a sum in excess of $25,000.00.

**WHEREFORE**, Plaintiff respectfully pray the Court for relief as follows:

1. That the Court find in favor of Plaintiff on all counts with Defendants being liable for damages;

2. That Plaintiffs have and recover from Defendants punitive damages;

3. That Plaintiffs have and recover the costs of expenses of this action, including reasonable attorney's fees;

4. That Plaintiffs be granted a trial by jury on all issues of fact arising herein; and

5. That Plaintiffs have such other and further relief that the Court deems just and proper.

This the 24th day of November, 2021.

James P. Galvin
N. C. Bar No. 33933
Ryan B. Tiede
N. C. Bar No. 43258
*Attorneys for Plaintiff*
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, North Carolina 28204
Telephone: 704-377-4164

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

**VERIFICATION**

The undersigned, being first duly sworn, deposes and says:

I, Helen Barbara Ryan, am the Plaintiff in the foregoing action, I have read the foregoing document and know the contents thereof, and the same is true of my own knowledge, except as to those matters and things therein stated upon information and belief, and as to those matters and things, I believe them to be true.

By: _____
Helen Barbara Ryan

Sworn to and subscribed before me

This the 24ᵗʰ day of November, 2021.

CASEY R SIMMONS
Notary Public
North Carolina
Mecklenburg County

Notary Public: _____

My Commission Expires: 4|16|2022

NORTH CAROLINA

MECKLENBURG COUNTY

HELEN BARBARA RYAN,

Plaintiff,

v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

Defendants.

FILED IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

2021 DEC 22 P 3: 54

MECKLENBURG CO. C.S.C.

BY_____

**MOTION FOR EXTENSION
OF TIME TO RESPOND TO
VERIFIED COMPLAINT**

NOW COME Defendant Mecklenburg County, through counsel and pursuant to N.C. Gen Stat, §1A-1, Rule 6, and hereby moves the Court for an Order enlarging its time by thirty (30) days, through and including February 7, 2022, within which to respond to Plaintiff's Verified Complaint. In support of this Motion, Defendant Mecklenburg County respectfully states as follows:

1.  Plaintiff filed her Verified Complaint with this Court on November 24, 2021.

2.  Defendant Mecklenburg County was served via Certified Mail on December 7, 2021.

3.  Defendant Mecklenburg County's time for responding to the Verified Complaint has not yet expired in as much as its response is currently due on January 6, 2022.

4.  Defendant Mecklenburg County needs additional time to prepare its response to the Verified Complaint.

5.  This motion is made in good faith and not for the purpose of delay.

WHEREFORE, Defendant Mecklenburg County respectfully requests an extension of time for thirty (30) days, through and including February 7, 2022, within which to respond to Plaintiff's Verified Complaint.

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2021, I caused a copy of the foregoing **MOTION FOR EXTENSION OF TIME TO RESPOND TO VERIFIED COMPLAINT** to be served by First Class United States Mail and email to:

> James P. Galvin
> Ryan B. Tiede
> Thurman, Wilson, Boutwell & Galvin, P.A.
> 301 S. McDowell Street, Suite 608
> Charlotte, North Carolina 28204
> *Attorneys for Plaintiff*

W. Clark Goodman

NORTH CAROLINA

MECKLENBURG COUNTY

HELEN BARBARA RYAN,

Plaintiff,

v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

Defendants.

FILED

2021 DEC 22 P 3: 54

MECKLENBURG CO. C.S.C.

BY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

**ORDER GRANTING
MOTION FOR EXTENSION
OF TIME TO RESPOND TO
VERIFIED COMPLAINT**

Upon motion of Defendant Mecklenburg County, and for good cause shown, Defendant

Mecklenburg County is hereby granted an extension of time through and including February 7,

2022, within which to respond to Plaintiff's Verified Complaint.

This the 22 day of December, 2021.

_Asst_ Clerk of Superior Court

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

HELEN BARBARA RYAN )
                              )
            Plaintiff,        )
                              )
VS.                           )
                              )            **AFFIDAVIT OF SERVICE**
                              )
MECKLENBURG COUNTY and        )
THE KANIA LAW FIRM, P.A.      )
                              )
            Defendants        )
_____ )

The undersigned, being first duly sworn, deposes and says:

1.      That The Kania Law Firm, P.A, have been duly served with process in this action in accordance with the provisions of Rule 4 of the North Carolina Rules of Civil Procedure by certified mail.

2.      That copies of the Civil Summons and Complaint with this action were deposited in the United States Post Office at Charlotte, North Carolina, on or about November 24, 2021 by mailing the same by certified mail with return receipt requested.

3.      That copies of the Civil Summons and Complaint were in fact received by an authorized agent of The Kania Law Firm, on December 20, 2021 as evidenced by the attached registry receipt, and the genuine registry receipt marked Exhibit "A" is hereto attached.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, this the _10_ day of January, 2022.

# EXHIBIT "A"

U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

O F F I C I A L   U S E

Certified Mail Fee
$ 3.75

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ 3.05
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$ .73

Total Postage and Fees
$ 7.53

Postmark
Here

Sent To  The Kania Law Firm, P.A.
Registered Agent
Richard J. Kania

Street and Apt. No., or PO Box No.
600-A Centrepark Drive

City, State, ZIP+4®
Asheville, NC 28805

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7020 1290 0001 1841 3823

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

The Kania Law Firm, P.A.
Registered Agent, Richard J. Kania
600-A Centrepark Drive
Asheville, NC 28805

9590 9402 7023 1225 9833 05

2. Article Number (Transfer from service label)

7020 1290 0001 1841 3823

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X GH                           ☒ Agent
                               ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
GH                             12/20/21

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery (00)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Ryan-JPG    Domestic Return Receipt

Sworn to and subscribed before me

this _10_ day of January, 2022

_Denise F. Moster_
Notary Public

My Commission Expires: _10-8-22_

James P. Galvin
N.C. Bar No. 33933
Attorney for Plaintiff
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, North Carolina 28204
Telephone: 704-377-4164
Facsimile: 704-377-5503
james@twbglaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the following individual(s) by depositing a copy of same in the United States Mail, postage prepaid, in a wrapper properly addressed to:

W. Clark Goodman
B. Chad Ewing
301 S. College Steet, Ste. 3500
Charlotte, North Carolina 28202-6037

Lee Poole
Cranfill Sumner
2907 Provide Road, Ste. 200
Charlotte, North Carolina 28211

This the ___11___ day of January, 2022.

James P. Galvin
N.C. Bar No. 33933
Ryan B. Tiede
N.C. Bar No. 43258
Attorney for Plaintiff
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, North Carolina 28204
Telephone: 704-377-4164
Facsimile: 704-377-5503

NORTH CAROLINA

**FILED**

MECKLENBURG COUNTY

2022 JAN 12 P 2:04

HELEN BARBARA RYAN,

MECKLENBURG CO., C.S.C.

Plaintiff,

BY_____

vs.

MECKLENBURG COUNTY and THE KANIA
LAW FIRM, P.A.,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 18976

**DEFENDANT THE KANIA LAW FIRM,
P.A.'S MOTION FOR
EXTENSION OF TIME TO RESPOND TO
PLAINTIFF'S COMPLAINT**

NOW COME Defendant The Kania Law Firm, P.A., acting by and through undersigned

counsel, and respectfully show unto the Court that additional time is needed for responding to

Plaintiff's Complaint in the above case and respectfully moves the Court for a thirty (30) day

extension of time within which to serve an answer or otherwise plead. In support of this motion,

the Defendant shows they were served with the Complaint on or about December 20, 2021.

This the 12 day of January, 2022.

CRANFILL, SUMNER LLP

BY: _____

Samuel H. Poole, Jr. NC Bar #13659
*Attorney for Defendants*
Post Office Box 30787
Charlotte, North Carolina 28230
Telephone: (704) 332-8300
Facsimile: (704)332-9994
Email: shp@cshlaw.com

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the attached ***DEFENDANT THE KANIA LAW FIRM, P.A.'S MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT*** on all of the parties to this cause by:

☐      Hand delivering a copy hereof to the attorney for each said party addressed as follows:

☐      Depositing a copy hereof, postage prepaid, in the United States Mail, addressed to the attorney for each said party as follows:

☐      Depositing a copy hereof with a nationally recognized overnight courier service, for overnight delivery, addressed to the attorney for each said party as follows:

☒      Via electronic mail addressed to the attorney for each said party as follows:

James P. Galvin
**THURMAN, WILSON, BOUTWELL & GALVIN, P.C.**
301 S. McDowell St., Ste. 608
Charlotte, NC 28204
james@twbglaw.com

This the 12 day of January, 2022.

**CRANFILL, SUMNER LLP**

BY: _____

Samuel H. Poole, Jr. NC Bar #13659
*Attorneys for Defendants*
Post Office Box 30787
Charlotte, North Carolina 28230
Telephone: (704) 332-8300
Facsimile: (704)332-9994
Email: shp@cshlaw.com

NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 18976

HELEN BARBARA RYAN,

     Plaintiff,

     vs.

MECKLENBURG COUNTY and THE KANIA
LAW FIRM, P.A.,

     Defendants.

**ORDER**

In the above-entitled action, Defendant The Kania Law Firm, P.A., having for good cause shown, made application for additional time within which to serve an answer or otherwise respond to Plaintiff's Complaint.

IT IS NOW ORDERED that Defendant The Kania Law Firm, P.A., are hereby granted additional time within which to serve an answer or otherwise respond to Plaintiff's Complaint through and including the **18th day of February, 2022.**

This the 12th day of _____Jan_____, 2022.

_____a.Mill_____
A34  Clerk of Superior Court
     Mecklenburg County

NORTH CAROLINA

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

MECKLENBURG COUNTY

21-CVS-18976

HELEN BARBARA RYAN, 2022 FEB -7 P 3: 57

Plaintiff,

v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

Defendants.

**ANSWER**

NOW COMES Defendant Mecklenburg County (the "County"), through counsel, and answers Plaintiff Helen Barbara Ryan's Verified Complaint as follows:

## FOR A FIRST DEFENSE

This Court lacks jurisdiction over the subject matter of this action, because Plaintiff's claims are barred by the doctrine of mootness and should therefore be dismissed pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure.

## FOR A SECOND DEFENSE

This Court lacks personal jurisdiction over the County in this action, as the claims asserted in Plaintiff's Verified Complaint, as alleged, are barred by sovereign or governmental immunity and should therefore be dismissed pursuant to Rule 12(b)(2) of the North Carolina Rules of Civil Procedure.

## FOR A THIRD DEFENSE

Plaintiff's Verified Complaint should be abated and dismissed pursuant to the prior pending action doctrine to the extent that Plaintiff seeks to recover any amount in this civil action that she also seeks to recover as restitution in Civil Action NO. 18-CVD-495 (the "Tax Foreclosure Action").

**FOR A FOURTH DEFENSE**

To the extent not herein addressed, the County denies each and every allegation contained in the Verified Complaint. The County responds to the numbered paragraphs of the Verified Complaint as follows:

**PARTIES AND JURISDICTION AND VENUE**

1. The County lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Verified Complaint; therefore, they are denied.

2. The County admits the allegations contained in Paragraph 2 of the Verified Complaint.

3. The County admits the allegations contained in Paragraph 3 of the Verified Complaint, upon information and belief.

4. The County admits that Plaintiff has attempted to bring claims against it for negligent misrepresentation, negligence, fraud, and negligent infliction of emotional distress. The County also admits that Plaintiff seeks punitive damages against it. The County denies that it is liable to Plaintiff. Except as admitted herein, the County denies the allegations contained in Paragraph 4 of the Verified Complaint.

5. The County admits that the real property known as 4810 Drakestone Court, Charlotte, North Carolina 28037 (the "Property") is referred to throughout the Verified Complaint. Except as admitted herein, the County denies the allegations contained in Paragraph 5 of the Verified Complaint.

6. The County avers that the allegations contained in Paragraph 6 of the Verified Complaint are legal conclusions to which no response is required. To the extent that a response is required, the County admits that the applicable law of jurisdiction and venue speaks for itself.

2

Except as admitted, the County denies the allegations contained in Paragraph 6 of the Verified Complaint.

## FACTUAL ALLEGATIONS

7.     The County admits that the Tax Foreclosure Action was filed in Mecklenburg County District Court on or around January 8, 2018. The County further admits that said civil action was filed to foreclose the County's tax lien upon the Property for non-payment of taxes. Except as admitted herein, the County denies the allegations contained in Paragraph 7 of the Verified Complaint.

8.     The County denies the allegations contained in Paragraph 8 of the Verified Complaint.

9.     The County admits that the Plaintiff claims that she was not provided with proper notice of the Tax Foreclosure Action and that she is attempting to bring an appeal based upon that claim. The County denies that Plaintiff, in fact, was not provided proper notice of the Tax Foreclosure Action. Except as admitted herein, the County denies the allegations contained in Paragraph 9 of the Verified Complaint.

10.     The County admits that an issue before the North Carolina Court of Appeals is whether to set aside the sale of Plaintiff's former property pursuant to the sale authorized by the Mecklenburg County District Court in the Tax Foreclosure Action. The County also admits that no claim for damages arising from the Tax Foreclosure Action is currently pending before the North Carolina Court of Appeals. The County avers, however, that a claim for restitution has been made by Plaintiff in the Tax Foreclosure Action. The County denies that Plaintiff is entitled to any restitution from the County. Except as admitted herein, the County denies the allegations contained in Paragraph 10 of the Verified Complaint.

3

11. The County admits that the issue before the North Carolina Court of Appeals is whether to set aside the sale of Plaintiff's former property pursuant to the sale authorized by the Mecklenburg County District Court in the Tax Foreclosure Action. The County also admits that no claim for damages arising from the Tax Foreclosure Action is currently pending before the North Carolina Court of Appeals. The County avers, however, that a claim for restitution has been made in the Tax Foreclosure Action. The County denies that Plaintiff is entitled to any restitution from the County. Except as admitted herein, the County denies the allegations contained in Paragraph 11 of the Verified Complaint.

12. The County admits that Plaintiff's Verified Complaint is a writing that speaks for itself and is the best evidence of its contents. The County expressly denies that it is liable to Plaintiff on any theory. Except as admitted herein, the County denies the allegations contained in Paragraph 12 of the Verified Complaint.

13. The County admits that a sale was conducted to foreclose the County's tax lien on the Property on September 18, 2018. The County also admits that Jacob Bell filed a notice of upset bid in the amount of $407,925 on October 15, 2018. Additionally, the County admits that Plaintiff's November 23, 2018, email is a writing that speaks for itself and is the best evidence of its contents; upon information and belief, the County denies that Plaintiff's November 23, 2018 email was received by its intended recipient. Moreover, the County admits that the November 23, 2018, email from Elisabeth.Nelson@kanialawfirm.com to 4carrotpost@gmx.com is a writing that speaks for itself and is the best evidence of its contents. Further, the County admits that Jacob Belk tendered the remaining, unpaid amount of his high bid to Richard J. Kania, as Commissioner, on or about November 28, 2018. Further still, the County admits that Richard J. Kania, as Commissioner, filed a Motion for Confirmation, dated November 30, 2018, on December 4, 2018. Finally, the County admits that a Judgment of Confirmation was entered

4

on December 6, 2018, and that said Judgment of Confirmation is a writing that speaks for itself and is the best evidence of its contents. The County lacks knowledge sufficient to form a belief as to when the Plaintiff became aware of the Tax Foreclosure Action; therefore, those allegations are denied. The remaining allegations contained in Paragraph 13 of the Verified Complaint are denied.

14.     The County admits that Plaintiff was evicted from her former real Property and that the structure on the Property was demolished by the Belks allegedly because it was unsafe and did not meet minimum requirements set forth in the City of Charlotte Minimum Housing Code. Except as admitted herein, the County denies the allegations contained in Paragraph 14 of the Verified Complaint.

15.     The County admits that amounts paid by Plaintiff were refunded to her. Except as admitted herein, the allegations contained in Paragraph 15 of the Verified Complaint are denied.

## COUNT ONE: FRAUD

16.     The County reincorporates its responses to Paragraph 1-15 of the Verified Complaint as if fully set forth herein.

17.     The County denies that any agent or representative of the County represented to the Plaintiff that she could not exercise her right of redemption on the Property. The County lacks knowledge sufficient to form a belief as to the actions or omissions of others; therefore, those allegations are denied. Except as admitted herein, the County denies the allegations contained in Paragraph 17 of the Verified Complaint.

18.     The County denies that it made any false representation or concealment to Plaintiff. The County lacks knowledge sufficient to form a belief as to the actions or omissions of others; therefore, those allegations are denied. Except as admitted herein, the County denies the allegations contained in Paragraph 18 of the Verified Complaint.

5

19.     The County denies that it made any false representation or concealment to Plaintiff. The County lacks knowledge sufficient to form a belief as to the actions or omissions of others; therefore, those allegations are denied. Except as admitted herein, the County denies the allegations contained in Paragraph 19 of the Verified Complaint.

20.     The County denies the allegations contained in Paragraph 20 of the Verified Complaint.

21.     The County denies that it made any false representation or concealment to Plaintiff. The County lacks knowledge sufficient to form a belief as to the actions or omissions of others; therefore, those allegations are denied. Except as admitted herein, the County denies the allegations contained in Paragraph 21 of the Verified Complaint.

22.     The County denies that it made any false representation or concealment to Plaintiff. The County lacks knowledge sufficient to form a belief as to the actions or omissions of others; therefore, those allegations are denied. Except as admitted herein, the County denies the allegations contained in Paragraph 22 of the Verified Complaint.

23.     The County denies that it made any false representation or concealment to Plaintiff. The County lacks knowledge sufficient to form a belief as to the actions or omissions of others; therefore, those allegations are denied. Except as admitted herein, the County denies the allegations contained in Paragraph 23 of the Verified Complaint.

24.     The County denies the allegations contained in Paragraph 24 of the Verified Complaint.

## COUNT TWO: NEGLIGENT MISREPRESENTATION

25.     The County reincorporates its responses to Paragraph 1-24 of the Verified Complaint as if fully set forth herein.

6

26.     The County denies that it made representations to Plaintiff regarding the status of the Property, payment of taxes, and Plaintiff's redemption rights. The County lacks knowledge sufficient to form a belief as to any representations made by others; therefore, those allegations are denied. Except as admitted herein, the County denies the allegations contained in Paragraph 26 of the Verified Complaint.

27.     The County denies that it concealed or otherwise omitted proper representations by not allowing the Plaintiff to redeem the Property. The County lacks knowledge sufficient to form a belief as to the actions or omissions of others; therefore, those allegations are denied. Except as admitted herein, the County denies the allegations contained in Paragraph 27 of the Verified Complaint.

28.     The County denies that it made any misrepresentations, omissions, or concealments. The County lacks knowledge sufficient to form a belief as to the actions or omissions of others; therefore, those allegations are denied. Except as admitted herein, the County denies the allegations contained in Paragraph 28 of the Verified Complaint.

29.     The County denies that it made any misrepresentations, omissions, or concealments. The County lacks knowledge sufficient to form a belief as to the actions or omissions of others; therefore, those allegations are denied. Except as admitted herein, the County denies the allegations contained in Paragraph 29 of the Verified Complaint.

30.     The County denies that it made any misrepresentations, omissions, or concealments. The County lacks knowledge sufficient to form a belief as to the actions or omissions of others; therefore, those allegations are denied. Except as admitted herein, the County denies the allegations contained in Paragraph 30 of the Verified Complaint.

31.     The County denies the allegations contained in Paragraph 31 of the Verified Complaint.

7

32.     The County denies the allegations contained in Paragraph 32 of the Verified Complaint.

## COUNT THREE: NEGLIGENCE

33.     The County reincorporates its responses to Paragraph 1-32 of the Verified Complaint as if fully set forth herein.

34.     The County denies the allegations contained in Paragraph 34 of the Verified Complaint.

35.     The County denies all allegations contained in Paragraph 35 of the Verified Complaint as to the County.  The County lacks knowledge sufficient to form a belief as to the truth of the allegations asserted against others; therefore, those allegations are denied.  Except as admitted herein, the County denies the allegations contained in Paragraph 35 of the Verified Complaint.

36.     The County denies the allegations contained in Paragraph 36 of the Verified Complaint.

## COUNT FOUR:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

37.     The County reincorporates its responses to Paragraph 1-36 of the Verified Complaint as if fully set forth herein.

38.     The County denies all allegations contained in Paragraph 38 of the Verified Complaint as to the County.  The County lacks knowledge sufficient to form a belief as to the truth of the allegations asserted against others; therefore, those allegations are denied.  Except as admitted herein, the County denies the allegations contained in Paragraph 38 of the Verified Complaint.

39.     The County denies the allegations contained in Paragraph 39 of the Verified Complaint.

8

40.     The County denies the allegations contained in Paragraph 40 of the Verified Complaint.

41.     The County denies the allegations contained in Paragraph 41 of the Verified Complaint.

### FOR A FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of governmental or sovereign immunity.

### FOR A SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because punitive damages are not recoverable against the County, as a governmental body, unless specifically authorized by statute, and no such statute exists.

### FOR A SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the public duty doctrine.

### FOR AN SEIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the *res judicata* and/or *collateral estoppel* effect of the orders and judgments entered in *County of Mecklenburg, a Body Politic and Corporate v. Ryan, et al.*, Mecklenburg County District Court, Civil Action No. 18-CVD-495.

### FOR A NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the *res judicata* and/or *collateral estoppel* effect of the Judgment of Confirmation entered on December 6, 2018, in *County of Mecklenburg, a Body Politic and Corporate v. Ryan, et al.,* Mecklenburg County District Court, Civil Action No. 18-CVD-495.

9

## FOR A TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the *res judicata* and/or *collateral estoppel* effect of the Order for Possession, entered on January 24, 2019, in *County of Mecklenburg, a Body Politic and Corporate v. Ryan, et al.*, Mecklenburg County District Court, Civil Action No. 18-CVD-495.

## FOR AN ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the *res judicata* and/or *collateral estoppel* effect of the Writ for Possession, entered on January 28, 2019, in Civil Action No. 18-CVD-495.

## FOR A TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the *res judicata* and/or *collateral estoppel* effect of the Order filed on April 10, 2019, in *County of Mecklenburg, a Body Politic and Corporate v. Ryan, et al.*, Mecklenburg County District Court, Civil Action No. 18-CVD-495.

## FOR A THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the *res judicata* and/or *collateral estoppel* effect of the Commissioner's Deed filed on December 20, 2018 in Book 33182 at Page 71 of the Mecklenburg County Registry of Deeds.

## FOR A FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the *res judicata* and/or *collateral estoppel* effect of 20-M-496 and/or 20-M-497.

## FOR A FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by N.C. GEN. STAT. §105-361(d) and N.C. GEN. STAT. §105-361(e).

10

## FOR A SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of contributory negligence.

## FOR A SEVENTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the intervening and superseding acts or omissions of another.

## FOR AN EIGHTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## FOR A NINETEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## FOR A TWENTIETH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## FOR A TWENTY-FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, because she has failed to mitigate her alleged damages.

This the 7th day of February, 2022.

**WOMBLE BOND DICKINSON (US) LLP**

W. Clark Goodman (N.C. State Bar No. 19927)
B. Chad Ewing (N.C. State Bar No. 27811)
301 South College Street, Suite 3500
Charlotte, North Carolina   28202-6037
Telephone: (704) 331-4900
Facsimile: (704) 331-4955
Email: Clark.Goodman@wbd-us.com
E-Mail: Chad.Ewing@wbd-us.com
*Attorneys for Defendant Mecklenburg County*

11

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2022, I caused a copy of the foregoing **ANSWER** to be served by First Class United States Mail and email to:

> James P. Galvin
> Ryan B. Tiede
> Thurman, Wilson, Boutwell & Galvin, P.A.
> 301 S. McDowell Street, Suite 608
> Charlotte, North Carolina 28204
> *Attorneys for Plaintiff*
>
> The Kania Law Firm, P.A.
> Registered Agent – Richard J. Kania
> 600-A Centrepark Drive
> Asheville, NC 28805

W. Clark Goodman

NORTH CAROLINA     2022 FEB 22   3: 40 IN THE GENERAL COURT OF JUSTICE
                                           SUPERIOR COURT DIVISION

MECKLENBURG COUNTY    MECKLENBURG CO. C.S.C.       21 CVS 18976

HELEN BARBARA RYAN,

        Plaintiff,

        vs.                             **DEFENDANT THE KANIA LAW FIRM, P.A.'S ANSWER**

MECKLENBURG COUNTY and THE KANIA
LAW FIRM, P.A.,

        Defendants.

NOW COMES Defendant The Kania Law Firm, P.A. ("Defendant" or "Answering Defendant"), acting by and through undersigned counsel, and respond to the Plaintiff's Complaint as follows:

### FIRST DEFENSE

Pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted.

### SECOND DEFENSE

The Defendant answers the individual allegations of the Comp 

### PARTIES AND JURISDICTION AND VENUE

1.     There is not sufficient knowledge or information in possession of this Answering Defendant as to the truth of the allegations contained in Paragraph 1 and the same are therefore denied.

2.     It is admitted, upon information and belief that Mecklenburg County is a Body Politic located in Mecklenburg County, North Carolina. Except as admitted, denied.

3.     The allegations contained in Paragraph three are admitted.

4.     It is admitted that the complaint speaks for itself as to the content and allegations contained in the document. Except as admitted, the allegations contained in Paragraph 4 are denied.

5.     It is admitted that the property that was the subject of the foreclosure action in question is located at 4810 Drakestone Court, Charlotte, North Carolina 28226 Except as admitted, the allegations contained in Paragraph 5 are denied.

6.     The allegations contained in Paragraph 6 are admitted.

## FACTUAL ALLEGATIONS

7.     It is admitted that on or about January 8th, 2018, a tax foreclosure action (18-CVD-495) was commenced. Except as admitted, the allegations contained in Paragraph 7 are denied.

8.     The allegations contained in Paragraph 8 are admitted.

9.     It is admitted, upon information and belief that there is an appeal pending before the North Carolina Court of Appeals regarding the foreclosure action. The remaining allegations contained in Paragraph 9 are denied.

10.    There is not sufficient knowledge or information in possession of answering Defendant as to what the Court of Appeals will consider or decide and therefore the allegations contained in Paragraph 10 are denied.

11.    The allegations contained in Paragraph 11 call for a legal conclusion and therefore no response is required. To the extent that a response is necessary, the allegations contained in Paragraph 11 are denied.

12.     The allegations contained in Paragraph 12 call for a legal conclusion and therefore no response is required. To the extent that a response is necessary, the allegations contained in Paragraph 12 are denied.

13.     It is admitted that on or about September 18th, 2018, a foreclosure sale was conducted for the property located at 4810 Drakestone Court, Charlotte, North Carolina 28037 and it is further admitted that on or about October 15th, 2018, Jacob Bell filed a notice of final upset bid. It is also further admitted that the actual correspondence and documentation is the best evidence of the contents of each and that on or about November 28th, 2018, plaintiff was informed that the bid had closed as of October 25th, 2018 and the right of redemption no longer existed. The remaining allegations contained in Paragraph 13 are denied.

14.     It is admitted, upon information and belief, that Plaintiff was evicted from the house/property. There is not sufficient knowledge or information in possession of this Answering Defendant as to the truth of the remaining allegations contained in Paragraph 14 and the same are therefore denied.

15.     There is not sufficient knowledge or information in possession of this Answering Defendant as to the truth of the allegations contained in Paragraph 15 and the same are therefore denied.

## COUNT ONE: FRAUD

16.     The responses to the allegations contained in Paragraphs 1 through 15 of Plaintiff's Complaint are realleged and incorporated herein by reference as if fully set forth.

17.     To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 17 are denied.

18.     To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 18 are denied.

19.     To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 19 are denied.

20.     To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 20 are denied.

21.     To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 21 are denied.

22.     To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 22 are denied.

23.     The allegations contained in Paragraph 23 are denied.

24.     The allegations in Paragraph 24 are denied.

## COUNT TWO: NEGLIGENT MISREPRESENTATION

25.     The responses to the allegations contained in Paragraphs 1 through 24 of Plaintiff's Complaint are realleged and incorporated herein by reference as if fully set forth.

26.     To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 26 are denied.

27.     To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 27 are denied.

28.     To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 28 are denied.

29.     To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 29 are denied.

30.　　To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 30 are denied.

31.　　To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 31 are denied.

32.　　To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 32 are denied.

## COUNT THREE: NEGLIGENCE

33.　　The responses to the allegations contained in Paragraphs 1 through 32 of Plaintiff's Complaint are realleged and incorporated herein by reference as if fully set forth.

34.　　The allegations contained in Paragraph 34 called for a legal conclusion and therefore no response is required. To the extent a response is necessary, the allegations contained in Paragraph 34 are denied.

35.　　The allegations contained in Paragraph 35 are denied.

36.　　The allegations contained in Paragraph 36 are denied.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

37.　　The responses to the allegations contained in Paragraphs 1 through 36 of Plaintiff's Complaint are realleged and incorporated herein by reference as if fully set forth.

38.　　To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 38 are denied.

39.　　To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 39 are denied.

40.　　To the extent they are directed towards this Answering Defendant, the allegations in Paragraph 40 are denied.

4865-4196-4559, v. 2

41.     The allegations contained in Paragraph 41 are denied.


### THIRD DEFENSE

Answering Defendant pleads all applicable statutes of limitations and statutes of repose as to all claims in bar of the Plaintiff's right to recover herein.

### FOURTH DEFENSE

Plaintiff failed to mitigate or minimize her damages. Defendant pleads this failure as a bar to, or as a limitation on, Plaintiff's ability to recover from Defendant in this action.

### FIFTH DEFENSE

Should it be determined that Defendant was negligent or that they breached any duty owed to Plaintiff or are otherwise liable to Plaintiff, which is again explicitly denied, then and in that event, Plaintiff was also negligent, in that she failed to pay the taxes in a timely manner, she failed to respond timely to notices of her delinquent taxes, she failed to respond to the Foreclosure Action, she failed to tender, attempt to tender, or even inquire of this Defendant about tendering funds to this Defendant and such other and further acts of negligence as may be determined during discovery, each of which was a proximate cause of Plaintiff's alleged injuries and/or damages. Plaintiff's claims are therefore barred by the doctrine of contributory negligence

### SIXTH DEFENSE

To the extent applicable, Defendants plead collateral estoppel and res judicata as a bar to Plaintiffs' claim for damages.

4865-4196-4559, v. 2

## RESERVATION AND NON-WAIVER

Defendant reserves their right to assert additional defenses as may be discovered before trial.

**WHEREFORE,** having fully answered each and every allegation contained in the Plaintiff's Complaint, Defendant prays to the Court as follows:

1.      That the Plaintiff have and recover nothing of this Answering Defendant;

2.      For dismissal of Plaintiff's action, with prejudice;

3.      For the costs of defending this action, including reasonable attorney's fees, as allowed by law;

4.      For such other and further relief as the Court deems just and proper; and

5.      For a trial by jury of all issues so triable herein.

This the 1/ day of February, 2022.

**CRANFILL SUMNER LLP**

BY: _____

Samuel H. Poole, Jr. NC Bar #13659
*Attorney for Defendant The Kania Law Firm, P.A.*
Post Office Box 30787
Charlotte, North Carolina 28230
Telephone: (704) 332-8300
Facsimile: (704)332-9994
Email: shp@cshlaw.com

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the attached **DEFENDANT THE KANIA LAW FIRM, P.A.'S ANSWER** on all of the parties to this cause by:

☐ Hand delivering a copy hereof to the attorney for each said party addressed as follows:

☒ Depositing a copy hereof, postage prepaid, in the United States Mail, addressed to the attorney for each said party as follows:

☐ Depositing a copy hereof with a nationally recognized overnight courier service, for overnight delivery, addressed to the attorney for each said party as follows:

☐ Via electronic mail addressed to the attorney for each said party as follows:

James P. Galvin
**THURMAN, WILSON, BOUTWELL & GALVIN, P.C.**
301 S. McDowell St., Ste. 608
Charlotte, NC 28204
james@twbglaw.com

This the 1 day of February, 2022.

**CRANFILL SUMNER LLP**

BY: _____

Samuel H. Poole, Jr. NC Bar #13659
*Attorney for Defendant The Kania Law Firm, P.A.*
Post Office Box 30787
Charlotte, North Carolina 28230
Telephone: (704) 332-8300
Facsimile: (704)332-9994
Email: shp@cshlaw.com

RYAN,HELEN,BARBARA

VERSUS

MECKLENBURG CO
KANIA LAW FIRM PA THE

**CASE MANAGEMENT ORDER**

Pursuant to N. C. Gen. Stat. 1A-1, Rules 16 and 26, this Case Management Order shall govern discovery and trial of this case, unless, the Parties, within thirty (30) days from the date of this Order, do the following: (1) confer and then jointly submit a proposed Consent Case Management Order, with alternative dates and/or requirements, to the Caseflow Manager, using Form CCF-23A, or similar document prepared by the parties; (2) if the parties disagree on the schedule in this Order, then provided they have conferred and attempted to reach a resolution on the schedule, either or both may request a conference with the Caseflow Manager for the purpose of resolving their scheduling issues; or (3) the parties notify the Caseflow Manager that a motion to dismiss the entire complaint, or motion to compel arbitration, or request for designation of Exceptional or Complex Business Case, has been filed or submitted, in which event, the parties shall have 15 days after the denial of such motion or request to comply with (1) or (2) above. If a Consent Case Management Order or request for conference is submitted within the required time, the Caseflow Manager shall rule on the issuance of the Consent Case Management Order, or other Order, which ruling is subject to appeal to the Senior Resident Superior Court judge. For circumstances arising after the deadlines above, this Order is subject to amendment, under procedures applicable to Exceptional or Complex Business Cases, or upon motion first made with the Caseflow Manager under Local Civil Rule 6.6 or N.C. Rules of Civil Procedure 16 or 26.

Any proposed Consent Case Management Order submitted shall not request, without good cause: (1) a deadline for filing dispositive motions later than 60 days before the trial date; or (2) a trial date more than 60 days later than the trial date set forth below. When requesting a later trial date, the Parties shall confer with the Caseflow Manager. Factors to be considered by the Caseflow Manager for extending the trial date include, but are not limited to, the number of plaintiffs, the number of defendants represented by different attorneys; the complexity and number of issues involved; the number and location of depositions to be taken; and whether expert witnesses will be utilized and where they are located. Rulings of the Caseflow Manager and any appeals from those decisions shall be made in accordance with Local Civil Rule 6.

Except where modified by this Order, the 26ᵗʰ Judicial District Superior Court Division Civil Rules (the "Local Civil Rules") are incorporated into this Order. **The Parties shall know and follow the Local Civil Rules which are available for viewing at www.nccourts.org or www.meckbar.org.** This order is entered under Local Civil Rule 6 and the jurisdiction of the Court without notice or hearing, as neither is required.

**The Parties shall have thirty (30) days from the date of this Order to request a peremptory trial setting** (under Local Civil Rule 8, to the Caseflow Manager, using Form CCF-3).

1.      This case is hereby set for **trial** on **10/24/2022** (the "trial date").

2.      **Dispositive Motions** shall be filed no later than 60 days prior to the trial date, (**the "dispositive motions filing deadline"**) and shall be scheduled for hearing not less than 30 days prior to the trial date. Such motions must be scheduled through the scheduling process under the Local Civil Rules within 3 days of the filing of the Motion with the Court.

3.      **Discovery Deadline:** Unless otherwise agreed by the parties: (1) **discovery** must be completed no later than seventy-five (75) days prior to the trial date (**the "discovery deadline"**); and (2) all discovery must be noticed or served in sufficient time under the N.C. Rules of Civil Procedure for the receiving party to be able to appear or respond by the discovery deadline. Unless otherwise agreed by the parties or ordered by the Court, an extension of the trial date after the end of the discovery deadline, does not extend the discovery deadline. The discovery deadline is intended to give the Parties time to prepare dispositive motions and/or prepare for trial following the completion of discovery. Under no circumstances shall any agreed extensions or any consent order extensions of the discovery deadline by the clerk impact the dispositive motion filing deadline or assigned trial date, nor shall any party seek any ex parte extensions of time from the clerk to respond to timely served discovery beyond the discovery deadline.

4.      **Mediation** shall be conducted unless, upon motion, the Court orders otherwise under the 26ᵗʰ Judicial District Local Rules Governing Mediated Settlement Conferences in Superior Court Civil Actions. All forms of ADR must be completed no later than 8 weeks before the trial date. (The actual ADR deadline will be assigned at the time the Order for ADR (CCF-14) is issued.) If a

CCF23

change in the trial date occurs, a separate Motion and Order to Extend the ADR Deadline (CCF-44) must be submitted to the ADR Coordinator in the Caseflow Management Division in order to change the assigned ADR deadline.

5. **Expert discovery**: (1) In lieu of expert interrogatories, and unless otherwise agreed by the parties, **expert witnesses** shall be designated by providing the information required by N.C. Rule of Civil Procedure 26(b)(4)a, on the following schedule: (a) **Plaintiffs' experts** no later than <u>180 days prior to trial</u>; (b) **Defendants' experts** no later than <u>120 days prior to trial</u>;(c) **Plaintiffs' rebuttal experts or rebuttal opinions** <u>no later than 105 days prior to trial</u>; and (d) **Defendants' rebuttal experts or rebuttal opinions** <u>no later than 90 days prior to trial</u>.

(2) Unless otherwise agreed by the parties, **depositions of experts** are permitted, provided they are noticed to occur prior to the discovery deadline, and provided the party desiring to depose the expert witness pays the expert a reasonable hourly rate for the expert's actual time testifying at the deposition. In the event of a dispute regarding the reasonable hourly fee, upon motion, the court shall determine the fee.

6. **Depositions:** (1) <u>Objections and attorney statements</u>: During depositions: (a) attorneys shall not make objections or statements designed to suggest an answer to the witness; and (b) attorney's statements when making objections shall be succinct, stating the basis for the objection and nothing more.

(2) <u>Instructions Not to Answer</u>: During depositions, attorneys shall not direct or request that a witness not answer a question, unless: (a) the attorney has objected on the ground that the answer is protected by privilege; (b) the answer is protected by some limitation on evidence ordered by the Court; or (c) the attorney states on the record that a Protective Order will be sought with respect to the question asked, and then, unless otherwise resolved by the parties, files a motion for Protective Order within five business days after the refusal to answer is given.

7. **Trial Disclosures:** Unless otherwise agreed by the parties, witness lists, exhibit lists, proposed jury issues and any exhibits not previously exchanged, shall be exchanged no later than 10 days before the Monday of the scheduled week of trial. Other requirements of Rule 7 of the General Rules of Practice need not be met, although the parties may agree upon the usage of a Pre-Trial Order.

8. Failure to comply with the deadlines set forth in this Case Management Order may result in the exclusion of evidence or witnesses not timely disclosed, absent a showing of excusable neglect for noncompliance.

Date: 2/25/22

Carla N. Archie
Senior Resident Superior Court Judge

Copy To: GALVIN,JAMES,PATRICK; GOODMAN,W,CLARK; POOLE,SAMUEL,H,JR

CCF23

**STATE OF NORTH CAROLINA**      IN THE GENERAL COURT OF JUSTICE

COUNTY OF MECKLENBURG

| | |
|---|---|
| *Attorney Name* James P. Galvin | |
| *Address* 301 S. McDowell Street, Ste. 608 Charlotte, North Carolina | **SECURE LEAVE FORM** |
| *Telephone Number* (704) 377-4164 | |
| *State Bar Number* 33933 | *Rule 26.- Rule 33A Rules of Appellate Procedure* |

*Notice: Secure Leave shall consist of one or more calendared weeks, but in any event shall not consist of more than three (3) calendared weeks during any calendar year.*

| Statement of Attorney |
|---|

I hereby certify that the secure leave period designated below is not being designated for the purpose of delaying, hindering or interfering with the timely disposition of any matter in any pending action or proceeding.

I further certify that no action or proceeding in which I have entered an appearance has been scheduled, Peremptorily set or noticed for trial hearing, deposition or other proceeding during the designated leave period.

| Designated Secure Leave Dates |
|---|

Indicate the dates you are noticing as Secure Leave Dates

| | *Beginning Date* | | *Ending Date* |
|---|---|---|---|
| **Monday** | 07/18/2022 | **Until Friday** | 07/29/2022 |

Indicate any previously designated Secure Leave periods during the current calendar year that have previously been designated pursuant to Rule 26 and Rule 3A of the Rules of Appellate Procedure:

| | *Beginning Date* | *Ending Date* |
|---|---|---|
| | | |

*This Secure Leave Notification must be filed not later than ninety (90) days before the beginning of the secured leave period and before any trial, hearing deposition or other matter has been regularly scheduled, peremptorily set or noticed for a time during the designated secure leave period.*

| *Date* 3/10/22 | **Attorney Signature** |
|---|---|

**This form is required** to be filed in each of the following offices if the attorney has entered an appearance of record as follows: *(please check the offices filed.)*

☐ District Attorney *[Criminal cases]*                  ☒ TCA – Caseflow Management Division *[Civil cases]*

☐ Clerk of Superior Court *(Special Proceeding/Estate cases)*      ☐ TCA - Family Court Director *[Domestic/Juvenile cases]*

**NOTICE TO ATTORNEY:** Should any matter be set during your Secure Leave Period, you are required to service notice on the official calendaring the matter, and the parties of record to the matter. This Notice shall contain the following: (1) A copy of this form (2) The case number and name of case set (3) A certificate of service.

CCF27 (SECURE LEAVE)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the attached Secured Leave Form was served upon the attorneys below pursuant To Rule 5 of the North Carolina Rules of Civil Procedure, by First Class Us Postal Mail, addressed as follows:

Clerk of Court
Mecklenburg County Courthouse
P.O. Box 37971
Charlotte, North Carolina 28237-7971

Clerk of Court
Lincoln County Courthouse
P.O. Box 8
Lincolnton, North Carolina 28093-0008

Derek P. Adler
Devore, Action & Stafford, P.A.
438 Queens Road
Charlotte, North Carolina 28207

Alexandra B. Bachman
James, McElroy & Diehl, P.A.
525 N. Tryon Street, Ste. 700
Charlotte, North Carolina 28202

Edward L. Bleynat, Jr.
Ferikes & Bleynat, PLLC
P.O. Box 2899
Asheville, North Carolina 28802

Lyndey R. Z. Bryant
Adams & Reese, LLP
1501 Main Street, 5th Floor
Columbia, South Carolina 29201

Carl J. Burchette
Rosenwood, Rose & Litwak, PLLC
1712 Euclid Avenue
Charlotte, North Carolina 28203

Hope Derby Carmichael
Brian S. Edlin
Wall, Gray, Jones & Carlton, PLLC
P.O. Box 10669
Raleigh, North Carolina 27605

L. Cameron Caudle, Jr
Daniel M. Dunn
Caudle & Spears, P.A.
121 W. Trade Street, Ste, 2600
Charlotte, North Carolina 28202

Ward M. Collins
Collins & Hensley, P.A.
217 Iotla Street
Franklin, North Carolina 28734

Stephen M. Corby
Emblem Legal PLLC
301 S. McDowell Street, Ste. 1000
Charlotte, North Carolina 28204

Matthew E. Cox
Smith, Currie & Hancock, LLP
5701 Westpark Drive, Ste, 204
Charlotte, North Carolina 28217

L. Clint Crosby
Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C.
3414 Peachtree Road, NE  1500
Atlanta, GA  30326

Claire Collins Dickerhoff
Hutchens Law Firm
44317 Ramsey Street
Fayetteville, NC  28311

Mr. Brett Dressler
Sellers, Ayers, Dortch & Lyons, P.A.
301 South McDowell Street, Ste. 410
Charlotte, North Carolina 28204-2686

Michelle Massingale Dressler
Sellers, Ayers, Dortch & Lyons
301 S. McDowell Street, Ste. 410
Charlotte, NC  28204

Christopher Duggan
The Duggan Law Firm, PLLC
101 S. Main Street
P.O. Box 481
Monroe, North Carolina 28111

Brian S. Edlin
1951 Cark Avenue
P.O. Box 10669
Raleigh, North Carolina 27605

Lex M. Erwin
Erwin, Capitano & Moss, P.A.
4521 Sharon Road. Ste. 350
Charlotte, North Carolina 28211

Patrick H. Flanagan
Cranfill, Sumner & Hartzog, PLLC
P.O. Box 30787
Charlotte, North Carolina 28230

R. Daniel Bibson
Stam Law Firm
510 W, Williams Street
P.O. Box 1600
Apex, NC 27502

W. Clark Goodman
B. Chad Ewing
Womble, Bond, Dickinson, LLP
301 S. College Street, Ste. 3500
Charlotte, North Carolina 28202-6037

Mark D. Gott
Henderson, Nystrom, Fletcher
Tydings, Williams-Tracy & Gott, PLLC
The Addison Building
831 E. Morehead Street
Charlotte, North Carolina 28202

Edward F. Hennessey 1V
Robinson, Bradshaw & Hinson, P.A.
101 N. Tryon Street, Ste. 1900
Charlotte, North Carolina 28246

Adam S. Hocutt
Art D. Blanton
Dozier, Miller Law Group
525 N. Tryon Street, Ste. 210
Charlotte, North Carolina 28202

Amy P. Hunt
Alexander Ricks, PLLC
1420 E. 7th Street, Ste. 100
Charlotte, North Carolina 28204

Esther E. Manheimer
Van, Windle, Buck, Wall, Starnes & Davis P.A.
P.O. Box 7375
Asheville, North Carolina 28802-7376

Aaron Martin
Mette, Evans & Woodside
3401 North Front Street
Harrisburg, Pa 17110

Bentford E. Martin
Hamilton, Stephens, Steele & Martin PLLC
525 N. Tryon Street, Ste. 1400
Charlotte, North Carolina 28202

Jeffrey M. McCraw
Crisp, Cherry & McCraw
615 S. College Street, Ste. 1430
Charlotte, North Carolina 28202

Tyler R. Moffatt
Moffatt & Moffatt PLLC
P.O. Box 233 DTS
Boone, Noth Carolina 28607

Mr. David Murray
The Odom Law Firm
1109 Greenwood Cliff
Charlotte, North Carolina 28204

North Carolina Court of Appeals
Clerk's office
1 West Morgan Street
Raleigh, North Carolina 27601

North Carolina Supreme Court
Clerk's office
2 East Morgan Street
Raleigh, North Carolina 27601

Preston O. Odom, III
James, McElroy & Diehl, P.A.
525 N. Tryon Street, Ste. 700
Charlotte, North Carolina 28202

Andrew B. Parker
Long, Parker, Warren & Jones, P.A.
Post Office Box 7216
Asheville, North 28801

Joe Pellington
Redding Jones
2907 Providence Road, Ste. 303
Charlotte, North Carolina 28211

Rodney E. Pettey
Emily Ann Buttrick
Yates & McLamb, Weyther, LLP
P.O. Box 2889
Raleigh, North Carolina 27602

Samuel H. Poole, Jr
Cranfill Sumner, LP
P.O. Box 30787
Charlotte, North Carolina 28230

Donald R. Pocock
Nelson, Mullis, Riley & Scarborough, LLP
380 Knollwood Street, Ste. 530
Winston-Salem, North Carolina 27103

Peter A Paul
P.O. Box 3049
Cashiers, North Carolina 28717

Alan M. Presel
Brook & Scott, PLLC
8757 Red Oak Boulevard, Ste. 150
Charlotte, North Carolina 28217

Paul T. Reed
10115 Foxhall Drive
Charlotte, North Carolina 28210

John E. Rogers, II
T. Jonathan Clark
P.O. Box 5663
Spartanburg, South Carolina 29304

Eric M. Rosenwood
Rosenwood, Rose & Litwak, PLLC
1712 Euclid Avenue
Charlotte, North Carolina 28204

Jeffrey Stahl
Allen, Stahl & Kilbourne
20 Town Mountain Road, Ste. 100
Asheville, North Carolina 28801

Savannah J. Story
Poyner Spruill
P.O. Box 353
Rocky Mount, North Carolina

Zephyr Jost Sullivan
McAngus, Goudelock & Courie, PLLC
P.O. Box 2137
Asheville, North Carolina 28802

Timothy D. Swanson
Young, Morphis, Bach & Taylor, LLP
858 2nd Street NE, Ste. 200
P.O. Drawer 2428
Hickory, North Carolina 28603

Brian W. Tyson, Esq
Law Office Paul H. Bass
16928 Lancaster Hwy. Ste 109
Charlotte, North Carolina 28277

Trial Court Administrator's Office
Lincoln County Courthouse
P.O. Box 8
Lincolnton, North Carolina 28093

Trial Court Administrator's Office
Mecklenburg County Courthouse
832 East Fourth Street, Suite 2330
Charlotte, North Carolina 28204

This the _11_ day of March, 2022.

_____
James P. Galvin
N. C. Bar No.: 33933
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, NC 28204
Telephone: (704) 377-1464

| NORTH CAROLINA | **GENERAL COURT OF JUSTICE** |
|---|---|
| | **SUPERIOR COURT DIVISION** |
| **MECKLENBURG COUNTY** | **FILE NO. 21-CVS-018976** |

RYAN,HELEN,BARBARA

v.

## ORDER FOR ALTERNATIVE DISPUTE RESOLUTION

MECKLENBURG CO
KANIA LAW FIRM PA THE

IT IS HEREBY ORDERED that this case be referred to the following alternative dispute resolution procedure, which shall proceed in accordance with the Rules indicated below:

☐ Early Neutral Evaluation  ☐ Arbitration  ☐ Other _____

☐ Summary Jury Trial  ☒ Mediated Settlement Conference

The alternative dispute resolution procedure designated above shall be completed no later than **08/29/2022. Due to new local rule revisions, the ADR deadline is now a fixed date, which is 8 weeks prior to the trial date. Extensions will not be granted beyond this point unless exigent circumstances exist. Mediation must now be completed by this deadline**

Final trial date assigned **10/24/2022**.

Within twenty-one (21) days after the date Ordered, the parties may, by agreement, select a certified mediator to conduct their mediated settlement conference (As of 3/1/06, non-certified mediators are prohibited pursuant to the Supreme Court revisions). Within twenty-one (21) days after the date Ordered, the plaintiff or plaintiff's attorney shall notify the Court of the selection of a certified mediator. **Notice shall be on form AOC-CV-812 and shall be given to MK Grasta (704.686.0191), Alternative Dispute Resolution Coordinator, Caseflow Management Division, 832 East 4th Street, Suite 3420, Charlotte, NC 28202, with the original, one copy and a self-addressed stamped envelope. Any designations sent to the Clerk and filed without being processed by MK Grasta as Judge's designee are invalid and will require a motion to substitute mediator.**

A mediator selected by agreement of the parties shall be compensated at a rate agreed upon between the mediator and the parties. If the parties select their own mediator, they shall notify that individual prior to submitting the designation of mediator to the court.

A court-appointed mediator shall be compensated at the rate of $150 per hour for time spent in the mediated settlement conference, to be billed in quarter hour segments. **In addition, a one-time $175 administrative fee shall be paid pursuant to Rule 7.B, AND LOCAL RULE 3(E). COURT APPOINTED MEDIATORS ARE NOT PERMITTED TO WAIVE THIS FEE AND PARTIES MUST SHOW PROOF OF PAYMENT TO THE COURT IF A SUBSTITUTION IS SOUGHT AT ANY TIME AFTER THE APPOINTMENT. The conference fee shall be paid as provided for in Rule 7.F. Court appointed mediators may not charge parties for travel time, mileage, or any other out-of-pocket expenses associated with the court ordered mediation.**

All persons required by Rule 4.A (1) to attend the conference shall be physically present unless such physical presence is excused pursuant to the agreement of all parties and persons required to attend and the mediator or by an order of the Senior Resident Superior Court Judge, upon motion of a party and with notice to all parties and persons required to attend and the mediator.

The mediator shall schedule the date, time and location of the conference and timely notify all attorneys and unrepresented parties. The conference shall be completed by the deadline for completion set forth above and the mediator shall report the results on form AOC-CV-813 to the Court within ten (10) days after the conference is completed.

**Date Ordered: 04/13/2022**

GOODMAN,W,CLARK
301 S COLLEGE ST, SUITE 3500
CHARLOTTE, NC 28202-6037

**Carla N. Archie**
**Senior Resident Superior Court Judge**

FORM NO. CCF-14 *Rev. 5/06 Laser: g:\ccf14rvl*  **Original-File**  Copy-Plaintiff  Copy-Defendant

# STATE OF NORTH CAROLINA

Mecklenburg _____ County

In The General Court Of Justice
Superior Court Division

| Name Of Plaintiff(s) |
|---|
| Helen Barbara Ryan |

**FILED**

## DESIGNATION OF MEDIATOR IN SUPERIOR COURT CIVIL ACTION

**2022 MAY 13 A 11: 43**

MECKLENBURG CO., C.S.C.

BY _____

| Name And Address Of Plaintiff's Attorney (or Pro Se Plaintiff's Address) |
|---|
| James P. Galvin |
| Thurman, Wilson, Boutwell & Galvin, P.A. |
| 301 S. McDowell Street, Ste. 608 |
| Charlotte                    NC      28204 |

| Telephone No. | Fax No. (if applicable) |
|---|---|
| 704-377-4164 | 704377-5503 |

| Plaintiff's Attorney's Email Address (or Pro Se Plaintiff's Email Address) |
|---|
| james@twbglaw.com |

**VERSUS**

| Name Of Defendant(s) |
|---|
| Mecklenburg County, The Kania Law Frim |

| Name And Address Of Defendant's Attorney (or Pro Se Defendant's Address) |
|---|
| Samuel H. Poole, Jr |
| P.O. Box 30787 |
| |
| Charlotte                    NC      28230 |

| Telephone No. | Fax No. (if applicable) |
|---|---|
| 704-3328300 | |

| Defendant's Attorney's Email Address (or Pro Se Defendant's Email Address) |
|---|
| shp@cshlaw.com |

**NOTICE:**

Plaintiff's attorney should check and fill out
only one of the two Sections, **sign below,** and
return to the Senior Resident Superior Court Judge
within 21 days after the date of the Order for
Mediated Settlement Conference
**and distribute copies as noted below.**

G.S. 7A-38.1; Rule 2 of the Rules for Mediated Settlement Conferences
and Other Settlement Procedures in Superior Court Civil Actions

| Trial Date | Date Of Order Referring Matter To Mediation |
|---|---|
| 10/24/2022 | 04/13/2022 |

| Deadline For Completion Of Mediated Settlement Conference |
|---|
| 08/29/2022 |

| Tentative Trial Date |
|---|
| |

## SECTION 1 - NOTICE OF SELECTION OF CERTIFIED MEDIATOR BY AGREEMENT

☐ The above named case was referred to a mediated settlement conference. The parties have selected the mediator named below who has agreed to serve in this case and is certified pursuant to the Rules for Mediated Settlement Conferences.

| Name And Address Of Certified Mediator | Telephone No. | Fax No. (if applicable) |
|---|---|---|
| Jason James | 704-755-9463 | |
| James DeNobriga, PLLC | Mediator's Email Address | |
| 1712 Euclid Avenue | jason@jdlawcarolinas.com | |
| Charlotte                    NC      28203 | | |

The parties and the mediator have agreed upon the mediator's rate of compensation as follows: *(specify all terms of the compensation agreement.)*

_____

_____

_____

**NOTE:** *As an aid to mediator selection, the NC Dispute Resolution Commission maintains a list of certified superior court mediators at www.NCDRC.gov. Click on "Find a Mediator" and then click on "Mediated Settlement Conference Program." You may search for mediators by name or by judicial district. Once a mediator's name appears on your screen, click on it for a complete contact and availability listing.*

## SECTION 2 - MOTION FOR COURT APPOINTMENT OF MEDIATOR

☐ The above named case was referred to a mediated settlement conference.

The parties have been unable to agree upon the selection of a mediator and move the Senior Resident Superior Court Judge to appoint a certified mediator to conduct their conference.

| Date | Name Of Attorney (or Pro Se Party) | Signature Of Attorney (or Pro Se Party) |
|---|---|---|
| | | |

Original-File   Copy-Senior Resident Superior Court Judge or his/her designee
Copy-Plaintiff   Copy-Defendant   Copy-Mediator
(Over)

AOC-CV-812, Rev. 3/20
© 2020 Administrative Office of the Courts

## ORDER OF APPOINTMENT

The parties having reported their failure to agree upon the selection of a mediator or the parties having failed to notify the Court of their selection or nomination of a mediator within twenty-one (21) days after this case was ordered to mediation, the Court appoints the following certified mediator to conduct the mediated settlement conference.

| Name And Address Of Certified Mediator | Telephone No. | Fax No. (if applicable) |
|---|---|---|
| | Mediator's Email Address | |

**NOTICE TO MEDIATOR:** *The mediator shall be responsible for reserving a place and making arrangements for the conference and giving timely notice to all attorneys and unrepresented parties of the time and location of the conference. The mediated settlement conference shall be completed by the completion deadline set forth above, and the mediator shall report the results of the conference to the Court within ten (10) days after the conference is completed.*

| Date | Name Of Senior Resident Superior Court Judge (type or print) | Signature Of Senior Resident Superior Court Judge |
|---|---|---|
| 5-11-22 | Carla Archie | Carla Archie |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a copy of the foregoing Designation of Mediator in Superior Court Civil Action was served on the above-selected mediator and the parties at the addresses below by placing a copy of the same in the United States Mail, postage prepaid. *(Please provide names and addresses for the mediator and parties served in the spaces below. Attach additional sheets if necessary.)*

| Name And Address Of Mediator | Name And Address Of Party Or Attorney |
|---|---|
| Jason James | W. Clark Goodman |
| James Denobriga, PLLC | B. Chad Ewing |
| 1712 Euclid Avenue | Womble, Bond, Dickson, LLP, 301 S. College St. Ste. 3500 |
| Charlotte        NC        28203 | Charlotte        NC        28202 |

| Name And Address Of Party Or Attorney | Name And Address Of Party Or Attorney |
|---|---|
| | |

| Name And Address Of Party Or Attorney | Name And Address Of Party Or Attorney |
|---|---|
| | |

| Name And Address Of Party Or Attorney | Name And Address Of Party Or Attorney |
|---|---|
| | |

| Date | Name Of Party (type or print) | Signature Of Party Or Party's Attorney |
|---|---|---|
| 5-4-22 | PLAINTIFF | |

AOC-CV-812, Side Two, Rev. 3/20
© 2020 Administrative Office of the Courts

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

HELEN BARBARA RYAN, )
)
    Plaintiff. )
)
vs. )
)
MECKLENBURG COUNTY, and )
THE KANIA LAW FIRM, P.A. )
)
    Defendants, )
_____ )

**PLAINTIFF'S DESIGNATION
OF EXPERT WITNESS**

    NOW COMES Plaintiff, by and through undersigned counsel and pursuant to Rule 26(b)(4) of the North Carolina Rules of Civil Procedure and the applicable scheduling order in this matter, and hereby designates the following expert in this matter:

**Cameron D. Scott,** Attorney at Law, Morrow & Britton, PLLC, 6000 Fairview Road, Ste. 104A, Charlotte, North Carolina 28210, 312 South Chester Street, Gastonia, North Carolina 28052.

    Mr. Scott is an attorney at law who has extensive foreclosure experience in handling foreclosure proceedings having been an Assistant Clerk of Court and who has presided over foreclosure hearings for many years in addition to extensive experience as a foreclosure trustee. He is expected to opine about the foreclosure process, legal requirements, and the standard of care for an entity or their agent regarding conducting a foreclosure, debt accounting, and redemption rights.

    This the 22 day of June, 2022.

James P. Galvin
N.C. Bar No. 33933
Ryan B. Tiede
N.C. Bar No. 43258
Attorneys for Plaintiff
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, North Carolina 28204
Telephone: 704-377-4164

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that I have served all counsel of record in this action with a copy of the document(s) identified below:

## PLAINTIFFS DESIGNATION OF EXPERT WITNESS

By the following means:

   **X**    By mailing a copy of the same by United States Mail, postage prepaid, to the address(es) listed below.

_____ By fax transmittal to the number(s) identified below.

_____ By overnight mail to the address(es) identified below.

_____ By hand delivery to the address(es) identified below.

Samuel H. Poole, Jr.
Cranfill Sumner
P.O. Box 30787
Charlotte, North Carolina 28230

W. Clark Goodman
B. Chad Ewing
301 S. College Street, Ste. 3500
Charlotte, North Carolina 28202

This the 22 day of June, 2022.

James P. Galvin

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

HELEN BARBARA RYAN,

Plaintiff,

vs.

MECKLENBURG COUNTY and THE
KANIA LAW FIRM, P.A.,

Defendants

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

**ORDER GRANTING PLAINTIFFS
MOTION FOR EXTENSION OF TIME
TO RESPOND TO FIRST SET OF
INTERROGATORIES AND REQUEST
FOR PRODUCTION OF DOCUMENTS**

THIS CAUSE, being heard by the undersigned Clerk on Motion of the Plaintiff, Helen

Barbara Ryan for an order extending the time in which to answer or otherwise respond to Defendant

The Kania Law Firm Requests pursuant to Rule 6(b) of the Rules of Civil Procedure and it

appearing to the Court that the time allowed has not expired and that the motion should be allowed.

IT IS THEREFORE, ORDERED that the time for responding to Defendants Discovery

Requests as permitted by Rule 6(b) be extended to and including August 15, 2022.

This the 27th day of June, 2022

_a. mull_

Asst Clerk of Superior Court
Mecklenburg County, North Carolina

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

HELEN BARBARA RYAN,

Plaintiff,

vs.

MECKLENBURG COUNTY and the
KANIA LAW FIRM, P.A.,

Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

**PLAINTIFFS MOTION
FOR EXTENSION OF TIME
TO RESPOND TO FIRST SET OF
INTERROGATORIES AND REQUEST
FOR PRODUCTION OF DOCUMENTS**

Plaintiff Helen Barbara Ryan pursuant to Rule 6(b) of the North Carolina Rules of Civil

Procedure, by and through its counsel, moves for a thirty (30) day extension of time to serve its

responses to Defendant Kania Law Firm First Set of Interrogatories and First Requests for

Production of Documents ("Discovery Requests") in this matter. In support of its Motion, Plaintiff

show the Court as follows:

1.      Plaintiff was served discovery via hand delivery on about June 14, 2022.

2.      Plaintiff responses to Defendants Discovery Requests are currently due to be

served on or before July 14, 2022. Accordingly, the time to serve the responses has not yet

expired.

3.      Plaintiff request additional time in order to evaluate Defendants Discovery

Requests and prepare an appropriate answer or response.

4.      Plaintiff has not received any earlier extension of time to respond to the Discovery

5. That this motion is instituted in good faith and not for purposes of delay.

**WHEREFORE,** Plaintiff request an additional thirty (30) days, to and including

August 15, 2022, to answer or other respond to Defendants Discovery Requests.

This the _____ day of June, 2022

_____
James R. Galvin
N.C. Bar No.: 33933
Ryan B. Tiede
N.C. Bar No. 43258
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, North Carolina 28204
Telephone: 704-377-4164

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the following

individual(s) by depositing a copy of same in the United States Mail, postage prepaid, in

a wrapper properly addressed to:

Samuel H. Poole, Jr.
Taylor Sweet
Cranfill, Sumner, LLP
Post Office Box 30787
Charlotte, North Carolina 28230

W. Clark Goodman
B. Chad Ewing
Womble, Bond, Dickson, LLP
301 S. College Street, Ste. 3500
Charlotte, North Carolina 28202

This the ___27___ day of June 2022.

James P. Galvin
N.C. Bar No. 33933
Ryan B. Tiede
N.C. Bar No. 43258
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, North Carolina 28204
Telephone: 704-377-4164

NORTH CAROLINA                    F I L E D          IN THE GENERAL COURT OF JUSTICE
                                                        SUPERIOR COURT DIVISION
MECKLENBURG COUNTY                                          21-CVS-18976
                        2022 AUG -9  P 2: 02
HELEN BARBARA RYAN,
                        MECKLENBURG CO.. C.S.C.
                Plaintiff,

        v.

MECKLENBURG COUNTY and                              **MOTION FOR JUDGMENT**
THE KANIA LAW FIRM, P.A.,                              **ON THE PLEADINGS**

                Defendants.

NOW COMES Defendant Mecklenburg County (the "County"), through counsel, and

pursuant to N.C. R. CIV. P. 12(c), moves for judgment on the pleadings. In support of its

motions, the County shows as follows:

1.      The County is entitled to judgment on the pleadings on all of Plaintiff's claims

against it because the doctrine of governmental immunity bars them. *Oakwood Acceptance

Corporation, LLC v. Massengill*, 162 N.C.App. 199, 590 S.E.2d 412 (2004) (governmental

immunity barred negligence claims against county arising from tax foreclosure sale); *Phifer v.

Pasquotank County,* 260 N.C.App. 706, 817 S.E.2d 508, 2018 WL 3734855 at *3 (2018)

(governmental immunity applies to bar fraud claims against county).

2.      First, Plaintiff has not alleged facts that, if true, would establish waiver of

immunity. *See Arrington v. Martinez*, 215 N.C.App. 252, 263, 716 S.E.2d 410, 417 (2011)

(Governmental immunity is a bar that requires a plaintiff to establish a waiver); *Sanders v. State

Pers. Comm'n,* 183 N.C.App. 15, 19, 644 S.E.2d 10, 13 (2007) (Where a complaint against a

governmental party fails to allege specifically a waiver of governmental immunity, it fails to

state a cause of action); 162 N.C.App. at 213, 590 S.E.2d at 422 (same). Second, as evidenced

by the Affidavit of Betty Coulter attached hereto as Exhibit A, the County has not waived its governmental immunity.[1]

      3.     The County is entitled to judgment on the pleadings on Plaintiff's claims against it for punitive damages because punitive damages are not recoverable against the County as a governmental entity. *Ripellino v. N.C. School Board Ass'n, Inc.*, 158 N.C.App. 423, 431, 581 S.E.2d 88, 94, (2003), *quoting Long v. City of Charlotte*, 306 N.C. 187, 207, 293 S.E.2d 101, 114 (1982).

      This the 9th day of August, 2022.

                             WOMBLE BOND DICKINSON (US) LLP

                             W. Clark Goodman (N.C. State Bar No. 19927)
                             B. Chad Ewing (N.C. State Bar No. 27811)
                             301 South College Street, Suite 3500
                             Charlotte, North Carolina  28202-6037
                             Telephone: (704) 331-4900
                             Facsimile: (704) 331-4955
                             Email: Clark.Goodman@wbd-us.com
                             E-Mail: Chad.Ewing@wbd-us.com
                             *Attorneys for Defendant Mecklenburg County*

---

[1] The North Carolina Court of Appeals has consistently held that the defense of governmental immunity presents a question of personal jurisdiction. *See Can Am South, LLC v. State*, 234 N.C.App. 119, 759 S.E.2d 304 (2014). Accordingly, the Court is not limited to the allegations contained in the Complaint in deciding the County's Motion for Judgment on the Pleadings on the basis of governmental immunity.

# EXHIBIT A

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

HELEN BARBARA RYAN,

Plaintiff,

v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.

Defendants.

**AFFIDAVIT OF BETTY COULTER IN
SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Betty Coulter, being duly sworn, deposes and says the following:

1.      I am currently employed by the City of Charlotte as Manager of the Risk Management Division of the Finance Department of the City of Charlotte ("RMD"), which administers insurance and self-insured retention programs for the City of Charlotte, Mecklenburg County, and the Charlotte-Mecklenburg Board of Education. I am over the age of eighteen, am under no disability, and have personal knowledge of all matters stated in this Affidavit, or have knowledge based upon records regularly maintained during business by RMD. The information contained within RMD's business records is recorded by someone with actual knowledge of the information at or around the time at which the information was generated. Said information is recorded and maintained as part of RMD's regular course and scope of business by an employee acting within the normal scope of his or her duties.

2.      I have access to all of RMD's documents related to Mecklenburg County's insurance coverage, self-insured retention limits, and other insurance-related issues, and therefore, can testify regarding the insurance coverage available to Mecklenburg County under all policies issued to it.

3.      I am aware that N.C. GEN. STAT. § 153A-435 provides that participation in a local government risk pool may be deemed to be the purchase of insurance. I am familiar with the North Carolina Statutes relating to local government risk pools, *i.e.*, N.C. GEN. STAT. § 58-23-1 *et seq.* (formerly § 58-490 *et seq.*). Mecklenburg County has not given the Commissioner of Insurance for the State of North Carolina notification that the County intends to organize and operate a risk pool. The requirements of the local government risk pool statutes have not been met by Mecklenburg County. Mecklenburg County does not participate in a local government risk pool and did not do so in policy year 2018-19.

4.      The Board of County Commissioners of Mecklenburg County has not adopted any resolution that deems the creation of a funded reserve to be the same as the purchase of insurance for purposes of waiving governmental immunity as provided in N.C. GEN. STAT. §

153A-435. In fact, the Board of County Commissioners has specifically adopted agreements and resolutions that provided to the contrary.

5.     I have reviewed the Complaint in this action, in which Plaintiff alleges that her property was wrongfully foreclosed upon on or about January 8, 2018.

6.     I am aware of N.C. GEN. STAT. § 153A-435, which provides in substance that a county waives its governmental immunity to the extent of insurance coverage for any act or omission occurring in the exercise of a governmental function. During the policy year of 7/1/2018-2019, Mecklenburg County did not have any insurance coverage for claims that were less than $1.5 million in value, and even if a claim exceeded $1.5 million, the coverage only applies if the County was obligated to pay the claim. Thus, this coverage would only be triggered if the doctrine of governmental immunity did not apply to a claim and if the claim exceeded $1.5 million in value.

7.     During this time, Mecklenburg County was covered by policies issued by Safety National Casualty Corporation, and Safety Specialty Insurance Company.

8.     The policies have two coverage parts: Policy GLE4058926 ($2M limit) for Public Liability, and policy SPO6675343 ($2M limit) for Public Officials Liability. Policy XPE4058929 ($3M limit) provides excess coverage over and above both policies. Mecklenburg County is an insured under all three policies.

9.     Policy GLE4058926 provides coverage for "bodily injury, personal injury, advertising injury, or property injury which occurs during this policy period and to which this insurance applies." This coverage does not apply until the payment of a $1.5 million self-insured retention. After the retained limit is paid, the Policy provides coverage for up to $3.5 million, for the "total amount of damages…the Insured is legally obligated to pay because of a negligent occurrence."

10.    Public Officials Errors & Omissions are covered under policy SPO6675343. This coverage does not apply until the payment of a $250,000 self-insured retention.

11.    After the retained limit is paid, the Policy provides coverage for up to $4.75 million, for the "total amount of damages…the Insured is legally obligated to pay because of a wrongful act."

12.    Endorsement Number ESM 006 0817, applicable to the coverage for public

officials' errors & omissions, provides that

> The purchase of this policy is not intended by the **Insured** to waive its governmental immunity under North Carolina General Statutes Sect. 153A-435 or any other applicable law or statute or amendments thereto. Accordingly, subject to its terms, conditions and limits, this policy provides coverage only for **Wrongful Acts** for which the defense of governmental immunity is clearly not applicable or for which, after the defense of governmental immunity is asserted, a

court of competent jurisdiction determines the defense of governmental immunity is not applicable.

13.     Endorsement number GLM 024 0917, applicable to the coverage for public liability, provides that

> This policy only applies to the extent that immunity from liability is not otherwise provided under North Carolina law. Your purchase of this insurance does not constitute a waiver on behalf of any insured, of the sovereign or governmental immunity provided under N.C.G.S.A. Sect. 160A-485, N.C.G.S.A. Sect. 160A-485.5, N.C.G.S.A. Section 153A-435, N.C.G.S.A. 115C-42, or N.C.G.S.A.115D-24, or any amendments thereto.

14.     Because of the endorsements, there is no insurance coverage under any of the above-referenced policies for the claims alleged in the Complaint in this action. Further, even without the endorsements, there would be no coverage for the claims alleged in the Complaint in this action because of the deductibles and retained liabilities.

15.     Thus, Mecklenburg County has not waived its governmental immunity with respect to the claims asserted in the lawsuit either by participating in a local risk pool, creating a funded reserve, or purchasing insurance coverage for the asserted claims.

16.     To the best of my knowledge and belief, Mecklenburg County has not waived governmental immunity with respect to the claims asserted in this lawsuit.

Further affiant sayeth not.

This the __11__ day of ___July___, 2022.

_____
Betty Coulter

Sworn to and subscribed before me
this __11th__ day of __July__, 2022.

_____
Notary Public

My Commission Expires: _3-5-2025_

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2022, I caused a copy of the foregoing **MOTION FOR JUDGMENT ON THE PLEADINGS** to be served by First Class United States Mail and email to:

James P. Galvin
Ryan B. Tiede
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204
*Attorneys for Plaintiff*

Samuel H. Poole Jr.
Taylor J. Sweet
Cranfill Sumner, LLP
P.O. Box 30787
Charlotte, N.C. 28230
*Attorneys for The Kania Law Firm, P.A.*

B. Chad Ewing

**STATE OF NORTH CAROLINA**
**COUNTY OF MECKLENBURG**

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NUMBER 21 CVS 018976

# Helen Barbara Ryan

2022 AUG -9 P 4:08

MECKLENBURG CO.. C.S.C

BY _____

½ **ORDER FOR**
**EXTENSION OF ADR DEADLINE**

Plaintiff

V.

# Mecklenburg County

## The Kania Law Firm, P.A.

Defendant

| | ORDER | |
|---|---|---|

NOW, THEREFORE, IT IS ORDERED, based upon the foregoing reasons, that the deadline for completion of the ADR be extended to ~~05/10/2023~~ 5 / 8 / 23 .

This the 9th day of August , 2022.

_____
ADR Coordinator

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NUMBER 21 CVS 018976

FILED
2022 AUG -9 A 11: 00
MECKLENBURG CO., C.S.C.
BY _____

Helen Barbara Ryan

Plaintiff

v.

**MOTION FOR**
**EXTENSION OF ADR DEADLINE**

Mecklenburg County

The Kania Law Firm, P.A.

Defendant

| | **MOTION** | |
|---|---|---|

With the consent of all the parties, the undersigned attorney/neutral hereby requests an extension of the deadline for completion of ADR until ~~05/10/2023~~ 5/8/23 in the above captioned matter, based upon the following reason(s):

The trial for this matter was recently continued by Caseflow Manager Savage

to 06/05/23 to allow additional time for a sister case related to

this matter to conclude in the Court of Appeals. A similar extension

is requested for mediation to be able to be meaningfully conducted.

Previous Number of Extensions: 0

Presently Calendared for Trial On: 06/05/2023

*Emmett H Poole by RMR*
Attorney for ☐ Plaintiff ☒ Defendant

*8/9/2022*
Date
8/9/2022
Date

☐ Neutral

Date

Copy to:

James P. Galvin

8/9/2022

Attorney for ☒ Plaintiff ☒ Defendant

Date

W. Clark Goodman

8/9/2022

☐ Neutral

Date

CCF-44A

REV August 2011



NORTH CAROLINA

*FILED*

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

MECKLENBURG COUNTY *2022 AUG 30* P 2: 57

HELEN BARBARA RYAN, *MECKLENBURG CO.. C.S.C*

*BY*

      Plaintiff,

   v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

      Defendants.

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that a hearing will be held on Defendant **Mecklenburg County's Motion for Judgment on the Pleadings** via WebEx on **October 6, 2022 at 11:30 a.m.**, or as soon thereafter as the matter may be heard.  Instructions from the Court for attending this WebEx are as follows:

Please sign into the link below five minutes prior to the start time of your scheduled hearing.  You will remain in the "Lobby" until time for your hearing to begin and at that point the courtroom clerk will admit you into the hearing.  Please make certain your microphone is on mute prior to entering the hearing and your video is turned on at all times.

The remote Superior Court meeting rooms can be accessed by going to **https://nccourts.webex.com/meet/meckcr6310.sh** and selecting the "JOIN" tab.  If you are unable to attend by video, you may join via phone by calling: **1-415-655-0001** US Toll and using **Access code: 126 653 3213**

1.    Please remember that, although this is a remote hearing, it is still an official court appearance.  So normal courtroom decorum and dress codes still apply.

2.    In compliance with North Carolina law, this hearing is open to the public.

3.    This hearing is being recorded by the Clerk of Court and will be maintained for purposes of establishing the official record.

4.    Any other recording of this hearing is expressly prohibited, just as if we were appearing live in a courtroom, and anyone who makes an unauthorized recording may be subject to contempt of court.

5.    All parties to the lawsuit should turn on their video.

6. Everyone should place themselves on "mute" and remain muted throughout the hearing unless it is your turn to speak.

7. To avoid talking over each other, please wait until the Court calls on you to speak.

8. And if you wish to be heard out of turn, please use the "raise hand" feature in WebEx. You may access that feature by clicking the "participants" button at the bottom of the screen. Once the participant list appears on the right-hand side of the window, hover over your name and a "raise hand" icon will appear. You may click the "raise hand" icon to obtain the court's attention or to lower your hand once recognized.

9. When it is your turn to speak, please speak slowly and clearly.

10. If you have documents you wish to electronically share with the Court and opposing party, please use the "share" button at the bottom of your screen.

**All Briefs** in Superior Court cases must be emailed to Julie Mulhall at D26.Briefs@nccourts.org no later than two business days prior to the hearing on the motion. **The subject line of the email must contain the session date and the case number and caption**. All counsel of record and pro se parties shall be served in compliance with Rule 5 of the NC Rules of Civil Procedure absent stipulation or agreement otherwise.

This the 30th day of August, 2022.

**WOMBLE BOND DICKINSON (US) LLP**

W. Clark Goodman (N.C. State Bar No. 19927)
B. Chad Ewing (N.C. State Bar No. 27811)
301 South College Street, Suite 3500
Charlotte, North Carolina 28202-6037
Telephone: (704) 331-4900
Facsimile: (704) 331-4955
Email: Clark.Goodman@wbd-us.com
E-Mail: Chad.Ewing@wbd-us.com
*Attorneys for Defendant Mecklenburg County*

2

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2022, I caused a copy of the foregoing **NOTICE OF HEARING** to be served by First Class United States Mail and email to:

James P. Galvin
Ryan B. Tiede
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204
*Attorneys for Plaintiff*

Samuel H. Poole Jr.
Taylor J. Sweet
Cranfill Sumner, LLP
P.O. Box 30787
Charlotte, N.C. 28230
*Attorneys for The Kania Law Firm, P.A.*

B. Chad Ewing

STATE OF NORTH CAROLINA IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG 21-CVS-18976

2022 SEP 23 P 4:25

MECKLEN... CO. C.S.C.

BY:

HELEN BARBARA RYAN

      Plaintiff,

VS.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.

      Defendants

                          **MOTION FOR LEAVE**
                          **TO AMEND COMPLAINT**

      **NOW COMES,** Plaintiff Helen Barbara Ryan by and through the undersigned counsel and pursuant to Rule 15 of the Rules of Civil Procedure for leave to file an amendment to its pleadings, and in support of thereof states as follows:

1.     Plaintiff filed the Complaint on November 24, 2021.

2.     Defendant Mecklenburg County filed a responsive pleading on or about February 2, 2022.

3.     Defendant The Kania Law Firm filed a responsive pleading on or about February 18, 2022.

4.     Due to a pending remand on an ancillary case from the North Carolina Court of Appeals which will not move forward until the North Carolina Supreme Court takes requested action, the parties to this case moved to significantly extend the deadlines in this matter on July 5, 2022.

5.     The motion was granted and extended the trial date from October 25, 2022 to June 5, 2023.

6.     On August 30, Mecklenburg County filed a notice of hearing seeking judgment on the pleadings in this matter based, in part, on an alleged pleading defect by the Plaintiff.

7.     Plaintiff wishes to Amend its pleading filed in this case in order to remedy any alleged defect.

8.     Specifically, Plaintiff now seeks leave of Court amend its Complaint to add the

following allegation: *Upon information and belief, Mecklenburg County waives governmental immunity in this matter by virtue of (i) engagement in a proprietary function, and (ii) procurement of liability insurance maintained at all times relevant to this amended complaint affording coverage of the asserted claims herein.*

9.  Mecklenburg County is not prejudiced by this amendment, it is not futile and permission to amend pleadings should be freely given when justice so requires.

    **WHEREFORE**, Plaintiff respectfully prays for an Order as follows:

    1.  To grant Plaintiff leave to amend its Complaint as set forth in paragraph eight above.

    2.  For such other and further relief that the Court deems just and proper.

This the _23_ day of September, 2022.

James P. Galvin
N/C. Bar No. 33933
Ryan B. Tiede
N. C. Bar No. 43258
Attorney for Plaintiff
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the following individual(s) by depositing a copy of same in the United States Mail, postage prepaid, in a wrapper properly addressed to:

Samuel H. Poole, Jr.
Cranfill Sumner
P.O. Box 30787
Charlotte, North Carolina 28230

W. Clark Goodman
B. Chad Ewing
301 S. College Street, Ste. 3500
Charlotte, North Carolina 28202

This the 23 day of September, 2022.

James P. Galvin
N.C. Bar No. 33933
Ryan B. Tiede
N.C. Bar No. 43258
Attorney for Plaintiff
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, North Carolina 28204
Telephone: 704-377-4164
Facsimile: 704-377-5503

NORTH CAROLINA

MECKLENBURG COUNTY

HELEN BARBARA RYAN,

               Plaintiff,

     v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

               Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

FILED

2022 OCT 11 ⊃ 2: 54

MECKLENBURG CO., C.S.C

BY_____

**NOTICE**

      PLEASE TAKE NOTICE pursuant to an Order issued by the Honorable Robert C. Ervin

at the hearing on Mecklenburg County's Motion for Judgment on the Pleadings on October 6,

2022, Mecklenburg County provided Plaintiff's Counsel with policy GLE4058926 and

policy SPO6675343 on October 11, 2022. Pursuant to the Court's Order, Plaintiff's counsel has

three weeks from October 11, 2022, up to and including November 1, 2022, within which to

submit a response in support of Plaintiff's position to the Court.

      This the 11th day of October, 2022.

                         **WOMBLE BOND DICKINSON (US) LLP**

                         _____

                         W. Clark Goodman (N.C. State Bar No. 19927)
                         B. Chad Ewing (N.C. State Bar No. 27811)
                         301 South College Street, Suite 3500
                         Charlotte, North Carolina 28202-6037
                         Telephone: (704) 331-4900
                         Facsimile: (704) 331-4955
                         Email: Clark.Goodman@wbd-us.com
                         E-Mail: Chad.Ewing@wbd-us.com
                         *Attorneys for Defendant Mecklenburg County*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, I caused a copy of the foregoing **NOTICE** to be served by First Class United States Mail and email to:

James P. Galvin
Ryan B. Tiede
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204
*Attorneys for Plaintiff*

Samuel H. Poole Jr.
Taylor J. Sweet
Cranfill Sumner, LLP
P.O. Box 30787
Charlotte, N.C. 28230
*Attorneys for The Kania Law Firm, P.A.*

B. Chad Ewing

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
23-CVS-18976

HELEN BARBARA RYAN )
)
        Plaintiff, )
)
vs. )        **MOTION TO STAY**
)        **PROCEEDINGS**
MECKLENBURG COUNTY and )
THE KANIA LAW FIRM, P.A. )
)
        Defendants )
_____ )

COMES NOW the Plaintiff, by and through the undersigned counsel, with the Consent of Defendant The Kania Law Firm, PA, moving the Court to stay this proceeding pending the outcome of a related proceeding, *County of Mecklenburg v. Ryan,* Mecklenburg County Case No. 18-CVD-495 and N.C. COA Case No. 21-205 (N.C. Ct. App.) (the "Prior Action"). In support, Plaintiff states as follows:

1. This action arises out of a tax foreclosure conducted on September 18, 2019 by The Kania Law Firm, PA as agent for Mecklenburg County.

2. The Plaintiff sought to set aside the foreclosure in the Prior Action and the parties to that action were Mecklenburg County and Helen Barbara Ryan.

3. While the Prior Action was under consideration by the Court of Appeals, this action was filed in the Superior Court Division on November 24, 2021 in order to timely preserve other claims against Defendants related to the foreclosure.

4. Defendant Mecklenburg County filed an Answer in this action on February 7, 2022.

5. The Court of Appeals, in its opinion issued 15 February 2022, held that Mecklenburg County erroneously conducted the foreclosure by (i) failing to obtain service on the Plaintiff for the foreclosure and (ii) failing to withdraw the foreclosure after Plaintiff successfully exercised her right of redemption prior to the forecourse sale becoming final. (2202-NCCOA-90 attached as Exhibit A).

6. However, because the high bidder was determined to be a good faith purchaser, the Court of Appeals did not set aside the foreclosure and instead granted the Plaintiff the

right to received restitution from Mecklenburg County and remanded the matter to the trial court to conduct the restitution hearing.

7. Prior to the restitution hearing being set in the Prior Action, Mecklenburg County filed a Petition for Writ of Certiorari to the Supreme Court of North Carolina on 29 April 2022.

8. The restitution hearing in the Prior Action can not be set until after the Supreme Court rules on the Writ of Certiorari.

9. It is uncertain what damages will be considered in the Prior Action but the restitution award in the Prior Action will certainly overlap with the claimed damages of this action.

10. Undersigned counsel discussed informally staying this matter during the pendency of the Prior Action with the other parties to this action while we waited on the Supreme Court.

11. Towards that end, on 28 June 2022, The Kania Law Firm, P.A. filed a motion to continue this matter for 8-10 months. Mecklenburg County did not object and that trial for this action was moved from 24 October 2022 to 5 June 2023.

12. On 30 August 2022, Mecklenburg County noticed for hearing a motion to dismiss based upon governmental immunity.

13. A stay of this proceeding promotes judicial economy, will not harm or prejudice any party of this action, will prevent possible double damages, and will prevent unnecessary litigation expenses.

WHEREFORE, based on the foregoing, Plaintiff and Defendant The Kania Law Firm, PA jointly request that the Court enter an Order staying this action until the Prior Action is concluded.

This the 14 day of October, 2022

James P. Galvin
N/C/Bar No. 33933
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, NC 28204
*Attorney for Plaintiff*

Samuel H. Poole, Jr.
N.C. Bar No. 13659
Cranfill, Sumner LLP
PO Box 30787
Charlotte, NC 28230
*Attorney for Defendant Kania Law Firm*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the following individual(s) by depositing a copy of same in the United States Mail, postage prepaid, in a wrapper properly addressed to:

Samuel H. Poole, Jr.
Taylor Sweet
Cranfill, Sumner, LLP
Post Office Box 30787
Charlotte, North Carolina 28230

W. Clark Goodman
B. Chad Ewing
Womble, Bond, Dickson, LLP
301 S. College Street, Ste. 3500
Charlotte, North Carolina 28202

This the _14_ day of October, 2022.

James P. Galvin
N.C. Bar No. 33933
Ryan B. Tiede
N. C. Bar No. 43258
Attorney for Plaintiff
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204

NORTH CAROLINA

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

MECKLENBURG COUNTY    2022 OCT 19 P 3: 25    21-CVS-18976

HELEN BARBARA RYAN,   MECKLENBURG CO., C.S.C.

      Plaintiff,

   v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

      Defendants.

**CONSENT PROTECTIVE ORDER**

Pursuant to N.C. R. CIV. P. 26(c), and for good cause shown, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.      Scope. This Protective Order is entered into and is applicable to the above-captioned matter only in regard to the insurance policies identified in the Affidavit of Betty Coulter filed in this civil action (hereinafter, referred to as a "Document" or "Documents"). Notwithstanding any provisions hereunder that may be construed to the contrary, the Documents are the only documents that shall be subject to this Order concerning confidential information.

2.      Confidential Documents. Any party or non-party may designate Documents as confidential after review of the Documents. Confidential Documents shall include any Document which contains nonpublic personal information, proprietary business information, trade secrets, and/or any other information worthy of protection pursuant to applicable law. Documents which are available in the public domain and/or Documents which contain solely information that is available in the public domain may not be designated as confidential and are not presumed to be confidential.

3.     Form and Timing of Designation of Confidential Documents.  Confidential Documents shall be so designated by the producing party placing or affixing the word "CONFIDENTIAL" on the Documents in a manner which will not interfere with the legibility of the Document.  The word "CONFIDENTIAL" shall be placed or affixed in a manner which will permit complete removal of the word "CONFIDENTIAL."  Documents shall be designated "CONFIDENTIAL" by the producing party prior to, or contemporaneously with, the production or disclosure of the Documents.

4.     Protection of Confidential Materials.

a.     General Protections.  All Documents designated Confidential under this Order shall not be used or disclosed by the parties or counsel for the parties or any other persons subject to this Order other than preparing for and conducting this litigation (including any appeal of this civil action).

b.     Limited Third Party Disclosures of Confidential Information.  The parties and counsel for the parties shall not disclose or permit the disclosure of any Documents designated as Confidential under the terms of this Order to any other person or entity except as set forth in subparagraphs (i)-(viii) below (collectively, a "Confidential Qualified Person"):

i.     Parties and employees, agents or contractors of a party and/or affiliate of a party to this Order but only to the extent that the individual party or employee's assistance is necessary to the conduct of this litigation;

ii.     All lawyers representing a party with respect to this litigation, and other lawyers within their respective law firms, and their staffs to whom it is necessary that material be disclosed for the purposes of this litigation, including commercial copiers, draftsmen,

2

etc. As used in this subparagraph, the term "lawyers" shall include both lawyers who are and lawyers who are not employees of any party and/or affiliate of a party;

      iii.     Bona Fide independent experts or consultants retained solely for the purpose of assisting legal counsel in the conducting of this litigation who have a need to know the information contained in such Confidential Document.

      iv.     Any person who is a current employee, member, officer, director or representative of the party who produced such Confidential Document;

      v.     Any witness testifying under oath who was previously: (i) an employee, officer, member, director of or consultant to the person who produced the Confidential Document and/or that person's affiliate(s); (ii) an employee of any entity which was a consultant, licensee or an employee of the person who produced the Confidential Document and/or that person's affiliate(s) and/or (iii) an employee of or consultant to any entity which was an assignee to or assignor of the party who produced such Confidential Document and/or that person's affiliate(s);

      vi.     Stenographic reporters, certified translators or interpreters, as are necessarily incident to the conduct of discovery, the preparation for the trial, or the trial itself;

      vii.     The Court and all Court personnel necessary for the litigation of this case; and

      viii.     Other persons only upon consent of the producing party or upon order of the Court and on such conditions as are agreed to or ordered.

5.    Control of Documents.

a.    Original documents.  Counsel for the parties shall take reasonable efforts to prevent unauthorized disclosure of Documents designated as Confidential pursuant to the terms of this Order.

b.    Copies.  All copies, duplicates, extracts, summaries or descriptions (hereinafter referred to collectively as "Copies") of documents designated as Confidential under this Order or any portion of such a document, shall be immediately affixed with the designation "CONFIDENTIAL" if the word does not already appear on the copy.  All such Copies shall be afforded the full protection of this Order.

6.    Challenges to Designation as Confidential.

a.    Any Confidential designation is subject to challenge.  The following procedures shall apply to any such challenge:  The burden of proving the necessity of a Confidential designation remains with the party asserting confidentiality.  A party who contends that Documents designated Confidential are not entitled to confidential treatment shall give written notice to the party who affixed the confidentiality designation of the specific documents whose treatment it challenges and the specific basis for the challenge.  The parties will make a good faith effort to resolve any disputes concerning the confidential treatment of any information. If the parties cannot resolve any such dispute, the party challenging the designation of the Documents may move for an Order challenging the Confidential designation.

b.    Notwithstanding any challenge to the designation of Documents as Confidential, all material previously designated Confidential shall continue to be treated as subject to the full protections of this Order until one of the following occurs:

4

i.       The party who claims that the Document is Confidential withdraws such designation in writing; or

ii.       The Court rules that the Document should no longer be designated as Confidential.

7.       Treatment on Conclusion of Litigation.

a.       Order Remains in Effect.  All provisions of this Order restricting the use of Documents designated CONFIDENTIAL shall continue to be binding after the conclusion of the litigation unless otherwise ordered.

b.       Return of Confidential Documents.  Subject to a final order of the Court, within thirty (30) days after the conclusion of the case, including conclusion of any appeal, all Documents treated as Confidential under this Order, including copies as defined in Paragraph 5.b. above shall be returned to the producing party unless:

i.       The Document has been entered as evidence or filed;

ii.       The parties stipulate to destruction in lieu of return; or

iii.       As to Documents containing the notation, summations or other mental impressions of the receiving party, that party elects destruction.

8.       In the event a party seeks to file any Document that is subject to protection under this Order with the Court, that party shall take appropriate action to ensure that the Document receives proper protection from public disclosure including: (1) filing a redacted Document with the consent of the party who designated the document as Confidential; (2) where appropriate (e.g., in relation to discovery and evidentiary motions), submitting the Documents solely for in camera review; or (3) where the preceding measures are not adequate, seeking permission to file the Document under seal pursuant applicable rules and law.  Absent extraordinary circumstances

5

making prior consultation impractical or inappropriate, the party seeking to submit the document to the Court shall first consult with counsel for the party who designated the Document as Confidential to f some measure less restrictive than filing the Document under seal may serve to provide adequate protection. This duty exists irrespective of the duty to consult on the underlying motion.

9.    Greater Protection of Specific Documents. No party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an Order providing such special protection.

10.    Discovery of Protected Information by Non-Parties. If a receiving party or a Confidential Qualified Person receives a subpoena or other request for production from a non-party to this case seeking production or other disclosure of Documents marked Confidential, the party subject to the subpoena or request shall immediately give written notice to the producing party and the party that designated the Documents as Confidential, specifying the information sought and enclosing a copy of the subpoena or other form of compulsory process, and shall notify the person serving the process that such materials are the subject of this Order. Unless within twenty (20) days of service of such notification, the producing party or other party that designated the materials applies for an order from a court of competent jurisdiction precluding the receiving party from copying with such request, the receiving party shall be free to produce the requested Documents. If such an application is made, the party upon whom the process was served shall not produce the Confidential Documents until after the court rules on such application.

11.    Order Subject to Modification. This Order shall be subject to modification on motion of any party or any other person who may show an adequate interest in the matter to

intervene for purposes of addressing the scope and terms of this Order. The Order shall not, however, be modified until the parties shall have been given notice and an opportunity to be heard on the proposed modification.

IT IS SO ORDERED, this the \_\_\_\_ day of _____, 2022.

_____
SUPERIOR COURT JUDGE

We Consent:

_James P. Galvin_
_by Chad Ewing (with permission)_
James P. Galvin (N.C. State Bar # 33933)
Ryan B. Tiede (N.C. State Bar No. 43258)
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204
Telephone: (704) 377-4164
Email: james@twbglaw.com
Email: ryan@twbglaw.com
**_Attorneys for Plaintiff_**

_____
W. Clark Goodman (N.C. State Bar # 19927)
B. Chad Ewing (N.C. State Bar # 27811)
Womble Bond Dickinson (US) LLP
301 South College Street, Suite 3500
Charlotte, North Carolina 28202-6037
Telephone: (704) 331-4900
Facsimile: (704) 331-4955
Email: Clark.Goodman@wbd-us.com
Email: Chad.Ewing@wbd-us.com
**_Attorneys for Defendant Mecklenburg County_**

_Taylor J. Sweet_
_by Chad Ewing (with permission)_
Samuel H. Poole Jr. (N.C. Bar # 13659)
Taylor J. Sweet (N.C. Bar # 55101)
Cranfill Sumner, LLP
P.O. Box 30787
Charlotte, North Carolina 28230
Telephone: (704) 332-8300
Facsimile: (704) 332-9994
Email: shp@cshlaw.com
Email: tsweet@cshlaw.com
**_Attorneys for Defendant The Kania Law Firm, P.A._**

7

NORTH CAROLINA

MECKLENBURG COUNTY

HELEN BARBARA RYAN,

         Plaintiff,

   v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2022, a copy of the **Consent Protective Order**,

attached hereto as Exhibit A, was served upon parties to this civil action pursuant to N.C. R. Civ.

P. 5 via U.S. Mail as follows:

James P. Galvin
Ryan B. Tiede
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204
*Attorneys for Plaintiff*

Samuel H. Poole Jr.
Taylor J. Sweet
Cranfill Sumner, LLP
P.O. Box 30787
Charlotte, North Carolina 28230
*Attorneys for Defendant*
*The Kania Law Firm, P.A.*

This the 20th day of October, 2022.

**WOMBLE BOND DICKINSON (US) LLP**

W. Clark Goodman (N.C. State Bar No. 19927)
B. Chad Ewing (N.C. State Bar No. 27811)
301 South College Street, Suite 3500
Charlotte, North Carolina 28202-6037
Telephone: (704) 331-4900
Facsimile: (704) 331-4955
Email: Clark.Goodman@wbd-us.com
E-Mail: Chad.Ewing@wbd-us.com
*Attorneys for Defendant Mecklenburg County*

# EXHIBIT A

NORTH CAROLINA

MECKLENBURG COUNTY

HELEN BARBARA RYAN,

      Plaintiff,

v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

      Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

**CONSENT PROTECTIVE ORDER**

Pursuant to N.C. R. CIV. P. 26(c), and for good cause shown, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.    Scope. This Protective Order is entered into and is applicable to the above-captioned matter only in regard to the insurance policies identified in the Affidavit of Betty Coulter filed in this civil action (hereinafter, referred to as a "Document" or "Documents"). Notwithstanding any provisions hereunder that may be construed to the contrary, the Documents are the only documents that shall be subject to this Order concerning confidential information.

2.    Confidential Documents. Any party or non-party may designate Documents as confidential after review of the Documents. Confidential Documents shall include any Document which contains nonpublic personal information, proprietary business information, trade secrets, and/or any other information worthy of protection pursuant to applicable law. Documents which are available in the public domain and/or Documents which contain solely information that is available in the public domain may not be designated as confidential and are not presumed to be confidential.

3. Form and Timing of Designation of Confidential Documents. Confidential Documents shall be so designated by the producing party placing or affixing the word "CONFIDENTIAL" on the Documents in a manner which will not interfere with the legibility of the Document. The word "CONFIDENTIAL" shall be placed or affixed in a manner which will permit complete removal of the word "CONFIDENTIAL." Documents shall be designated "CONFIDENTIAL" by the producing party prior to, or contemporaneously with, the production or disclosure of the Documents.

4. Protection of Confidential Materials.

a. General Protections. All Documents designated Confidential under this Order shall not be used or disclosed by the parties or counsel for the parties or any other persons subject to this Order other than preparing for and conducting this litigation (including any appeal of this civil action).

b. Limited Third Party Disclosures of Confidential Information. The parties and counsel for the parties shall not disclose or permit the disclosure of any Documents designated as Confidential under the terms of this Order to any other person or entity except as set forth in subparagraphs (i)-(viii) below (collectively, a "Confidential Qualified Person"):

i. Parties and employees, agents or contractors of a party and/or affiliate of a party to this Order but only to the extent that the individual party or employee's assistance is necessary to the conduct of this litigation;

ii. All lawyers representing a party with respect to this litigation, and other lawyers within their respective law firms, and their staffs to whom it is necessary that material be disclosed for the purposes of this litigation, including commercial copiers, draftsmen,

2

etc. As used in this subparagraph, the term "lawyers" shall include both lawyers who are and lawyers who are not employees of any party and/or affiliate of a party;

        iii.    Bona Fide independent experts or consultants retained solely for the purpose of assisting legal counsel in the conducting of this litigation who have a need to know the information contained in such Confidential Document.

        iv.    Any person who is a current employee, member, officer, director or representative of the party who produced such Confidential Document;

        v.    Any witness testifying under oath who was previously: (i) an employee, officer, member, director of or consultant to the person who produced the Confidential Document and/or that person's affiliate(s); (ii) an employee of any entity which was a consultant, licensee or an employee of the person who produced the Confidential Document and/or that person's affiliate(s) and/or (iii) an employee of or consultant to any entity which was an assignee to or assignor of the party who produced such Confidential Document and/or that person's affiliate(s);

        vi.    Stenographic reporters, certified translators or interpreters, as are necessarily incident to the conduct of discovery, the preparation for the trial, or the trial itself;

        vii.    The Court and all Court personnel necessary for the litigation of this case; and

        viii.    Other persons only upon consent of the producing party or upon order of the Court and on such conditions as are agreed to or ordered.

3

5.    Control of Documents.

a.    Original documents.  Counsel for the parties shall take reasonable efforts to prevent unauthorized disclosure of Documents designated as Confidential pursuant to the terms of this Order.

b.    Copies.   All copies, duplicates, extracts, summaries or descriptions (hereinafter referred to collectively as "Copies") of documents designated as Confidential under this Order or any portion of such a document, shall be immediately affixed with the designation "CONFIDENTIAL" if the word does not already appear on the copy.  All such Copies shall be afforded the full protection of this Order.

6.    Challenges to Designation as Confidential.

a.    Any Confidential designation is subject to challenge.  The following procedures shall apply to any such challenge:  The burden of proving the necessity of a Confidential designation remains with the party asserting confidentiality.  A party who contends that Documents designated Confidential are not entitled to confidential treatment shall give written notice to the party who affixed the confidentiality designation of the specific documents whose treatment it challenges and the specific basis for the challenge.  The parties will make a good faith effort to resolve any disputes concerning the confidential treatment of any information.  If the parties cannot resolve any such dispute, the party challenging the designation of the Documents may move for an Order challenging the Confidential designation.

b.    Notwithstanding any challenge to the designation of Documents as Confidential, all material previously designated Confidential shall continue to be treated as subject to the full protections of this Order until one of the following occurs:

4

i. The party who claims that the Document is Confidential withdraws such designation in writing; or

ii. The Court rules that the Document should no longer be designated as Confidential.

7. Treatment on Conclusion of Litigation.

a. Order Remains in Effect. All provisions of this Order restricting the use of Documents designated CONFIDENTIAL shall continue to be binding after the conclusion of the litigation unless otherwise ordered.

b. Return of Confidential Documents. Subject to a final order of the Court, within thirty (30) days after the conclusion of the case, including conclusion of any appeal, all Documents treated as Confidential under this Order, including copies as defined in Paragraph 5.b. above shall be returned to the producing party unless:

i. The Document has been entered as evidence or filed;

ii. The parties stipulate to destruction in lieu of return; or

iii. As to Documents containing the notation, summations or other mental impressions of the receiving party, that party elects destruction.

8. In the event a party seeks to file any Document that is subject to protection under this Order with the Court, that party shall take appropriate action to ensure that the Document receives proper protection from public disclosure including: (1) filing a redacted Document with the consent of the party who designated the document as Confidential; (2) where appropriate (e.g., in relation to discovery and evidentiary motions), submitting the Documents solely for in camera review; or (3) where the preceding measures are not adequate, seeking permission to file the Document under seal pursuant applicable rules and law. Absent extraordinary circumstances

5

making prior consultation impractical or inappropriate, the party seeking to submit the document to the Court shall first consult with counsel for the party who designated the Document as Confidential to f some measure less restrictive than filing the Document under seal may serve to provide adequate protection. This duty exists irrespective of the duty to consult on the underlying motion.

9. Greater Protection of Specific Documents. No party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an Order providing such special protection.

10. Discovery of Protected Information by Non-Parties. If a receiving party or a Confidential Qualified Person receives a subpoena or other request for production from a non-party to this case seeking production or other disclosure of Documents marked Confidential, the party subject to the subpoena or request shall immediately give written notice to the producing party and the party that designated the Documents as Confidential, specifying the information sought and enclosing a copy of the subpoena or other form of compulsory process, and shall notify the person serving the process that such materials are the subject of this Order. Unless within twenty (20) days of service of such notification, the producing party or other party that designated the materials applies for an order from a court of competent jurisdiction precluding the receiving party from copying with such request, the receiving party shall be free to produce the requested Documents. If such an application is made, the party upon whom the process was served shall not produce the Confidential Documents until after the court rules on such application.

11. Order Subject to Modification. This Order shall be subject to modification on motion of any party or any other person who may show an adequate interest in the matter to

6

intervene for purposes of addressing the scope and terms of this Order. The Order shall not, however, be modified until the parties shall have been given notice and an opportunity to be heard on the proposed modification.

IT IS SO ORDERED, this the ___ day of _____, 2022.

_____
SUPERIOR COURT JUDGE

We Consent:

James P. Galvin
by Chad Ewing (with permission)

James P. Galvin (N.C. State Bar # 33933)
Ryan B. Tiede (N.C. State Bar No. 43258)
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204
Telephone: (704) 377-4164
Email: james@twbglaw.com
Email: ryan@twbglaw.com
*Attorneys for Plaintiff*

_____

W. Clark Goodman (N.C. State Bar # 19927)
B. Chad Ewing (N.C. State Bar # 27811)
Womble Bond Dickinson (US) LLP
301 South College Street, Suite 3500
Charlotte, North Carolina 28202-6037
Telephone: (704) 331-4900
Facsimile: (704) 331-4955
Email: Clark.Goodman@wbd-us.com
Email: Chad.Ewing@wbd-us.com
*Attorneys for Defendant Mecklenburg County*

Taylor J. Sweet
by Chad Ewing (with permission)

Samuel H. Poole Jr. (N.C. Bar # 13659)
Taylor J. Sweet (N.C. Bar # 55101)
Cranfill Sumner, LLP
P.O. Box 30787
Charlotte, North Carolina 28230
Telephone: (704) 332-8300
Facsimile: (704) 332-9994
Email: shp@cshlaw.com
Email: tsweet@cshlaw.com
*Attorneys for Defendant The Kania Law Firm, P.A.*

7

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

2022 NOV -1  ⊃ 3: 11

MECKLENBURG CO... C S C

HELEN BARBARA RYAN

Plaintiff,

VS.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.

Defendants

BY _____

AMENDED
MOTION TO FOR LEAVE
TO AMEND COMPLAINT

NOW COMES, Plaintiff, Helen Barbara Ryan by and through the undersigned counsel and pursuant to Rule 15 of the Rules of Civil Procedure for leave to amend its pleadings, and in support of thereof states as follows:

1.  Plaintiff filed the Complaint on November 24, 2021.

2.  Defendant Mecklenburg County filed a responsive pleading on or about February 2, 2022.

3.  Defendant The Kania Law Firm filed a responsive pleading on or about February 18, 2022.

4.  Due to a pending remand on an ancillary case from the North Carolina Court of Appeals which will not move forward until the North Carolina Supreme Court takes requested action, the parties to this case moved to significantly extend the deadlines in this matter on July 5, 2022.

5.  The motion was granted and extended the trial date from October 25, 2022 to June 5, 2023.

6.  On August 30, Mecklenburg County filed a notice of hearing seeking judgment on the pleadings in this matter based, in part on an alleged pleading defect by the Plaintiff.

7.  Plaintiff wishes to Amend its pleading filed in this case in order to remedy any alleged defect.

8.    Specifically, Plaintiff now seeks leave of Court amend its Complaint to add the following allegation: *Upon information and belief, Mecklenburg County waives governmental immunity in this matter by virtue of (i) engagement in a proprietary function, and (ii) procurement of liability insurance maintained at all times relevant to this amended complaint affording coverage of the asserted claims herein.*

9.    Further, Plaintiff now seeks leave of Court to amend her Complaint to add a cause of action for a violation of 42 U.S.C. § 1983 in that Mecklenburg County deprived Plaintiff of her rights, privileges, or immunities pursuant to a policy or custom which was the moving force behind the deprivation of Plaintiff's rights.

10.   Specifically, Plaintiff will allege that Mecklenburg County engaged in a policy or custom of a failure to properly train those responsible for receiving property tax payments on the effect of payment of the amount owed on the validity of the tax lien and the proper procedure to halt pending foreclosure actions.

11.   Specifically, Plaintiff will allege that this policy or custom evidences an indifference, on the part of Mecklenburg County, to the rights of its citizens, like Plaintiff.

12.   Specifically, Plaintiff will allege that this policy or custom is attributable to Mecklenburg County and proximately caused the deprivation of Plaintiff's rights.

13.   Specifically, Plaintiff will allege that had this policy or custom proximately caused the deprivation of Plaintiff's rights.

14.   Further, Plaintiff now seeks leave of court to amend her Complaint to add a cause of action for a violation of her due process rights under the 14th Amendment to the United States Constitution and Article 1, Section 17 of the North Carolina Constitution.

15.   Specifically, Plaintiff will allege that Mecklenburg County violated her due process rights by depriving her of her property without due process of law.

16.   Mecklenburg County is not prejudiced by this amendment in that the new cause of action arises from the same series of events which form the basis of the existing Complaint, it is not futile, and permission to amend pleadings should be freely given when justice so requires.

**WHEREFORE**, Plaintiff respectfully prays for an Order as follows:

1.  To grant Plaintiff leave to amend its Complaint as set forth above.

2.  For such other and further relief that the Court deems just and proper.

This the _____ day of November, 2022.

_____
James P. Galvin
N.C. Bar No. 33933
Ryan B. Tiede
N. C. Bar No. 43258
Attorney for Plaintiff
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the following individual(s) by depositing a copy of same in the United States Mail, postage prepaid, in a wrapper properly addressed to:

Samuel H. Poole, Jr.
Cranfill Sumner
P.O. Box 30787
Charlotte, North Carolina 28230

W. Clark Goodman
B. Chad Ewing
301 S. College Street, Ste. 3500
Charlotte, North Carolina 28202

This the ____ day of November, 2022.

James P. Galvin
N.C. Bar No. 33933
Ryan B. Tiede
N.C. Bar No. 43258
Attorney for Plaintiff
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, North Carolina 28204
Telephone: 704-377-4164
Facsimile: 704-377-5503

NORTH CAROLINA

MECKLENBURG COUNTY

HELEN BARBARA RYAN,

        Plaintiff,

   v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

FILED
2022 NOV -8 ☐ 2: 24

MECHLENBURG CO., C.S.C

BY_____

**NOTICE OF FILING**

     PLEASE TAKE NOTICE that Mecklenburg County hereby files the attached Exhibit B

to its Post-Hearing Brief in Support of Motion for Judgment on the Pleadings.

     This the 8th day of November, 2022.

                  **WOMBLE BOND DICKINSON (US) LLP**

                  W. Clark Goodman (N.C. State Bar No. 19927)
                  B. Chad Ewing (N.C. State Bar No. 27811)
                  301 South College Street, Suite 3500
                  Charlotte, North Carolina 28202-6037
                  Telephone: (704) 331-4900
                  Facsimile: (704) 331-4955
                  Email: Clark.Goodman@wbd-us.com
                  E-Mail: Chad.Ewing@wbd-us.com
                  ***Attorneys for Defendant Mecklenburg County***

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2022, I caused a copy of the foregoing **NOTICE OF FILING** to be served by First Class United States Mail to:

James P. Galvin
Ryan B. Tiede
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204
*Attorneys for Plaintiff*

Samuel H. Poole Jr.
Taylor J. Sweet
Cranfill Sumner, LLP
P.O. Box 30787
Charlotte, N.C. 28230
*Attorneys for The Kania Law Firm, P.A.*

B. Chad Ewing

# EXHIBIT B

# SAFETY NATIONAL CASUALTY CORPORATION

## PRIVACY STATEMENT

### Our Commitment To Our Customers

Safety National Casualty Corporation ("Safety National") is proud to have provided quality products and services to its customers for over 50 years. We greatly appreciate the trust that you and all of our customers place in us. We protect that trust by respecting the privacy of all of our customers, both present and past. The following will explain our privacy practices so that you will understand our commitment to your privacy.

### We Respect Your Privacy

When you apply to Safety National for any type of insurance, you disclose information about you to us. The collection, use and disclosure of such information is regulated by law. Safety National and its affiliates maintain physical, electronic and procedural safeguards that comply with state and federal regulations to guard your personal information. Our employees are also advised of the importance of maintaining the confidentiality of your information.

### Types Of Information We Collect

Safety National obtains most of our information directly from you, your agent or broker. The application you complete, as well as any additional information you provide, generally gives us most of the details we need to know. Depending on the nature of your insurance transaction, we may need further details about you.

We may obtain information from third parties, such as other insurance or reinsurance companies, medical providers, government agencies, information clearinghouses and other public records. We may also obtain information about you from your other transactions with us, our affiliates or others.

### What We Do With Your Information

Information that has been collected about you will be retained in our files. We will review your information in evaluating your request for insurance coverage, determining your rates or underwriting risk, servicing your policy or adjusting claims. We may retain information about our former customers and would disclose that information only to affiliates and to

non-affiliates as described in this notice or as otherwise permitted by law.

### To Whom Do We Disclose Your Information

We will not disclose any non-public, personal information about our customers or former customers, except as permitted by law. That means we may disclose information we have collected about you to the following types of third parties:

- Our affiliated companies (Members and subsidiaries of the Tokio Marine Holdings, Inc. group of companies).

- Your agent or broker.

- Parties who perform a business or insurance function for Safety National, including reinsurance, underwriting, claims administration or adjusting, investigation, loss control and computer systems companies.

- Other insurance companies or agents as reasonably necessary concerning your application, policy or claim.

- Insurance regulatory or statistical reporting agencies.

- Law enforcement or governmental authorities in connection with suspected fraud or illegal activities.

- Authorized persons as ordered by subpoena, warrant or court order, or as required by law.

We do not disclose any non-public, personal information about you to non-affiliated companies for marketing purposes or for any other purpose except those specifically allowed by law and described above.

### Independent Sales Agents or Brokers

Your policy may have been placed with us through an independent agent or broker ("Sales Agent"). Your Sales Agent may have gathered information about you. The use and protection of information obtained by your Sales Agent is their responsibility, not Safety National's. If you have questions about how your Sales Agent uses or discloses your information, please contact them directly.

PN 99 02 0209

SNCC 000230
CONFIDENTIAL

SAFETY NATIONAL CASUALTY CORPORATION
1832 Schuetz Road
St. Louis, MO 63146
(888) 995-5300

A STOCK COMPANY

# COMMERCIAL POLICY

_____
SECRETARY

_____
PRESIDENT

THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE, COVERAGE FORM AND
ENDORSEMENTS, IF ANY, COMPLETE THIS POLICY.

CP 99 03 05 19

CONFIDENTIAL

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

**COMMERCIAL GENERAL LIABILITY
COVERAGE FORM DECLARATIONS**

| Policy Number | Policy Period | |
|---|---|---|
| | **From** | **To** |
| ████8926 | 07/01/2019 | 07/01/2020 |
| | 12:01 A.M. Standard Time at the described location | |

**Previous Policy Number:** ████8926

| Transaction | |
|---|---|
| Renewal | |
| **Named Insured and Address** | **Agent** |
| MECKLENBURG COUNTY<br>CAMERON BROWN BLDG<br>301 SOUTH MCDOWELL ST.<br>CHARLOTTE, NC 28204 | 61091<br>USI Insurance Services LLC<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210<br><br>Telephone: |
| **Business Description**<br>MUNICIPALITY | **Type of Business**<br>CITY GOVERNMENT |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | ████ | Combined BI & PD |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | ████ | Any one premises |
| MEDICAL EXPENSE LIMIT | ████ | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | ████ | Any one person or organization |
| GENERAL AGGREGATE LIMIT | ████ | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | ████ | |

| DESCRIPTION OF BUSINESS |
|---|
| FORM OF BUSINESS:<br>☐ INDIVIDUAL    ☐ PARTNERSHIP    ☐ JOINT VENTURE    ☐ TRUST<br><br>☐ LIMITED LIABILITY COMPANY    ☒ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT INCLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY)<br><br>BUSINESS DESCRIPTION: MUNICIPALITY |

Case 3:23-cv-00064   Document 1-1  Filed 02/03/23  Page 103 of 230
CONFIDENTIAL

**COMMERCIAL GENERAL LIABILITY DECLARATIONS**

| Policy Number: | 8926 |
| --- | --- |
| Named Insured: | MECKLENBURG COUNTY |
| Agent: | USI Insurance Services LLC |
| Effective Date: | 07/01/2019 |

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
| --- | --- |
| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| Schedule on File with Company | See Schedule on File with Company |

| CLASSIFICATION AND PREMIUM | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| Schedule on file with Company | Governmental Subdivision-not state or fed Counties,Parishes Population>250,000 | 44113 | Total Operating Expenses | | | | |

TOTAL PREMIUM (SUBJECT TO AUDIT)

STATE SURCHARGES (if applicable)

TOTAL DUE AT INCEPTION:

AT EACH ANNIVERSARY

(IF POLICY PERIOD IS MORE THAN ONE YEAR AND PREMIUM IS PAID IN ANNUAL INSTALLMENTS)

| AUDIT PERIOD (IF APPLICABLE) | ☐ ANNUALLY | ☐ SEMI-ANNUALLY | ☐ QUARTERLY | ☐ MONTHLY |
| --- | --- | --- | --- | --- |

| ENDORSEMENTS |
| --- |
| ENDORSEMENTS ATTACHED TO THIS POLICY: |
| See Attached Schedule of Forms and Endorsements |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: | By: |
| --- | --- |
| (Date) | (Authorized Representative) |

**CG 10 01 11 09**  Includes copyrighted material of Insurance Services Office, Inc., with its permission.  **Page 2 of 2**
Case 3:23-cv-00064  Document 1-1  Filed 02/08/23  Page 104 of 230
CONFIDENTIAL

# SCHEDULE OF FORMS AND ENDORSEMENTS

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Policy Period | |
|---|---|---|
| | **From** | **To** |
| ████8926 | 07/01/2019 | 07/01/2020 |
| | 12:01 A.M. Standard Time at the described location | |

| Named Insured and Address | Agent |
|---|---|
| MECKLENBURG COUNTY<br>CAMERON BROWN BLDG<br>301 SOUTH MCDOWELL ST.<br>CHARLOTTE, NC 28204 | USI Insurance Services LLC<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

| Form Number | Form Title |
|---|---|
| PN 99 02 0209 | Privacy Statement |
| CP 99 03 05 19 | Commercial Policy Cover |
| CG 10 01 11 09 | Commercial General Liability Declarations |
| IL 10 06 12 08 | Schedule Of Forms And Endorsements |
| IL N 001 09 03 | Fraud Statement |
| IL P 001 01 04 | U.S. Treasury Dept's Office Of Foreign Assets Control |
| SNGL 004 1111 | Amended Definition Of Bodily Injury |
| SNGL 044 0514 | Asbestos Exclusion |
| CG 21 70 01 15 | Cap On Losses from Certified Acts of Terrorism |
| SNGL 012 1209 | Co-Employee Exclusion Deleted |
| IL 10 05 12 08 | Common Policy Change Endorsement |
| SNGL 053 0514 | Deletion Of Premium Audit Condition |
| SNGL 022 1111 | Designated Additional Insured |
| IL 09 85 01 15 | Disclosure Pursuant To Terrorism Risk Insurance Act |
| SNGL 002 0908 | ERISA Exclusion |
| CG 02 24 10 93 | Earlier Notice Of Cancellation Provided By Us |
| SNGL 054 0514 | Employee Benefits Liability Coverage With Self-Insured |
| CG 21 47 12 07 | Employment-Related Practices Exclusion |
| CG 21 07 05 14 | Exclusion - Access or Disclosure of Confidential or Per |
| CG 21 35 10 01 | Exclusion - Coverage C - Medical Payments |
| CG 22 50 04 13 | Exclusion - Failure To Supply |
| CG 22 56 07 98 | Exclusion - Injury To Volunteer Firefighters |
| CG 22 51 07 98 | Exclusion - Law Enforcement Activities |
| CG 21 67 12 04 | Fungi Or Bacteria Exclusion |
| CG 24 09 07 98 | Governmental Subdivisions |
| SNGL 020 1111 | Knowledge Of Occurrence |
| SNGL 043 0514 | Lead Contamination Exclusion |
| IL 00 21 09 08 | Nuclear Energy Liability Exclusion End (Broad Form) |
| SNGL 024 1111 | Self-Insured Retention Endorsement |
| CG 21 96 03 05 | Silica Or Silica-Related Dust Exclusion |
| CG 21 55 09 99 | Total Pollution Exclusion With A Hostile Fire Exception |
| SNGL 038 1111 | Unintended Failure To Provide Notice Of Occurrence |
| SNGL 021 1111 | Unintentional Failure To Disclose Hazards Or Occurrence |
| IL 02 69 09 08 | North Carolina Changes - Cancellation And Nonrenewal |
| IL 00 17 11 98 | Common Policy Conditions |
| CG 00 01 04 13 | Commercial General Liability Coverage Form |

**IL 10 06 12 08**

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 105 of 230
MSN00010
CONFIDENTIAL

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 106 of 230
CONFIDENTIAL

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 107 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDED DEFINITION OF BODILY INJURY

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
> RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
> POLLUTION LIABILITY COVERAGE FORM

## CHANGE

Under **SECTION V – DEFINITIONS** and **SECTION VI – DEFINITIONS** for POLLUTION LIABILITY COVERAGE FORM, the definition of "Bodily injury" is amended to include the following:

> "Bodily injury" shall also mean mental anguish, shock, humiliation or emotional distress sustained by a person in conjunction with a covered "occurrence" or offense when accompanied by physical injury, sickness or disease.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2019          Policy No. ████ 8926          Endorsement No.

**Named Insured** MECKLENBURG COUNTY                                    **Premium $** Included

**Insurance Company** Safety National Casualty Corporation

Countersigned By _____

SNGL 004 1111                    Safety National Casualty Corporation                    Page 1 of 1

MECK000230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### CHANGE

This insurance does not apply to "bodily injury" or "property damage" arising out of:

(1) The inhalation, ingestion or prolonged physical exposure to asbestos or goods or products containing asbestos;
(2) The use of asbestos in constructing or manufacturing any goods, products or structure;
(3) The removal of asbestos from any goods, products or structure;
(4) The manufacture, sale, transportation, storage or disposal of asbestos, or goods or products containing asbestos; or
(5) Payment for the investigation or defense of any claim or "suit" or any loss, cost, expense, fine or penalty related to the above exclusions.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated. **(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2019        Policy No. ███ 8926        Endorsement No.

Named Insured MECKLENBURG COUNTY        Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur in the mailing states that require countersignature)

Safety National Casualty Corporation        CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 110 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# CO-EMPLOYEE EXCLUSION DELETED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

## CHANGES

**Section II - Who is an Insured, 2. a. (1) (a)** is amended to read:

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to your other "volunteer workers" while performing duties related to the conduct of your business;

**Section II - Who is an Insured, 2. a. (1) (b)** is amended to read:

(b) To the spouse, child, parent, brother or sister of that "volunteer worker" as a consequence of Paragraph (1)(a) above;

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective  07/01/2019          Policy No. [redacted] 8926          Endorsement No.

Named Insured  MECKLENBURG COUNTY          Premium $ Included

Insurance Company  Safety National Casualty Corporation

Countersigned By _____

SNGL 012 1209          Safety National Casualty Corporation          Page 1 of 1

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 111 of 230
CONFIDENTIAL

# COMMON POLICY CHANGE ENDORSEMENT

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| ████ 8926 | 07/01/2019 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Agent |
|---|---|
| MECKLENBURG COUNTY<br>CAMERON BROWN BLDG<br>301 SOUTH MCDOWELL ST.<br>CHARLOTTE, NC 28204 | USI Insurance Services LLC<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE,NC 28210<br><br>Telephone: |

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

### SEXUAL ABUSE AND/OR MOLESTATION COVERAGE ENDORSEMENT

**A.** The following is added to

- Paragraph **1. Insuring Agreement** of **SECTION I–COVERAGES, COVERAGE A–BODILY INJURY AND PROPERTY DAMAGE LIABILITY;** and,

- Paragraph **1. Insuring Agreement** of **SECTION I–COVERAGES, COVERAGE B–PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance applies to, and we will pay, those sums the insured becomes legally obligated to pay as damages for "bodily injury" or "personal and advertising injury" arising out of an "occurrence" of "sexual abuse and/or molestation" caused by the negligent:

a. Employment;
b. Investigation;
c. Supervision;
d. Reporting to the proper authorities, or failure to so report; or
e. Retention;

of an "employee", "temporary worker" or "volunteer worker" whose conduct is not otherwise excluded or any other person for whom you are legally liable.

**B.** The following new exclusions are added to

- Paragraph **2., Exclusions** of **SECTION I–COVERAGES, COVERAGE A–BODILY INJURY AND PROPERTY DAMAGE LIABILITY;** and,

- Paragraph **2., Exclusions** of **SECTION I–COVERAGES, COVERAGE B–PERSONAL AND ADVERTISING INJURY LIABILITY:**

IL 10 05 12 08

Page 1 of 2

# COMMON POLICY CHANGE ENDORSEMENT

(Continued)

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| ████ 8926 | 07/01/2019 |
| | 12:01 A.M. Standard Time at the described location |

## CHANGE DESCRIPTION

This insurance does not apply to "bodily injury" or "personal and advertising injury" to any person who committed; attempted to commit; participated in; directed; knowingly allowed; or failed to take action to prevent reoccurrence after having knowledge of, any act of "sexual abuse and/or molestation".

We may defend any insured in connection with a claim or "suit" involving such conduct until either our investigation or an adjudication establishes that that accusation of such conduct is correct.

**C.** The respect to only the coverage provided by this endorsement, the definition of "Occurrence" in **SECTION V - DEFINITIONS**, is replaced with the following:

**13.** "Occurrence" means:

    **a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions; or,

    **b.** An incident of "sexual abuse and/or molestation" or multiple incidents of "sexual abuse and/or molestation" caused by the same person and/or people. Multiple incidents of "sexual abuse and/or molestation" taking place over multiple policy periods shall constitute one "occurrence" and shall be deemed to occur at the time of the first incident of "sexual abuse and/or molestation". If no coverage for "sexual abuse and/or molestation" is in place at the time of the first incident of "sexual abuse and/or molestation", no coverage shall be provided for subsequent incidents.

**D.** The following new definition is added to **SECTION V – DEFINITIONS**:

    **23.** "Sexual abuse and/or molestation" means: sexual assault, sexual abuse, molestation, sexual exploitation, sexual misconduct, sexual injury, and illicit conduct or a sexual nature whether or not involving physical contact, regardless of whether or not caused by, or at, the direction of, or negligence of, you, any insured, any person or any cause whatsoever.

All other terms and conditions of your policy apply to the extent they do not conflict with the terms of this Endorsement.

GLM 007-2 0518

**IL 10 05 12 08**

**Page 2 of 2**

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 113 of 230   Meck000912
CONFIDENTIAL

# COMMON POLICY CHANGE ENDORSEMENT

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| ████ 8926 | 07/01/2019 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Agent |
|---|---|
| MECKLENBURG COUNTY<br>CAMERON BROWN BLDG<br>301 SOUTH MCDOWELL ST.<br>CHARLOTTE, NC 28204 | USI Insurance Services LLC<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210<br><br>Telephone: |

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

### PRESERVATION OF GOVERNMENTAL IMMUNITY – NORTH CAROLINA

This policy only applies to the extent that immunity from liability is not otherwise provided under North Carolina law.

Your purchase of this insurance does not constitute a waiver on behalf of any insured, of the sovereign or governmental immunity provided under N.C.G.S.A. Sect. 160A-485, N.C.G.S.A. Sect. 160A-485.5, N.C.G.S.A. Section 153A-435, N.C.G.S.A. 115C-42, or N.C.G.S.A.115D-24, or any amendments thereto.

GLM 024 0917

IL 10 05 12 08

Page 1 of 1

CONFIDENTIAL

# COMMON POLICY CHANGE ENDORSEMENT

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| 8926 | 07/01/2019 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Agent |
|---|---|
| MECKLENBURG COUNTY<br>CAMERON BROWN BLDG<br>301 SOUTH MCDOWELL ST.<br>CHARLOTTE, NC 28204 | USI Insurance Services LLC<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210<br><br>Telephone: |

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

### WHO IS AN INSURED – EMERGENCY FIRST AID & MEDICAL TREATMENT - EMPLOYED & MUTUAL AID PROVIDERS

**Item 2.a.(1)(d)** of **Section II- Who Is An Insured** is deleted in its entirety and replaced by the following:

(d) Arising out of his or her providing or failing to provide professional health care services. The following activities shall not be considered professional health care services and thus shall not be excluded by this item 2.a.:

a. The rendering or failing to render of emergency first aid treatment by your non-medical employees when such services are outside the normal scope of duties such person performs for you and when rendered by such person due to the unavailability of other appropriate professional medical or paramedical practitioners at the time of the emergency;

b. With the exception of health care operations otherwise specifically excluded by endorsement, the rendering or failing to render of emergency first aid treatment by your medical personnel when such services are outside the normal scope of duties such person performs for you and when rendered by such person due to the unavailability of other appropriate professional medical or paramedical practitioners at the time of the emergency.

c. The rendering of, or failing to render, emergency medical treatment by Firefighters, Police, Emergency Medical Technicians (EMTs), Paramedics, Dentists, Physicians, Physician Extenders, Nurses, Licensed Professional Counselors, and Licensed Clinical Workers, when such persons are:

i. Employed by you and acting within the scope of their employment for you; or,
ii. Employed by a third party but providing service to you under, and within the scope of a mutual aid agreement.

GLM 118-2 0119

**IL 10 05 12 08**

Page 1 of 1

CONFIDENTIAL

# COMMON POLICY CHANGE ENDORSEMENT

**SAFETY NATIONAL CASUALTY CORP**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| ▊8926 | 07/01/2019 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Agent |
|---|---|
| MECKLENBURG COUNTY<br>CAMERON BROWN BLDG<br>301 SOUTH MCDOWELL ST.<br>CHARLOTTE, NC 28204 | USI Insurance Services LLC<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210<br><br>Telephone: |

## CHANGE DESCRIPTION

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

### DESIGNATED ENTIY EXCLUSION

**SECTION III – WHO IS AN INSURED,** is amended by adding the following:

4. Notwithstanding the foregoing, neither **The Charlotte Area Transit System (CATS)** nor **The Charlotte Douglass International Airport (CDA),** nor any of their directors, officers, committee, council or board members, managers, employees or volunteer workers, shall be considered an Insured. Accordingly, this insurance does not apply to liability for "bodily injury", "property damage" or "personal and advertising injury", medical benefits or supplementary payments arising from or in any way connected to such organizations. Additionally, the coverage provided by this policy shall not be considered primary nor excess over any policies providing coverage for such organizations.

GLM 119-2 0718

**IL 10 05 12 08**

**Page 1 of 1**

CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DELETION OF PREMIUM AUDIT CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
POLLUTION LIABILTY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

**CHANGE**

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**5.**     **Premium Audit, b.** is deleted in its entirety and is not applicable to this policy.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2019            Policy No.  8926            Endorsement No.

Named Insured MECKLENBURG COUNTY                                         Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur
in the mailing states that require countersignature)

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 117 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM

## SCHEDULE

| Name of Additional Insured Person(s) or Organization(s): |
|---|
| Person(s) or Organization(s) as required by written contract.<br><br>Any individually scheduled Designated Additional Insured shall not be construed to override nor negate this blanket Designated Additional Insured. |
| Designated Project, Location, or Work of Covered Operations: |
| As per written contract or agreement with the above described person(s) or organization(s). |

## CHANGE

**SECTION II - WHO IS AN INSURED** is amended to include:

**4.** The person(s) or organization(s) shown in the Schedule above with whom you have agreed in a written contract to provide insurance such as is afforded under this Coverage Form, is included as an Additional Insured subject to the below:

    **a.** Insurance for such Additional Insured(s) scheduled above shall be afforded only to the extent that such Additional Insured is liable for "bodily injury", "property damage" or "personal and advertising injury" caused by your acts or omissions while actively engaged in the performance of your ongoing operations involving the project(s), locations(s), or work designated in the Schedule and as specified in the contract between you and the above scheduled Additional Insured(s).

    **b.** The insurance afforded under this Coverage Form to such Additional Insured(s) applies only:

        **(1)** If the "occurrence" or offense takes place subsequent to the execution and effective date of such written contract: and,

        **(2)** While such written contract is in force, or until the end of the policy period, which ever occurs first.

    **c. How Limits Apply to Additional Insured(s)**
        The most we will pay on behalf of the Additional Insured(s) scheduled above is the lesser of:

        **(1)** The limits of insurance specified in the written contract or written agreement; or,

        **(2)** The Limits of Insurance provided by the Coverage Form.

    The amount we will pay on behalf of such Additional Insured(s) shall be a part of, and not in addition to, the Limits of Insurance shown in the Coverage Form Declarations and described in this section. Such amount will thus not increase the Limits of Insurance shown for the Coverage Form.

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 118 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**d. Obligations at the Additional Insured's Own Cost**
No Additional Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

The Additional Insured(s) scheduled above shall be subject to all other conditions set forth in the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated. **(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2019          Policy No. ████ 8926          Endorsement No.

**Insured** MECKLENBURG COUNTY                                        **Premium $** Included

**Insurance Company** Safety National Casualty Corporation

Countersigned By _____

SNGL 022 1111                    Safety National Casualty Corporation                    Page 2 of 2

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
| --- |
| **Terrorism Premium (Certified Acts)**     **$ 637** |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II |
| --- |
| **Federal share of terrorism losses** \_\_\_\_ **% Year: 20** \_\_\_\_<br>(Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses** \_\_\_\_ **% Year: 20** \_\_\_\_<br>(Refer to Paragraph **B.** in this endorsement.) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

© Insurance Services Office, Inc., 2015

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 120 of 230
ML20060230
CONFIDENTIAL

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 121 of 230
ML210042230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# ERISA EXCLUSION

This endorsement modifies insurance provided under the following Coverage Part:

COMMERCIAL GENERAL LIABILITY

## CHANGES

This policy shall not apply to claims for which the insured is liable because of liability imposed by the Employment Retirement Income Security Act of 1974 (ERISA), including subsequent amendments, or any similar federal, state or local law or regulation.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective 07/01/2019          Policy No. ▉▉▉ 8926          Endorsement No.

Named Insured MECKLENBURG COUNTY          Premium $ Included

Insurance Company Safety National Casualty Corporation

Countersigned By _____

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 122 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EARLIER NOTICE OF CANCELLATION PROVIDED BY US

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Number of Days' Notice** 90 days except 10 days' notice for non-payment of premium where allowed by state law.

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph **2.** of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 123 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE
# WITH SELF-INSURED RETENTION ("SIR")

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Limit Of Insurance | | Each Employee SIR | Premium |
|---|---|---|---|---|
| Employee Benefits Programs | $ ■■■■ | each employee | $ ■■■■ | $ ■■■■ |
| | $ ■■■■ | aggregate | | |
| **Retroactive Date:** | ■■■■ | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I – Coverages:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

  **b.** This insurance applies to damages only if:

    **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

    **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

    **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

  **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

    **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 124 of 230
M124002230
CONFIDENTIAL

**(2)** When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Em-ployee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Safety National Casualty Corporation

**SNGL 054 0514**

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 125 of 230
CONFIDENTIAL

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

    **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

    **b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

    **a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

      **(1)** Insureds;

      **(2)** "Claims" made or "suits" brought;

      **(3)** Persons or organizations making "claims" or bringing "suits";

      **(4)** Acts, errors or omissions; or

      **(5)** Benefits included in your "employee benefit program".

    **b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

    **c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

      **(1)** An act, error or omission; or

      **(2)** A series of related acts, errors or omissions

    negligently committed in the "administration" of your "employee benefit program".

    However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Self-Insured Retention ("SIR")**

    **a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the SIR amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this SIR.

    **b.** The SIR amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

    **c.** The terms of this insurance, including those with respect to:

      **(1)** Our right and duty to defend any "suits" seeking those damages; and

      **(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

    apply irrespective of the application of the SIR amount.

    **d.** We may pay any part or all of the SIR amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the SIR amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

    **a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

      **(1)** What the act, error or omission was and when it occurred; and

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 126 of 230
CONFIDENTIAL

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

#### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected un-less any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

#### b. Excess Insurance

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

#### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each in-surer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission. Safety National Casualty Corporation **SNGL 054 0514**

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

   **a.** This endorsement is canceled or not renewed; or

   **b.** We renew or replace this endorsement with insurance that:

      **(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      **(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   **a.** The "employee benefit programs" insured;

   **b.** Previous types and amounts of insurance;

   **c.** Limits of insurance available under this endorsement for future payment of damages; and

   **d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

   **a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   **b.** Handling records in connection with the "employee benefit program"; or

   **c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 128 of 230
CONFIDENTIAL

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

    a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

    b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

    c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

    d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

    e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

H. For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

    5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

    18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

        a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

        b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Safety National Casualty Corporation

**SNGL 054 0514**

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 129 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 130 of 230
MBS000P3230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 131 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Description And Location Of Premises Or Classification:**



(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

**1.** Section **I** – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

**2.** The following is added to Section **I** – Supplementary Payments:

    **h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

© ISO Properties, Inc., 2000

CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – FAILURE TO SUPPLY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" arising out of the failure of any insured to adequately supply gas, oil, water, electricity, steam or biofuel.

This exclusion does not apply if the failure to supply results from the sudden and accidental injury to tangible property owned or used by any insured to procure, produce, process or transmit the gas, oil, water, electricity, steam or biofuel.

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 133 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – INJURY TO VOLUNTEER FIREFIGHTERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to any volunteer firefighters whether or not they are members of your organization, while in the course of their duties as such.

Copyright, Insurance Services Office, Inc., 1997

Case 3:23-cv-00064  Document 1-1  Filed 02/03/23  Page 134 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – LAW ENFORCEMENT ACTIVITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any act or omission resulting from law enforcement activities of your police department or any of your other law enforcement agencies, including their agents or "employees".

Copyright, Insurance Services Office, Inc., 1997

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 135 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 136 of 230
M130063230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GOVERNMENTAL SUBDIVISIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an insured any elective or appointive officer or a member of any board or commission or agency of yours while acting within the scope of their duties as such.

**B.** Paragraph **b.** of the definition of "mobile equipment" in the **Definitions** Section is replaced by the following:

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**b.** Vehicles maintained for use solely on or next to premises you own or rent. However, any land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus that is attached) owned or leased by you shall be deemed an "auto" and not "mobile equipment" if the only reason for considering it "mobile equipment" is that it is maintained for use exclusively on streets or highways owned by you.

Copyright, Insurance Services Office, Inc., 1997

Case 3:23-cv-00064  Document 1-1  Filed 02/03/23  Page 137 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# KNOWLEDGE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
> RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
> POLLUTION LIABILITY COVERAGE FORM

## CHANGE

The following is added to the **Duties In the Event of Occurrence, Offense, Injury, Pollution Incident, Claim or Suit** under the **CONDITIONS** section of the above-listed coverage forms:

It is agreed that knowledge of an "occurrence", offense, injury, pollution incident, claim or "suit" by your agent, servant or "employee" will not in itself be considered to be your knowledge of the "occurrence", offense, claim, or "suit" unless the individual(s) in the following position(s) or department(s) shall have received such notice from the agent, servant or "employee":

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective ▮▮▮▮▮          Policy No. ▮▮▮▮ 8926          Endorsement No.

Named Insured  MECKLENBURG COUNTY                                  Premium $ ▮▮▮▮

Insurance Company  Safety National Casualty Corporation

Countersigned By _____

SNGL 020 1111                     Safety National Casualty Corporation                     Page 1 of 1

M1380 0f3230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LEAD CONTAMINATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Description of Premises, Work or Operations

███████████████████████████ .

This endorsement applies only with respect to the premises, work or operations listed in the Schedule above.  If no entry appears in the Schedule, this endorsement applies with respect to all premises, work and operations.

This insurance does not apply to:

1.  "Bodily injury" or "property damage" arising out of the actual or alleged or suspected:
    a.  Ingestion, inhalation, absorption or prolonged physical exposure or threat of exposure to lead in any form, or goods or products containing any form of lead;
    b.  Use of any form of lead in constructing or manufacturing any good, product or structure;
    c.  Removal of any form of lead from any good, product or structure; or
    d.  Manufacture, sale, transportation, storage or disposal of lead or goods or products containing any form of lead;

2.  Any loss, cost or expense arising out of any request, demand or order that any insured or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize or mitigate or in any way respond to, or assess the effects of lead; or repair, replace or improve any property as a result of such effects; or

3.  Any loss, cost or expense arising our of any claim or "suit" by or on behalf of a governmental authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating or in any way responding to, or assessing the effects of lead; or repairing, replacing or improving any property as a result of such effects.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective ███████████     Policy No. ████ 8926     Endorsement No.

Named Insured MECKLENBURG COUNTY     Premium $ ███████

Insurance Company Safety National Casualty Corporation

Countersigned By _____
(Countersignature by the Broker or Agent shall only occur in the mailing states that require countersignature)

Safety National Casualty Corporation                    CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 140 of 230
CONFIDENTIAL

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 141 of 230
MSJ A100742
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE FORM
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
    LIQUOR LIABILITY COVERAGE FORM
    OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
    RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
    POLLUTION LIABILITY COVERAGE FORM

## SCHEDULE

| Self-Insured Retention | $ | | Per "Occurrence" |
|---|---|---|---|
| Self-Insured Retention | $ | | Per "Claim" |
| Aggregate Self-Insured Retention Amount (if applicable) | $ | | |

## CHANGE

**I.** The Coverage sections of the policy pertaining to **BODILY INJURY AND PROPERTY DAMAGE LIABILITY, PERSONAL AND ADVERTISING INJURY LIABILITY, MEDICAL PAYMENTS, LIQUOR LIABILITY** and **SUPPLEMENTARY PAYMENTS** are modified to apply the additional provisions noted below.

### A. SELF-INSURED RETENTION

Our obligation to pay damages, medical expenses and "defense costs" to, or on behalf of, the "insured" applies only to that portion of the "Ultimate Net Loss" in excess of the applicable Self-Insured Retention shown in the above Schedule, subject to any below described Aggregate Self-Insured Retention Amount.

After you have paid the amount of the applicable Self-Insured Retention, we will pay on your behalf, or reimburse you for paying such damages, medical expenses or "defense costs" in excess of the applicable Self-Insured Retention. Our payment of damages and medical expenses shall be subject to the Limits of Insurance shown in the Declarations for the Coverage Form. The amount that would otherwise be payable by us as damages, medical expenses or "defense costs" under the above described LIABILITY COVERAGES, will be reduced by the amount of the Self-Insured Retention.

#### 1. SELF-INSURED RETENTION PER OCCURRENCE

If a Per Occurrence Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each "occurrence" or offense until you have paid the Self-Insured Retention amount and "defense costs" equal to the applicable Per Occurrence amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 142 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention. The Per Occurrence amount is the most you will pay for Self-Insured Retention amounts and "defense costs" arising out of any one "occurrence" or offense, regardless of the number of persons or organizations making claims or bringing suits because of the occurrence or claim.

**2. SELF-INSURED RETENTION PER CLAIM**

If a Per Claim Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to our liability under the Coverage Form that you make actual payment of all damages, medical expenses and "defense costs" for each claim until you have paid the Self-Insured Retention amount and "defense costs" equal to the Per Claim amount shown in the Schedule, subject to the provisions of the "Aggregate Self-Insured Retention Amount" provision noted below, if applicable.

Payments by others, including but not limited to, additional insureds or insurers, does not serve to satisfy the Self-Insured Retention. The Per Claim amount is the most you will pay for Self-Insured Retention amounts and "defense costs" sustained by any one person or organization as a result of any one "occurrence" or offense.

**3. AGGREGATE SELF-INSURED RETENTION AMOUNT**

The Aggregate Self-Insured Retention Amount only applies if an Aggregate Self-Insured Retention Amount is shown in the above Schedule. If an Aggregate Self-Insured Retention Amount is shown in the Schedule, that amount is the most you will pay for all Self-Insured Retention amounts and "defense costs" incurred under this policy. The Aggregate Self-Insured Retention Amount applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of this policy.

**B. LIMIT OF INSURANCE**

The applicable **LIMIT OF INSURANCE** provisions apply with the following change:

The Limit of Insurance applies over the Self-Insured Retention shown in the Schedule.

**C. OUR RIGHT TO REIMBURSEMENT**

With respect to any claim or "suit" under this policy that has been tendered to us and that may exceed the applicable Self-Insured Retention amount, we may pay any or all of the Self-Insured Retention amount and "defense costs" on your behalf to defend or to effect settlement of such claim or "suit". If we do so, you must promptly reimburse us for our payment.

**II. CHANGES IN THE CONDITIONS SECTION OF EACH OF THE ABOVE-LISTED COVERAGE FORMS**

**A.** The following is added to the **BANKRUPTCY** Condition:

Satisfaction of the Self-Insured Retention amounts by you is a condition precedent to our liability for amounts in excess of the Self-Insured Retention regardless of insolvency or bankruptcy or inability to pay by you. Accordingly, bankruptcy, insolvency, receivership, or any refusal or inability to pay by the "insured" or the "insured's" estate will not operate to:

1. Deplete or reduce the Self-Insured Retention;
2. Increase our liability under this policy; or
3. Relieve us of our obligations under this policy.

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 143 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

In no event will we assume responsibility or obligations of the "insured".

B. The following is added to the **DUTIES IN THE EVENT OF AN OCCURRENCE, OFFENSE, INJURY, POLLUTION INCIDENT, CLAIM OR SUIT**(as applicable to the above-listed Coverage Form) Condition:

The "insured" must promptly give our authorized representative and our Claims Department a complete report of the existence of any claim or "suit" involving the following factors or probabilities:

1. If the "ultimate net loss" for a claim or "suit" or multiple claims or "suits" arising out of any one "occurrence" or offense may, or is likely to, exceed 50% of the Self-Insured Retention; or

2. If an "occurrence", offense, claim or "suit" involves:

   a. Death;
   b. Brain or spinal injury;
   c. Amputation;
   d. Loss of use of an arm, eye or leg;
   e. Severe burns involving more than 25% of the body;
   f. Multiple fractures;
   g. Permanent and total disability;
   h. Sexual abuse or molestation;
   i. Significant psychological or neurological involvement;
   j. Severe internal body organ damage or loss;
   k. Severe cosmetic deformity or disfigurement;
   l. A hospital stay of two weeks or longer;
   m. An alleged error or omission of the "insured", the "insured's" claims service organization, or us or a claim for punitive damages against any of them; or
   n. An actual or potential conflict of interest between the "insured" and us, or between the "insured's" claims service organization and us.

C. The following is added to the **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US** Condition:

If the "insured" had rights to recover all or part of any payment we have made in excess of the Self-Insured Retention, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them. Any amounts recovered will first be applied to reimburse us to the extent of our actual payment.

D. **DEFENSE & SETTLEMENT** shall be added as follows:

1. You may not settle any claim or "suit" that exceeds the applicable Self-Insured Retention amount without our written permission to do so. If you fail to obtain our written permission, we shall have no obligation to provide coverage for that claim or "suit" under this policy.

2. We will have the right but not the duty to associate ourselves in or assume control of the defense of any claim or "suit" which in our sole judgment is likely to exceed the Self-Insured Retention. If we avail ourselves of that right, you must cooperate with us. In the event we incur any "defense costs" in the exercise of our right to defend any claim or "suit", you shall not be liable to reimburse us for those "defense costs".

CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

3. We may investigate and settle any claim or "suit" as we consider appropriate both within and in excess of the applicable Self-Insured Retention but we shall obtain your consent prior to entering into any settlement of a claim or "suit" that is equal to or less than the Self-Insured Retention amount. If, however, you do not consent to any settlement within the Self-Insured Retention amount that is recommended by us and instead elect to contest the claim or continue with any legal proceedings involving the claim, our liability for the claim shall not exceed the amount determined by subtracting the Self-Insured Retention amount from the amount for which we recommended settlement, including "defense costs" incurred with our consent, to the date of such refusal. Further we shall have no liability with respect to such claim if the result of the above calculation is zero or negative. We will not continue to defend or settle any claim or "suit" after the Limit of Insurance of the applicable coverage has been exhausted by payments of judgments or settlements.

**E. CLAIMS ADMINISTRATION** shall be added as follows:

You agree to maintain a continuous contract, with an independent claims service administrator approved for use by us, at your expense without reimbursement from us, and that such claims service administrator will report to us on a monthly basis all claims activity, including identity of claimants and the date, type, estimated payments, description and disposition of all claims.

**F. SELF-INSURED RETENTION REPORTING** shall be added as follows:

You or the authorized claim service administrator must monitor the cumulative Self-Insured Retention amounts and "defense costs" incurred during the policy period and report those total amounts to us on a quarterly basis. However, regardless of the quarterly reporting requirements, if the total of all incurred losses and "defense costs" should, at any time during the policy period, attain a total amount equal to 75% of the Aggregate Retention amount, you are required to make an immediate report to us of the total incurred losses and "defense costs" sustained at that time.

The required quarterly report must be in a format acceptable to us and shall include a listing of all individual losses and "defense costs" incurred as of the date of the report.

Within forty-five (45) days after the end of the policy term, you must give a listing of all existing claims or "suits" within the Self-Insured Retention amounts. Such listing shall include a description of each claim, "occurrence" or offense; date of the "occurrence" or offense; and the current status of the claim or "suit". Thereafter and on a quarterly basis, you shall provide an updated status of all claims or suits, paid and reserved, until all claims or "suits" are closed and settled.

Compliance with the reporting requirements set forth above, is a condition precedent to coverage. In the event of non-compliance, we shall not be required to establish prejudice resulting from reporting noncompliance and shall be automatically relieved of liability with respect to the claim.

**G. MIDTERM CANCELLATION** shall be added as follows:

If an Aggregate Self-Insured Retention Amount is shown in the above Schedule, in the event of a midterm cancellation, the Aggregate Self-Insured Retention Amount shall not be subject to any pro rata reduction. Such Aggregate Self-Insured Retention Amount will apply as if the policy term had not been shortened.

**H. GOOD FAITH** shall be added as follows:

You and we agree that both will strictly observe standards of good faith and fair dealing with respect to each other, and that neither will engage in any conduct which would take unfair advantage of the other.

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 145 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

I. **HOLD HARMLESS AGREEMENT** shall be added as follows:

The "insured" will hold us harmless and indemnify us for any and all damages or attorney fees or other costs or expenses which are imposed upon us because of the acts or omissions of the "insured" or of the "insured's" employees, agents or independent contractors in the course of the investigation, settlement or defense of any claim or "suit" to which this insurance applies.

J. **REPRESENTATIONS** shall be added as follows:

You agree that the procurement of insurance for all or any part of the Self-Insured Retention amounts shown in the above Schedule will cause there to be no coverage under this policy.

K. **DISPUTE RESOLUTION** shall be added as follows:

If we and the "insured" do not agree whether coverage is provided under this policy or this Endorsement, or do not agree concerning the timing or amount of settlement of a claim or "suit", then either party may submit the matter to a court of competent jurisdiction or may make a written demand for arbitration. Where required by state law, the "insured" shall have the option of instead submitting the matter to a court of competent jurisdiction. We have the absolute right to determine when a claim or "suit" should be settled and may proceed to settle the claim or "suit" if the "insured" refuses to do so upon our demand, or if the "insured" refuses to contribute the amount of the Self-Insured Retention.

When a matter is submitted for arbitration, we and the "insured" may agree to use one arbitrator. If the parties fail to agree on one arbitrator, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, each will name two arbitrators of which the other party will decline one, and the final selection will be made by drawing lots. If either party fails to appoint an arbitrator within 30 days of receiving written notice, delivered by certified mail, requesting it to do so, the requesting party will name both arbitrators. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the address shown in the Declarations is located. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding unless state laws do not allow for binding arbitration without the consent of the "insured" in which case the decision will be binding unless, upon commencement of the arbitration, the "insured" has made written demand for non-binding arbitration. A decision rendered in a non-binding arbitration shall not preclude either party from submitting the matter to a court of competent jurisdiction following the rendering of such decision. Unless a non-binding decision has been elected, upon our request or the request of the "insured", a judgment based on the majority decision of the arbitrators may be entered in any court having jurisdiction.

III. **ADDITIONAL DEFINITIONS**

The following are added to the **DEFINITIONS** Section of each of the above-listed Coverage Forms:

"Defense Costs" means, with respect to each "occurrence", offense or claim:

Expenses directly allocable to specific claims and shall include but not be limited to all Supplementary Payments as defined under the policy; all court costs, fees and expenses; costs for all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution; interest; investigative services, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under the policy.

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 146 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

"Ultimate Net Loss" means, with respect to each "occurrence" or offense, the total of:

1. All sums that the "insured" is legally liable to pay as damages, because of liability to which this insurance applies, determined either through final adjudication or through compromise settlement with our consent, after making proper deductions for all recoveries; and

2. All sums that are covered as damages, medical expenses or "defense costs" under the Coverage Form.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated. **(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective [    ]          Policy No. [    ] 8926          Endorsement No.

Insured MECKLENBURG COUNTY                                            Premium $ [    ]

Insurance Company Safety National Casualty Corporation

Countersigned By _____

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © ISO Properties, Inc., 2004

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 148 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 1998

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 149 of 230
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNINTENDED FAILURE TO PROVIDE
# NOTICE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
POLLUTION LIABILITY COVERAGE FORM

## CHANGE

**Paragraph 2. Duties in the Event of Occurrence, Offense, Claim or Suit** of the **CONDITIONS** section of each of the above referenced forms, except OWNERS & CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM where **Paragraph 4. Duties in the Event of Occurrence, Offense, Claim or Suit** applies and RAILROAD PROTECTIVE LIABILITY COVERAGE FORM where **Paraprah B. 2. Duties in the Event of Occurrence, Offense, Claim or Suit** applies, is amended to add the following:

e. We will not deny coverage as the result of an unintentional failure (meaning no intent to conceal, misrepresent or defraud) by you to provide notice of an "occurrence", an offense that may result in a claim, a claim, or a "suit" as long as notice is given by you to us as soon as practicable after becoming aware that the coverage afforded by this Coverage Form may apply.

**Paragraph 2. Duties in the Event of Occurrence, Offense, Claim or Suit** of the **CONDITIONS** section of the PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM is amended to add the following:

c. We will not deny coverage as the result of an unintentional failure (meaning no intent to conceal, misrepresent or defraud) by you to provide notice of an "occurrence", an offense that may result in a claim, a claim, or a "suit" as long as notice is given by you to us as soon as practicable after becoming aware that the coverage afforded by this Coverage Form may apply.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective ▇▇▇▇▇         Policy No. ▇▇ 8926         Endorsement No.

Named Insured MECKLENBURG COUNTY                              Premium $ ▇▇▇▇

Insurance Company Safety National Casualty Corporation

Countersigned By _____

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS OR OCCURRENCES

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> LIQUOR LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
> RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
> POLLUTION LIABILITY COVERAGE FORM

## CHANGE

**Paragraph 6.  Representations** of the **CONDITIONS** section of each of the above-listed coverage forms is amended to add the following:

> Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy, provided such failure to disclose all hazards or prior "occurrences" is not intentional, meaning there is, or was, no intent to conceal, misrepresent or defraud.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.
**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective ▬▬▬▬          Policy No. ▬▬ 8926          Endorsement No.

Named Insured MECKLENBURG COUNTY          Premium $ ▬▬▬▬

Insurance Company Safety National Casualty Corporation

Countersigned By _____

SNGL 021 1111          Safety National Casualty Corporation          Page 1 of 1

M151 00452
CONFIDENTIAL

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Requirements**

**a. Policies In Effect Less Than 60 Days**

If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b. Policies In Effect More Than 60 Days**

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

**(1)** Expiration of the policy term; or

**(2)** Anniversary date,

stated in the policy only for one or more of the following reasons:

**(a)** Nonpayment of premium;

**(b)** An act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

**(c)** Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

**(d)** Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

**(e)** A fraudulent act against us by the insured or his or her representative that materially affects the insurability of the risk;

**(f)** Willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

© ISO Properties, Inc., 2007

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 152 of 230
CONFIDENTIAL

(g) Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

(h) Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

(i) A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

(j) You fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

(i) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(ii) 30 days before the effective date of cancellation if we cancel for any other reason.

c. Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

d. We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

B. The following provisions are added and supersede any other provisions to the contrary:

1. Nonrenewal

a. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

(1) Expiration of the policy if this policy has been written for one year or less; or

(2) Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

b. We need not mail or deliver the notice of nonrenewal if you have:

(1) Insured property covered under this policy, under any other insurance policy;

(2) Accepted replacement coverage; or

(3) Requested or agreed to nonrenewal of this policy.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

2. The written notice of cancellation or nonrenewal will:

a. Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

b. State the reason or reasons for cancellation or nonrenewal.

 © ISO Properties, Inc., 2007

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 153 of 230
MIC 3000752
CONFIDENTIAL

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 154 of 230
CONFIDENTIAL

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 155 of 230
CONFIDENTIAL

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © Insurance Services Office, Inc., 2012

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 156 of 230   CONFIDENTIAL

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

    **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    **(i)** Any insured; or

    **(ii)** Any person or organization for whom you may be legally responsible; or

  **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    **(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

  **(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© Insurance Services Office, Inc., 2012

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 157 of 230
CONFIDENTIAL

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 158 of 230 CONFIDENTIAL

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

MJ59000692
CONFIDENTIAL

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 160 of 230
CONFIDENTIAL

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 161 of 230
M 161 0078
CONFIDENTIAL

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

Case 3:23-cv-00064 © Insurance Services Office, Inc., 2012 Document 1-1 Filed 02/03/23 Page 162 of 230 CONFIDENTIAL

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 163 of 230
MP230096230
CONFIDENTIAL

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 164 of 230 CONFIDENTIAL

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 165 of 230
Markel00065
CONFIDENTIAL

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

#### a. Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

#### b. Excess Insurance

(1) This insurance is excess over:

    (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

        (i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        (ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

    (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

#### c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 6. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 166 of 230   Mack-B000606   CONFIDENTIAL

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 167 of 230
Mack-000062
CONFIDENTIAL

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012
Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 168 of 230 CONFIDENTIAL

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

     **(a)** When all of the work called for in your contract has been completed.

     **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

     **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 169 of 230
MPBC000062
CONFIDENTIAL

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012 CONFIDENTIAL

# SAFETY SPECIALTY INSURANCE COMPANY

## PRIVACY STATEMENT

**Our Commitment To Our Customers**

Safety Specialty Insurance greatly appreciates the trust that you and all of our customers place in us. We protect that trust by respecting the privacy of all of our customers, both present and past. The following will explain our privacy practices so that you will understand our commitment to your privacy.

**We Respect Your Privacy**

When you apply to Safety Specialty for any type of insurance, you disclose information about you to us. The collection, use and disclosure of such information are regulated by law. Safety Specialty and its affiliates maintain physical, electronic and procedural safeguards that comply with state and federal regulations to guard your personal information. Our employees are also advised of the importance of maintaining the confidentiality of your information.

**Types Of Information We Collect**

Safety Specialty obtains most of our information directly from you, your agent or broker. The application you complete, as well as any additional information you provide, generally gives us most of the details we need to know. Depending on the nature of your insurance transaction, we may need further details about you.

We may obtain information from third parties, such as other insurance or reinsurance companies, medical providers, government agencies, information clearinghouses and other public records. We may also obtain information about you from your other transactions with us, our affiliates or others.

**What We Do With Your Information**

Information that has been collected about you will be retained in our files. We will review your information in evaluating your request for insurance coverage, determining your rates or underwriting risk, servicing your policy or adjusting claims. We may retain information about our former customers and would disclose that information only to affiliates and to non-affiliates as described in this notice or as otherwise permitted by law.

**To Whom Do We Disclose Your Information**

We will not disclose any non-public, personal information about our customers or former customers, except as permitted by law. That means we may disclose information we have collected about you to the following types of third parties:

- Our affiliated companies (Members and subsidiaries of the Tokio Marine Holdings, Inc. group of companies).

- Your agent or broker.

- Parties who perform a business or insurance function for Safety Specialty, including reinsurance, underwriting, claims administration or adjusting, investigation, loss control and computer systems companies.

- Other insurance companies or agents as reasonably necessary concerning your application, policy or claim.

- Insurance regulatory or statistical reporting agencies.

- Law enforcement or governmental authorities in connection with suspected fraud or illegal activities.

- Authorized persons as ordered by subpoena, warrant or court order, or as required by law.

We do not disclose any non-public, personal information about you to non-affiliated companies for marketing purposes or for any other purpose except those specifically allowed by law and described above.

**Independent Sales Agents or Brokers**

Your policy may have been placed with us through an independent agent or broker ("Sales Agent"). Your Sales Agent may have gathered information about you. The use and protection of information obtained by your Sales Agent is their responsibility, not Safety Specialty's. If you have questions about how your Sales Agent uses or discloses your information, please contact them directly.

Meck-000873
CONFIDENTIAL

PEPN01-0416

Safety Specialty Insurance Company
1832 Schuetz Road
St. Louis, MO 63146
1-888-995-5300

# PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY DECLARATIONS

**BROKER/PRODUCER:** USI Insurance Services LLC    **POLICY NUMBER:** ▮5343

**BROKER/PRODUCER NUMBER:** ▮8623    **RENEWAL OF:** ▮5343

**NOTICE: THIS IS A SURPLUS LINES POLICY, ISSUED BY A NON-ADMITTED INSURER, AND IS NOT PROTECTED BY THE DEPARTMENT OF INSURANCE OR GUARANTY ASSOCIATION.**

**NOTICE: THIS COVERAGE FORM PROVIDES CLAIMS MADE AND REPORTED COVERAGE. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**ITEM 1.**    **Named Insured and Mailing Address**
MECKLENBURG COUNTY
CAMERON BROWN BLDG 301 S. MCDOWELL ST.
CHARLOTTE, NC 28204

**ITEM 2.**    **a. Policy Period**    **From:** 07-01-2019
(12:01 am standard time at your address)

**b. Policy Period**    **To:** 07-01-2020
(12:01 am standard time at your address)

**ITEM 3.**    **Limit of Liability**    ▮ Each **Wrongful Act**
▮ Policy Aggregate

**ITEM 4.**    **Self-Insured Retention**    ▮ Each **Wrongful Act,**
including **Claims Expenses**

**ITEM 5.**    **Total Advance Premium**    ▮

**ITEM 6.**    **Minimum Earned Premium**    ▮

**ITEM 7.**    **Notification**
Notice to the **Company** under this policy should be given to:
CITY OF CHARLOTTE, NC, (704) 336-3021

**ITEM 8.**    **Retroactive Date:** 05-24-1994

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 172 of 230
Meck-000873
CONFIDENTIAL

**ITEM 9.**  **Forms and Endorsements attached to the policy at inception:**

| Form Number | Form Title |
|---|---|
| PEPN01 0416 | Privacy Statement |
| IL N 001 0903 | Fraud Statement |
| IL P 001 0104 | U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice To Policyholders |
| PEPNNC01 1215 | North Carolina Disclosure Notice |
| ILNONSTACK 0416 | Non-Stacking Of Limits Endorsement |
| ILSIR 0716 | Self-Insured Retention Endorsement |
| MECHANGE 1215 | Manuscript Change Endorsement |
| POEPCM 0416 | Public Officials And Employment Practices Liability Coverage Form- Claims Made And Reported |

_____          _____

Date                                       Authorized Signature

CONFIDENTIAL

DPOEPCM - 0416

# FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

© ISO Properties, Inc., 2003

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 174 of 230
MPC-A000724
CONFIDENTIAL

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 175 of 230
CONFIDENTIAL

# NORTH CAROLINA DISCLOSURE NOTICE

**The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty or solvency fund.**

Mack-000076
CONFIDENTIAL

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NON-STACKING OF LIMITS ENDORSEMENT

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

### Two or More Coverage Forms, Coverage Parts, or Policies Issued By Us

If this Policy and any other policy or coverage part(s) or coverage form(s) issued to the Named Insured by us or any of our affiliated companies, apply to the same or related damages, the most we will pay under all such policies combined is the single largest applicable limit of insurance available under any one of those policies, coverage parts or coverage forms, regardless of the number of insureds, claims made or suits brought, or persons or organizations making claims or bringing suits.

Same or related damages include injury or damages that may have occurred during the prior policy period and/or that continued into a subsequent policy period, or any injury or damages based upon, arising from, or in consequence of the same or related series of acts or omissions, facts, circumstances, situations, transactions, or causes, provided that this Endorsement does not apply to any policies or coverage part(s) or coverage form(s) issued by us or an affiliated company specifically to apply as excess insurance over this Policy.

ILNONSTACK0416

Mpc\*P00873
CONFIDENTIAL

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SELF-INSURED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following Coverage Forms:

**LAW ENFORCEMENT LIABILITY**
**PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY**
**EDUCATORS LEGAL LIABILITY AND EMPLOYMENT PRACTICES LIABILITY**

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

### SCHEDULE

| Self-Insured Retention |  Per Wrongful Act |
| --- | --- |

This policy is subject to a Self-Insured Retention in the Per **Wrongful Act** amount set forth in the Schedule above. The **Wrongful Act** Self-Insured Retention may be met by the payment of **Claims Expenses**, **Damages** or a combination of both. The provisions of the policy apply unless modified by this endorsement. In the event of a conflict between or among the provisions set forth in this endorsement and the policy, the terms of this endorsement shall control. The provisions of this endorsement are conditions precedent that must be complied with in order for the policy's coverage to apply.

Some policies subject to this endorsement apply to **Claims** as defined in the policy while others apply to **Claims** and/or **Suits** as those terms are defined. Use of the term **Suit** in this endorsement does not alter, amend or change the policies which apply to **Claims**. Unless otherwise stated, the bolded terms in this endorsement shall have the same meaning as is given to those bolded terms in the policy.

**1.** SELF-INSURED RETENTION

The **Company's** obligation to pay **Claims Expenses** and **Damages** on behalf of the **Insured** applies only to amounts in excess of the applicable Self-Insured Retention shown in the above Schedule.

The Self-Insured Retention is primary and underlying to the insurance provided by the policy and can only be satisfied when the full amount of the retention is paid by the first **Named Insured**. After the first **Named Insured** has paid the amount of the applicable Self-Insured Retention, the **Company** will pay on the **Insured's** behalf, or reimburse the **Insured** for paying **Claims Expenses** or **Damages** in excess of the applicable Self-Insured Retention. The **Company's** payment of **Damages** shall be subject to the Limits of Liability shown in the Declarations for the policy.

In the event there is any other insurance applicable to a **Claim** or **Suit** within the Self-Insured Retention amount, the first **Named Insured** will continue to be responsible for the full Self-Insured Retention before the **Company** can be required to pay.

2. SELF-INSURED RETENTION PER WRONGFUL ACT

If a Per **Wrongful Act** Self-Insured Retention amount is shown in the above Schedule, it is a condition precedent to the **Company's** liability under the policy that the first **Named Insured** make actual payment of all **Claim Expenses** and **Damages** until the first **Named Insured** has paid the amount equal to the applicable Per **Wrongful Act** amount.

Payments by others, including but not limited to, additional insureds or other insurers, does not serve to reduce or satisfy the Self-Insured Retention. The Per **Wrongful Act** amount is the most the first **Named Insured** will pay for **Claims Expenses** and **Damages** arising out of a **Wrongful Act**.

3. LIMITS OF LIABILITY

The **Wrongful Act** Limit of Liability on the policy is excess over the **Wrongful Act** Self-Insured Retention.

4. OUR RIGHT TO REIMBURSEMENT

With respect to any **Claim** or **Suit** under this policy, the **Company** may, at its sole discretion, pay any or all of the Self-Insured Retention amount to defend or to effect a settlement. If the **Company** elects to pay the Self-Insured Retention amount, the first **Named Insured** must promptly reimburse the **Company** for such payment.

5. BANKRUPTCY OR INSOLVENCY

Satisfaction of the Self-Insured Retention amounts by the first **Named Insured** is a condition precedent to the **Company's** obligations and liability for amounts in excess of the Self-Insured Retention regardless of the first **Named Insured's** bankruptcy or insolvency or inability to pay. Accordingly, bankruptcy, insolvency, receivership, or any refusal or inability to pay will not operate to:

A. Deplete or reduce the Self-Insured Retention; or

B. Increase the **Company's** liability under this policy.

In no event will the **Company** assume the responsibility or obligations of the first **Named Insured** or any **Insured**.

6. CLAIMS ADMINISTRATION:

A. As a condition precedent to coverage under the policy, the first **Named Insured** shall maintain a continuous contract with an Authorized Independent Claims Service Administrator ("AICSA") approved by the **Company** at the first **Named Insured's** sole expense without reimbursement from the **Company**, for the purpose of providing claims handling services for the investigation, defense and settlement of **Claims**, **Suits** or other matters reported.

B. Alternatively, the first **Named Insured** shall operate a self-administered claims program to provide claims handling services for the investigation, defense and settlement of

M79000730
CONFIDENTIAL

**Claims**, **Suits** or other matters reported. Said self-administered claims program and the procedures for operating the program must be approved by the **Company** and operated at the first **Named Insured's** sole expense without reimbursement from the **Company**.

**C.** Unless the **Company** elects to assume control, the AICSA or the self-administered claims program (if there is no AICSA) shall remain responsible for claims handling services after exhaustion of the Self-Insured Retention.

**7.** NOTICE AND COOPERATION CONDITIONS

Other than for policies issued as **Claims** Made Policies, the Notice and Cooperation Conditions of the policy are amended as follows:

**A.** The **Named Insured** must see to it that the AICSA (or the manager of the approved self-administered claims program if there is no AICSA) is promptly notified of:

**(1)** A **Wrongful Act**;

**(2)** Any investigatory, administrative, disciplinary or criminal proceedings or notices of charges that may involve a **Wrongful Act** covered by this policy; and

**(3)** Circumstances that may reasonably be expected to result in a **Claim** or **Suit**.

Said notice must include particulars regarding the **Wrongful Act** or circumstances, the names and addresses of any injured parties, any witnesses and any involved **Insureds**.

**B.** If **Claim** is made or **Suit** is brought against any **Insured**, such **Insured** and the **Named Insured** shall immediately notify the AICSA (or the manager of the approved self-administered claims program if there is no AICSA) and immediately send to the AICSA (or the manager of the approved self-insured claims administration program if there is no AICSA) every document, demand, notice, summons, or other process or legal papers received by the **Insured** or by the **Insured's** representatives.

**C.** The **Insured** shall cooperate with the AICSA (or the manager of the approved self-administered claims program if there is no AICSA) and with the **Company** in any investigation and in the defense of any **Claim** or **Suit**, and upon the **Company's** request, submit to examination by a representative of the **Company**, under oath if necessary, and attend hearings, depositions and trials, shall assist in any settlement process and assist in the securing and giving of a written statement or statements to claims representatives and defense counsel.

**8.** CLAIMS MADE POLICIES

The Notice and Reporting Conditions of **Claims** Made Policies remain as stated in the policies. However, after a matter is initially reported or a Claim is initially made, the investigation, defense and claims handling shall be conducted by the AICSA or by the approved self-administered claims program if there is no AISCA, subject to the Self-Insured Retention provisions and other terms of the policy and this endorsement.

**9.** ADDITIONAL REPORTING REQUIREMENTS

**A.** For all policies, including but not limited to Claims Made Policies, in addition to complying with the applicable Notice Conditions, the **Named Insured** or the AICSA, on the **Named**

Case 3:23-cv-00064 Document 1-1 Filed 02/03/23 Page 180 of 230
Mack000935
CONFIDENTIAL

**Insured's** behalf, must immediately provide the **Company's** Claims Department with a captioned report of the following:

**(1)** Any matter where **Claims Expenses** and/or **Damages** may or are likely to exceed 50% of the **Wrongful Act** Self-Insured Retention;

**(2)** Any matter involving riots or civil unrest;

**(3)** Any matter involving sexual abuse or molestation;

**(4)** Any matter involving significant psychological involvement;

**(5)** If the policy covers **Bodily Injury**, any matter involving:

    **a.** Death;

    **b.** Brain or spinal injury;

    **c.** Amputation;

    **d.** Loss of use of an eye or limb;

    **e.** Severe burns involving more than 25% of the body;

    **f.** Multiple fractures;

    **g.** Permanent and/or total disability;

    **h.** Significant neurological involvement;

    **i.** Severe internal body organ damage or loss;

    **j.** Severe cosmetic deformity or disfigurement; and

    **k.** A hospital stay of two weeks or longer.

**(6)** Any matter involving a **Wrongful Act** that constitutes a **Wrongful Employment Practice**;

**(7)** An actual or alleged error or omission of the **Named Insured**, the AICSA, or the **Company** in the claims handling process;

**(8)** An actual or potential conflict of interest between the **Insured** and the **Company** or between the AICSA and the **Company**; and

**(9)** A coverage issue or dispute.

**B.** For all policies, including but not limited to Claims Made Policies, the **Named Insured** or the AICSA, on the **Named Insured's** behalf, must:

**(1)** Provide a summary of all claims, on a loss run form approved by the **Company**, on a monthly basis. This requirement also applies after cancellation or nonrenewal until all matters are closed or settled.

**(2)** Compliance with these reporting requirements is a condition precedent to coverage. In the event of non-compliance, the **Company** shall not be required to establish prejudice resulting from reporting non-compliance and shall be automatically relieved of liability with respect to any matter, **Claim** or **Suit** involved.

CONFIDENTIAL

**10.** DEFENSE & SETTLEMENT:

    **A.** The first **Named Insured** and the AICSA shall exercise the utmost good faith and diligence in claims handling.

    **B.** The first **Named Insured** and the AICSA may not effect a settlement that exceeds the remaining Self-Insured Retention amount without the **Company's** written consent. If the **Company's** consent is not obtained, the **Company** shall have no obligation to provide coverage for that settlement or for the **Claim** or **Suit** involving that settlement.

    **C.** The **Company**, at its sole discretion, has the right but not the duty to associate itself in the defense of any **Claim** or **Suit**. The **Company**, at its sole discretion, shall also have the right to assume control over the investigation, defense or settlement of any **Claim** or **Suit** which, in the **Company's** sole judgment, may exceed the remaining Self-Insured Retention amount. If the **Company** avails itself of that right, the **Insured** must cooperate with the **Company**. In the event the **Company** retains its own counsel and incurs **Claim Expenses** in the exercise of its right to associate in or assume control over the defense, the first **Named Insured** shall not be liable to reimburse the **Company** for the **Claim Expenses** incurred by the **Company's** own retained counsel. Should the **Company** settle such a **Claim** or **Suit** or should there be a judgment in such a **Claim** or **Suit**, the first **Named Insured** shall pay **Damages** up to the amount remaining in the Self-Insured Retention.

**11.** HOLD HARMLESS AGREEMENT:

    The first **Named Insured** will defend, hold harmless and indemnify the **Company** for any and all damages, awards, judgments, attorney's fees or other costs or expenses which are incurred by or imposed upon the **Company** because of the acts or omissions of the first **Named Insured** or its employees, agents, self-administered claims program or independent contractors in the course of the investigation, settlement or handling of any matter, **Claim** or **Suit** under the policy.

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 182 of 230   Meek-000952   CONFIDENTIAL

# Policy Change Endorsement

**Safety Specialty Insurance Company**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| ████ 5343 | 07-01-2019 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |
| | |

| Named Insured and Address | Broker/Producer |
|---|---|
| MECKLENBURG COUNTY<br>CAMERON BROWN BLDG 301 S. MCDOWELL ST.<br>CHARLOTTE, NC 28204 | USI Insurance Services LLC<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210<br><br>Telephone:<br>Broker/Producer Number: 6608623 |

## CHANGE DESCRIPTION

### EARLIER NOTICE OF CANCELLATION ENDORSEMENT – 90 DAYS

This endorsement modifies insurance provided under the following:

**LAW ENFORCEMENT LIABILITY**
**PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY**
**EDUCATORS LEGAL AND EMPLOYMENT PRACTICES LIABILITY**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Subsection **4.** of **SECTION IV – GENERAL CONDITIONS**, is revised to provide that the **Company** shall mail notice of cancellation to the **Insured** not less than 90 days before cancellation when cancelling for reasons other than nonpayment of premium. Notice of cancellation for nonpayment of premium shall be mailed to the **Insured** not less than 14 days before cancellation.

The bolded terms in this endorsement shall have the same meaning as is given to those bolded terms in the policy.

ESM 003 0817

**MECHANGE1215**

**Page 1 of 1**

CONFIDENTIAL

# Policy Change Endorsement

**Safety Specialty Insurance Company**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| ████5343 | 07-01-2019 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |
| | |

| Named Insured and Address | Broker/Producer |
|---|---|
| MECKLENBURG COUNTY<br>CAMERON BROWN BLDG 301 S. MCDOWELL ST.<br>CHARLOTTE, NC 28204 | USI Insurance Services LLC<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210<br><br>Telephone:<br>Broker/Producer Number: 6608623 |

## CHANGE DESCRIPTION

### NORTH CAROLINA PRESERVATION OF GOVERNMENTAL IMMUNITY ENDORSEMENT

This endorsement modifies insurance provided under the following Coverage Forms:

**LAW ENFORCEMENT LIABILITY**
**PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY**
**EDUCATORS LEGAL AND EMPLOYMENT PRACTICES LIABILITY**

This endorsement changes the policy effective on the inception date of the policy unless another enforcement effective date is indicated below.

The following is added to the section of your policy titled **Sovereign Immunity Defense:**

The purchase of this policy is not intended by the **Insured** to waive its governmental immunity under North Carolina General Statutes Sect. 153A-435 or any other applicable law or statute or amendments thereto.

Accordingly, subject to its terms, conditions and limits, this policy provides coverage only for **Wrongful Acts** for which the defense of governmental immunity is clearly not applicable or for which, after the defense of governmental immunity is asserted, a court of competent jurisdiction determines the defense of governmental immunity is not applicable.

The bolded terms in this endorsement shall have the same meaning as is given to those bolded terms in the policy.

ESM 006-4 0519

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 184 of 230
CONFIDENTIAL

# Policy Change Endorsement

**Safety Specialty Insurance Company**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| ▬▬5343 | 07-01-2019 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Broker/Producer |
|---|---|
| MECKLENBURG COUNTY<br>CAMERON BROWN BLDG 301 S. MCDOWELL ST.<br>CHARLOTTE, NC 28204 | USI Insurance Services LLC<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210<br><br>Telephone:<br>Broker/Producer Number: 6608623 |

## CHANGE DESCRIPTION

## KNOWLEDGE OF OCCURRENCE

At your request and as agreed to by us, your attached policy is hereby endorsed and amended as follows:

This endorsement modifies insurance provided under the following:

### PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY
### EDUCATORS LEGAL AND EMPLOYMENT PRACTICES LIABILITY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

**SECTION IV – GENERAL CONDITIONS, Subsection 7. Notice and Reporting**, is amended by adding a new Items **C.** as follows:

    **C.** It is agreed that knowledge by the **Named Insured's Employee,** agent or servant of a **Wrongful Act, Claim** or **Suit** as set forth in Items **A.** and **B.** above, will not in itself be considered to be knowledge by the **Named Insured** unless the individual(s) in the position(s) or department(s) scheduled below shall have received such notice.

SCHEDULE



The bolded terms in this endorsement shall have the same meaning as is given to those bolded terms in the policy.

ESM 015-2 0718

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 185 of 230
CONFIDENTIAL

# Policy Change Endorsement

**Safety Specialty Insurance Company**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| ▮▮▮▮5343 | 07-01-2019 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |
| | |

| Named Insured and Address | Broker/Producer |
|---|---|
| MECKLENBURG COUNTY<br>CAMERON BROWN BLDG 301 S. MCDOWELL ST.<br>CHARLOTTE, NC 28204 | USI Insurance Services LLC<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210<br><br>Telephone:<br>Broker/Producer Number: 6608623 |

## CHANGE DESCRIPTION

### NAMED INSURED - EXCLUSION

This endorsement modifies insurance provided under the following Coverage Forms:

**LAW ENFORCEMENT LIABILITY**
**PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY**
**EDUCATORS LEGAL AND EMPLOYMENT PRACTICES LIABILITY**

This endorsement changes the policy effective on the inception date of the policy unless another enforcement effective date is indicated below.

Throughout this policy the words "you", "your" or the Named Insured, shall not include *The Charlotte Area Transit System (CATS)* nor *The Charlotte Douglass International Airport (CDA)*. Accordingly this insurance does not apply to **Claims** or **Damages** against such entities as the result of a **Wrongful Act**. Additionally, the coverage provided by this policy shall not be considered primary nor excess over any policies providing coverage for such organizations.

The bolded terms in this endorsement shall have the same meaning as is given to those bolded terms in the policy.

ESM 033 0718

**MECHANGE1215**

**Page 1 of 1**

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 186 of 230
Meck00989
CONFIDENTIAL

# Policy Change Endorsement

**Safety Specialty Insurance Company**
ST. LOUIS, MO 63146
(888) 995-5300

| Policy Number | Effective Date |
|---|---|
| ■■■5343 | 07-01-2019 |
| **Endorsement Number** | 12:01 A.M. Standard Time at the described location |

| Named Insured and Address | Broker/Producer |
|---|---|
| MECKLENBURG COUNTY<br>CAMERON BROWN BLDG 301 S. MCDOWELL ST.<br>CHARLOTTE, NC 28204 | USI Insurance Services LLC<br>6100 FAIRVIEW ROAD<br>SUITE 1400<br>CHARLOTTE, NC 28210<br><br>Telephone:<br>Broker/Producer Number: 6608623 |

## CHANGE DESCRIPTION

### EXTENDED WHO IS AN INSURED

This endorsement modifies insurance provided under the following Coverage Forms:

**PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY**
**EDUCATORS LEGAL AND EMPLOYMENT PRACTICIES LIABILITY**

This endorsement changes the policy effective on the inception date of the policy unless another endorsement effective date is indicated below.

**SECTION II – Who is an Insured, 1.E.** is amended to include:

Health clinics owned and/or maintained by the **Named Insured**.

The bolded terms in this endorsement shall have the same meaning as is given to those bolded terms in the policy.

ESM 034 0718

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 187 of 230
MPR-00089
CONFIDENTIAL



# PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM

## CLAIMS MADE AND REPORTED

**NOTICE: THIS IS A SURPLUS LINES POLICY, ISSUED BY A NON-ADMITTED INSURER, AND IS NOT PROTECTED BY THE DEPARTMENT OF INSURANCE OR GUARANTY ASSOCIATION.**

**NOTICE: THIS POLICY IS A CLAIMS-MADE POLICY WHICH PROVIDES LIABILITY COVERAGE ONLY IF A CLAIM IS MADE AND REPORTED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine the **Insured's** rights and duties, and what is and is not covered.

Titles are used within this policy for convenience only and shall not control or affect the meaning or construction of any provision of this policy.

Other words and phrases that appear in bold have special meaning. Refer to **SECTION VII- DEFINITIONS**.

In consideration of the payment of the premium, in reliance upon the statements in the written application for insurance and subject to all of the terms of this policy, the **Company** and the **Insured** agree as follows:

**SECTION I - COVERAGES**

**1. Insuring Agreement**

The **Company** will pay on behalf of the **Insured** those **Damages** resulting from a **Wrongful Act** to which this insurance applies. The **Claim** must be first made during the **Policy Period** and reported to the **Company** in compliance with **SECTION IV - GENERAL CONDITIONS**, Item 7. or any applicable reporting period under **SECTION V - EXTENDED REPORTING PERIOD**.

The **Wrongful Act** must take place in the **Policy Territory** and must occur:

**A.** During the **Policy Period**; or

**B.** Subsequent to the Retroactive Date, if any, stated in the Declarations of this policy, but only if:

    **(1)** The **Insured** did not give notice relating to the **Wrongful Act** under any other policy of insurance; and

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 188 of 230
Mock000898
CONFIDENTIAL

**(2)** Before the effective date of this policy, no **Insured** knew or had a basis to believe that the circumstances of such **Wrongful Act** might reasonably be expected to result in or give rise to a **Claim**.

For purposes of Paragraph 1. A. of this Insuring Agreement, if during the **Policy Period** or during the applicable reporting period under **SECTION V - EXTENDED REPORTING PERIOD**, the **Insured** gives written notice to the **Company**, in accordance with **SECTION IV - GENERAL CONDITIONS**, Item 7, of a **Wrongful Act** likely to result in a **Claim**, then any **Claim** that may subsequently be made against an **Insured** arising out of such **Wrongful Act** shall be deemed to have been made during the **Policy Period**.

1. **Defense, Self-Insured Retention, and Supplementary Payments**

    **A.** This policy is subject to a Self-Insured Retention applicable to each **Wrongful Act** which must be paid by the first **Named Insured**. The Self-Insured Retention includes the payment of **Claims Expenses** and/or **Damages** within the limit shown in the Declarations as the Self-Insured Retention.

    **B.** Once the Self-Insured Retention has been paid and subject to the terms of this policy, the **Company** shall have the right and duty to defend the **Insured(s)** against a **Claim** covered by this policy, except where otherwise excluded. The **Company** shall have no obligation to defend any **Claim** that is not covered by this policy and no obligation to defend after the applicable Limit of Liability has been exhausted.

    **C.** Before the Self-Insured Retention is exhausted, the first **Named Insured** has the right to appoint defense counsel, subject to the **Company**'s written consent and approval, to defend a **Claim** against the **Insured(s)**. The **Company**, at its sole discretion, may withdraw approval of counsel and require the first **Named Insured** to appoint a different defense counsel subject to the **Company's** written consent and approval.

    **D.** The **Company** has the right, at its sole discretion, to appoint counsel to associate with defense counsel appointed by the first **Named Insured**.

    **E.** Once the Self-Insured Retention is exhausted, the **Company** has the right to appoint counsel of its choice to defend the **Insured(s)** in connection with the **Claim** in lieu of defense counsel appointed by the first **Named Insured**.

    **F.** Other than as permitted under the Self-Insured Retention provisions of this policy, no **Insured**, except at their own cost and for their own account shall, without prior written consent of the **Company**, make any payment, admit any liability, settle any **Claim**, assume any obligation, or incur any expense.

    **G.** Once the Self-Insured Retention is exhausted, the **Company** shall have the right, but not the duty, to appeal any judgment rendered against the **Insured**. If a judgment is rendered against an **Insured** within the Self-Insured Retention, no appeal shall be taken therefrom without the prior written consent and approval of the **Company**.

    **H.** Once the Self-Insured Retention is exhausted, and the **Company** is defending, the **Company** will pay in addition to the applicable Limit of Liability:

    **(1)** All **Claims Expenses** incurred by the **Company**, costs taxed against the **Insured** in connection with covered **Damages**, and interest on that portion of any judgment for covered **Damages** which does not exceed the limit of the **Company's** liability. The **Company** will have no duty to pay interest after the **Company** has paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limit of Liability.

    **(2)** Premium on appeal bonds required in any **Claim** defended by the **Company**, and premium on bonds to release attachments in any such **Claim**, for an amount not in excess of the applicable Limit of Liability of this policy, but the **Company** shall have no obligation to apply for or furnish any such bonds;

Medco000889
CONFIDENTIAL

**(3)** Reasonable expenses incurred by the **Insured** at the **Company's** request for assisting the **Company** in the investigation or defense of any **Claim**, including the **Insured's** attendance at hearings or trials;

## SECTION II - WHO IS AN INSURED

**1. Each of the following is an Insured:**

**A.** The **Named Insured** as shown in the Declarations;

**B.** The **Named Insured's Employees**, but only for **Wrongful Acts** within the course and scope of their employment by the **Named Insured**;

**C.** The **Named Insured's** authorized volunteer workers, but only for **Wrongful Acts** while acting within the course and scope of their duties for the **Named Insured** and only if the **Named Insured** provides indemnification to such volunteer workers in the same manner as is provided to the **Named Insured's Employees**;

**D.** The **Named Insured's** elected or appointed officials but only for **Wrongful Acts** while acting within the course and scope of their duties for the **Named Insured**; and

**E.** Boards, commissions, or other governmental units, and authorized members and officials thereof, created by, operated by and under the **Named Insured** within an apportionment of the total operating budget stated in the application for this insurance, but only for **Wrongful Acts** while acting within the course and scope of their duties for the **Named Insured**. However, no person or organization is an **Insured** while serving on or acting as a board, commission or unit for any school or healthcare facility unless that school or healthcare facility is specifically endorsed onto this policy.

## SECTION III- LIMITS OF LIABILITY

**1.** The **Company's** total liability for all **Damages** as a result of all **Claims** covered under this policy shall not exceed the amount stated in the Declarations as the Policy Aggregate Limit, regardless of the number of **Insureds,** the number of **Claims** made or the number of persons or organizations making **Claims.**

**2.** Subject to the above provision regarding the Policy Aggregate Limit, the **Company's** liability for all **Damages** as a result of a **Wrongful Act** shall not exceed the amount stated in the Declarations as the **Wrongful Act** Limit, regardless of the number of **Insureds,** the number of **Claims** made or the number of persons or organizations making **Claims.**

**3.** Any applicable reporting period under **SECTION V EXTENDED REPORTING PERIODS** shall be deemed to be part of this **Policy Period** for purposes of determining the Limit of Liability. The Limits of Liability do not apply separately to any reporting period under **SECTION V EXTENDED REPORTING PERIODS**.

**4.** If additional **Claims** are subsequently made which arise out of a **Claim** already made and reported to the **Company** or a proceeding, circumstance or **Wrongful Act** already reported to the **Company**, then all such **Claims,** whenever made, shall be considered first made within the **Policy Period** or the applicable Extended Reporting Period in which the report to the **Company** was made, and all such **Claims** shall be subject to one Limit of Liability.

## SECTION IV - GENERAL CONDITIONS

**1. Action Against the Company**

No action shall lie against the **Company** unless, as a condition precedent thereto, all of the terms of this policy shall have been fully complied with, nor until the amount of an **Insured's** obligation to pay shall have been finally determined either by a final judgment against the **Insured** or by written agreement of the first **Named Insured**, the claimant and the **Company**.

Any person or organization or the legal representative thereof who has secured such a judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy, but the **Company** shall not be liable for **Damages** or other amounts that are

not payable under the terms of this policy or for **Damages** that are in excess of the applicable Limit of Liability. No person or organization shall have any right under this policy to join the **Company** as a party to any action against an **Insured** to determine the **Insured's** liability, nor shall the **Company** be impleaded by the **Insured** or his legal representative. In the event of bankruptcy or insolvency of the **Insured**, the **Company** shall not be relieved of the payment of such indemnity as would otherwise have been payable under the terms of this policy after exhaustion of the Self-Insured Retention.

## 2. Representations and Agreements

The **Named Insured** declares and represents that the particulars and information in the application for coverage are accurate and complete and further agrees that said particulars and information are material to the risk assumed by the **Company**, that the **Company** issued the policy in reliance upon the truth, accuracy and completeness of such particulars and information, that the statements in the Declarations are true and correct, and that in the event of a misrepresentation that materially affects either the acceptance of the risk or the hazard assumed by the **Company**, this policy shall be void in its entirety and of no effect.

## 3. Assignment

Assignment of interest under this policy shall not bind the **Company** until its consent is endorsed hereon; if however, an **Insured** shall die, such insurance as is afforded by this policy shall apply to the **Insured's** legal representatives, while acting within the scope of their duties as such, but only for **Claims** that are otherwise covered by this policy.

## 4. Cancellation

This policy may be cancelled by the first **Named Insured** at any time by surrendering this policy to the **Company** or any of its authorized agents, or by mailing to the **Company** written notice stating when, thereafter, the cancellation shall be effective. This policy may also be cancelled by the **Company** by mailing written notice to the first **Named Insured** at the address shown in the Declarations, stating the effective date of cancellation. Said notice from the **Company** shall be mailed not less than ten (10) days before cancellation for non-payment of premium, or sixty (60) days before cancellation for any other reason. The mailing of notice as aforesaid shall be sufficient proof of notice. The cancellation date stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice either by the first **Named Insured** or by the **Company** shall be equivalent to mailing.

If the policy shall be cancelled by the first **Named Insured**, the **Company** shall retain the customary short rate proportion of the premium hereon subject to the minimum earned premium as stated in the Declarations. Payment or tender of any unearned premium by the **Company** shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practical. If the period of limitation relating to the giving of notice of cancellation hereunder is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended to be equal to the minimum period of limitation of such law.

## 5. Changes

Notice to any agent, or knowledge possessed by any agent or by any other person, shall not affect or change any provision of this policy or stop the **Company** from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, and signed by a duly authorized representative of the **Company**.

## 6. Consent to Settle

The **Company** may settle any **Claim** both within or in excess of the Self-Insured Retention. If the **Company** decides to settle a **Claim** for an amount in excess of the remaining Self-Insured Retention, the first **Named Insured** will promptly pay the amount remaining on the Self-**Insured** Retention. However, the **Company** will request the consent of the first **Named Insured** when the **Company** recommends a settlement on behalf of any **Insured** that is equal to or less than the remaining Self-Insured Retention. If the first **Named Insured** refuses to consent to such a settlement, the **Company** shall nevertheless have the right to effect the settlement and the first **Named Insured** shall immediately reimburse the

**Company** for all amounts remaining in the Self-Insured Retention. Alternatively, if consent is refused, the **Company** may allow the first **Named Insured** to contest the **Claim** or continue any legal proceeding in connection with such **Claim**, in which event the **Company's** liability will not exceed the amount the **Company** recommended in settlement and the amount of **Claims Expenses** incurred from the date of such refusal.

7. **Notice and Reporting**

   A. As a condition precedent to coverage under this policy, the **Named Insured** shall give written notice to the **Company** of any **Claim** made against any **Insured(s)** as soon as practicable, but in no event later than:

      **(1)** 60 days after the end of the **Policy Period** if the policy is renewed; or

      **(2)** During any applicable Extended Reporting Period, before the end of such Extended Reporting Period.

      Such written notice must be delivered or mailed to the **Company** at the address listed in the Declarations of this policy. If delivered, the **Insured** must obtain acknowledgment of the delivery at the time of delivery. If mailed, the date of mailing shall constitute the date that such notice was given to the **Company** and proof of delivery shall by certified mail, courier or facsimile. A **Claim** shall be considered to have been first made when written notice of such **Claim** is received by any **Insured** or by the **Company**, whichever comes first.

   B. As a condition precedent to coverage under this policy, the **Named Insured** shall also give written notice of the following circumstances to the **Company**, with full particulars as to subject matter, dates and persons or entities involved:

      **(1)** Any investigative, agency, administrative, disciplinary or criminal proceedings or any notice of EEOC charges that allege a **Wrongful Act** or which may give rise to a **Claim**; or

      **(2)** Other situations and circumstances that do or may involve a **Wrongful Act** or which may reasonably be expected to give rise to a **Claim**.

      Notice under these provisions shall likewise be given as soon as practicable but in no event later than:

      **(1)** 60 days after the end of the **Policy Period** if the policy is renewed; or

      **(2)** During any applicable Extended Reporting Period, before the end of the Extended Reporting Period.

      Written notice shall be made as set forth in section **7. A.** above.

8. **Cooperation**

   The **Insured(s)** shall cooperate with the **Company** in any investigation and in the defense of any **Claim**, and upon the **Company's** request, submit to examination by a representative of the **Company**, under oath if necessary, and attend hearings, depositions and trials, assist in any settlement process, and assist in the securing and giving of information and statements to the **Company's** representatives and defense counsel.

9. **Minimum Earned Premium**

   This policy is subject to a Minimum Earned Premium as shown on the Declarations and it shall be fully earned at the inception date of the policy.

10. **Other Insurance**

    If other insurance is available to the **Insured** for a **Claim** covered by this policy, the insurance provided by this policy shall apply in excess over any other insurance and its deductible or self-insured retention provision, whether such other insurance is stated to be primary, excess, contingent or otherwise, unless

such other insurance is expressly written as excess over this policy and specifically designates this policy as underlying insurance in its Declarations.

The insurance provided by this policy is excess over any self-insured program or over any other collectible insurance and its deductible or self-insured retention provision. When this policy is excess over other self-insurance or other self-insurance, the **Company** will have no duty to defend the **Insured** in any **Claim** or **Suit** where any other insurer has a duty defend the **Insured**.

When this insurance is excess, the **Company** will pay only the **Company's** share of what is owed, if any, that exceeds the total amount of all such other self-insured or other collectible insurance and the total amount of all deductibles and self-insured retention amounts under all such other collectible insurance.

When both this insurance and other self-insurance or insurance apply on the same excess basis, the **Company** will share as set forth below:

**A.** Contribution by Equal Shares. If all of the other self-insurance or insurance provides for contribution by equal shares, the **Company** shall not be liable for a greater proportion than would be payable if each insurer contributes an equal share until the share of each insurer equals its applicable Limit of Liability or the full amount of the loss is paid.

**B.** Contribution by Limits. If any such other self-insurance or insurance does not provide for contribution by equal shares, the **Company** shall not be liable for a greater proportion of loss than the applicable Limit of Liability under this policy bears to the total applicable Limit of Liability of all other self-insurance and insurance.

### 11. Separation of Insureds

Except with respect to the Limit of Liability, and any rights or duties specifically assigned in this policy to the first **Named Insured**, this policy applies:

**A.** As if each **Named Insured** were the only **Named Insured**; and

**B.** Separately to each **Insured** against whom **Claim** is made.

### 12. Service of Suit Action Against the Company

Pursuant to any statute of any state, territory or District of the United States which makes provision therefor, the **Company** hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as the **Company's** true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Named Insured**, arising out of this policy.

### 13. Sovereign Immunity

The **Company** will use the defense of sovereign immunity, to which an **Insured** may be entitled, only when both the **Company** and the first **Named Insured** are in agreement in its use. If the first **Named Insured** does not agree with the **Company** to use the defense of sovereign immunity, the **Company** shall have no liability to any **Insured** because of the failure to raise such defense. This policy does not constitute a waiver of sovereign immunity to which an **Insured** is entitled.

### 14. Subrogation

In the event of any payment under this policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery against any person or organization and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after the payment of judgment or settlement to prejudice such rights.

### 15. Terms of Policy - Statute

Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

Medxxxxxxx CONFIDENTIAL

## SECTION V - EXTENDED REPORTING PERIODS

1.  The **Company** will provide an Extended Reporting Period to the first **Named Insured**, only as described herein.

2.  An Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided under this policy.

3.  An Extended Reporting Period does not reinstate or increase the Limit of Liability.

4.  A Basic Extended Reporting Period of sixty (60) days from the effective date of expiration or cancellation or nonrenewal of this policy is automatically provided without an additional charge. The Basic Extended Reporting Period applies to **Claims** for **Damages** that are first made against an **Insured** during the **Policy Period** and reported to the **Company**, in accordance with **SECTION IV - GENERAL CONDITIONS Item 7.**, no later than the end of the Basic Extended Reporting Period.

    The Basic Extended Reporting Period does not apply to **Claims** covered under any other insurance purchased subsequent to, or, to replace this policy.

5.  If this policy is canceled by the **Company** or not renewed by the **Company** for any reason other than nonpayment of premium or any other amount owed to the **Company**, an Optional Extended Reporting Period may be offered to the first **Named Insured**, subject to the payment of additional premium and shall take effect on the effective date of cancellation or nonrenewal of this policy. The Optional Extended Reporting Period will remain in effect for a period of one (1) to three (3) years, depending on which Optional Extended Reporting Period the **Insured** purchases. An offer by the **Company** to renew this policy based on terms, conditions, Limits of Liability and/or premiums that are different from those of the expiring policy shall not constitute non-renewal. The Optional Extended Reporting Period applies to a **Claim** for **Damages** reported to the **Company** no later than the end of the Optional Extended Reporting Period in accordance with **SECTION IV - GENERAL CONDITIONS Item 7. A.**

    The additional premium for the Optional Extended Reporting Period will depend on which option the first **Named Insured** chooses, as shown below, but will be no more than 150% of the annual premium for the last policy period.

    Option 1    1 year   75% of the annual premium for this policy.

    Option 2    2 years  125% of the annual premium for this policy.

    Option 3    3 years  150% of the annual premium for this policy.

    The **Company** must receive a written request from the first **Named Insured**, together with payment of additional premium due, within sixty (60) days after the effective date of cancellation or nonrenewal of this policy if the first **Named Insured** wishes to purchase one of the Optional Extended Reporting Periods. The first **Named Insured** must state in the request which Optional Extended Reporting Period it wishes to purchase. The Optional Extended Reporting Period will not go into effect unless the **Insured** pays and the **Company** acknowledges receipt of the additional premium when due. Once in effect, the Optional Extended Reporting Period may not be canceled and the premium for the Optional Extended Reporting Period is fully earned.

6.  There is no coverage for **Claims** reported during any Extended Reporting Period if the **Claim** is covered under any other insurance, including insurance purchased subsequent to this **Policy Period** or to replace this policy.

## SECTION VI - EXCLUSIONS

This policy does not apply to, and the **Company** has no obligation to defend any **Claim**:

1.  Arising out of:

    A.  Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 194 of 230   CONFIDENTIAL

**B.** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in paragraph **A.** or **B.** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

2   Arising out of:

    **A.** The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of:

        **(1)** Asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

        **(2)** Lead, or any products or materials containing lead;

        **(3)** Silica, silica dust, or any products or materials containing silica or silica dust; or

        **(4) Fungi** or mold.

    **B.** Any loss, cost or expense, request, demand, legal proceeding, order or requirement related to the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of:

        **(1)** Asbestos, asbestos fibers, any other form of asbestos, or any products or materials containing asbestos, asbestos fibers or any other form of asbestos;

        **(2)** Lead, or any products or materials containing lead;

        **(3)** Silica, silica dust, or any products or materials containing silica or silica dust; or

        **(4) Fungi** or mold.

    **C.** Any supervision, training, instructions, disclosures, recommendations, warnings, or advice given or which should have been given in connection with **A.** or **B.** above.

3.   Arising out of:

    **A.** The actual, alleged or threatened presence of, exposure to, discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time;

    **B.** Any loss, cost, expense request, demand, legal proceeding, order or requirement relating to the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or in any way respond to or assess the effects of **Pollutants;** and

    **C.** Any supervision training, instructions, disclosures, recommendations warnings, or advice given or which should have been given in connection with **A.** or **B.** above.

4.   Arising out of:

    **A.** The actual alleged or threatened presence of, exposure to, release or escape of electromagnetic fields at any time;

    **B.** Any loss, cost, expense, request, demand, legal proceeding, order or requirement relating to electromagnetic fields; and

    **C.** Any supervision, training, instructions, disclosures, recommendations, warnings, or advice given or which should have been given in connection with **A.** or **B.** above.

5. Arising out of the ownership, maintenance, operation, use, loading or unloading, or negligent entrustment of any:

   A. Automobile, watercraft, aircraft, motorcycle, or other motorized means of transportation owned by, operated by, rented by, or loaned to any **Insured**; or

   B. Any other Automobile, watercraft, aircraft, motorcycle, or other motorized unit operated by any person in the course of their employment by the **Named Insured**.

   This exclusion also applies to negligent supervision, training or dispatch related to ownership, maintenance, use or entrustment of any Automobile, watercraft, aircraft, motorcycle or other motorized means of transportation.

6. Arising out of **Bodily Injury** or **Property Damage**.

7. Arising out of:

   A. A publication or utterance in the course of or relating to advertising, broadcasting or telecasting activities conducted by or on behalf of any **Insured**;

   B. Violation of public occupancy or violation of property rights;

   C. Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises;

   D. Misappropriation of any trade secret, advertising ideas or style of business;

   E. Infringement of any patent, collective mark, registered mark, copyright, trademark, trade dress, domain, title or slogan, copyright or service name, or any other intellectual property right;

   F. Emotional distress or mental anguish; or

   G. Libel, slander, defamation, humiliation or invasion of privacy.

   However, exclusions **7. F.** and **7. G.** do not apply when injury is caused by an otherwise covered **Wrongful Employment Practice**.

8. Arising out of law enforcement activities, including but not limited to:

   A. False arrest, detention or imprisonment;

   B. Malicious prosecution;

   C. False or improper service of process; or

   D. Other abuse of process.

9. Arising out of:

   A. The issuance of bonds; or

   B. Tax collection, or the improper administration of taxes or loss that reflects any tax obligation.

10. Arising out of acts or omissions in connection with the modification, adaption or construction of any building or property in order to make such building or property more accessible or accommodating to any disabled person.

11. Arising out of any labor or grievance proceeding or arbitration or out of a collective bargaining agreement or breach of any such agreement.

12. Arising out of eminent domain, condemnation, inverse condemnation, temporary or permanent taking, adverse possession, or dedication by adverse use.

13. Brought by any claimant's domestic partner, spouse, child, parent, sibling or other relative, other than as the legal representative of a claimant's Estate.

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 196 of 230
CONFIDENTIAL

**14.** Arising out of:

    **A.** Breach of any written, oral, express, implied, actual or constructive contract, warranty, guarantee or promise (except as may be otherwise covered as a **Wrongful Employment Practice**) ; or

    **B.** The assumption of liability in a contract, agreement or warranty, whether written, oral, express, implied, actual or constructive. This does not apply to liability for otherwise covered **Damages** that the **Insured** would have in the absence of the contract or agreement.

**15.** Arising out of fraud, dishonesty, intentional acts or omissions, or criminal acts or omissions committed by or at the direction of the **Insured**, or the willful violation of any federal, state or local statute, ordinance, rule, or regulation committed by or with the knowledge or consent of the **Insured**. However, if a **Claim** made against the **Insured** also seeks compensatory **Damages**, the **Company** will afford a defense to such action subject to the Self-Insured Retention and defense provisions of this policy, until such time as a finding or judgment is entered that such conduct or violations occurred. The **Company** shall have no obligation to pay any monetary awards, amounts, fees, costs or expenses in connection with such a finding or judgment.

**16.** Arising out of the operations or premises of any hospital, clinic, nursing home or other health care facilities unless specifically endorsed onto this policy.

**17.** Arising out of failure to procure, obtain or maintain any insurance or bond, or the failure to advise or counsel with respect to the procuring, obtaining or maintaining of any insurance coverages, bonds or any other plan or agreement of risk transfer or assumption.

**18.** Arising out of any obligation or duty imposed by:

    **A.** The Employee Retirement Income Security Act (ERISA);

    **B.** The Pension Benefit Act;

    **C.** The Consolidated Omnibus Budget Reconciliation Act of 1988 (COBRA);

    **D.** The Fair Labor Standards Act; or

    **E.** SECTION 89 of the Internal Revenue Code;

or any amendments thereto, or similar provisions of any federal, state or local, statutory or common law.

**19.** Brought by or on behalf of one **Insured** against another **Insured**, however, with respect to a **Claim** alleging a **Wrongful Employment Practice**, this exclusion shall only apply to crossclaims or counterclaims brought by one **Insured** against another **Insured**.

**20.** For any investigatory, administrative disciplinary or criminal proceedings or any notice of charges, including EEOC notices, against an **Insured**. However, at the **Company's** option and with its consent, such a proceeding or charge may be designated and treated as a **Claim** under this policy. **Claim Expenses** incurred by any **Insured** in connection with such proceedings shall not go towards payment of the Self-Insured Retention unless the **Company** consents in writing.

**21.** Seeking relief or redress in any form other than compensatory **Damages**. However, if a **Claim** against the **Insured** also seeks compensatory **Damages**, the **Company** will afford a defense to such action subject to the Self-Insured Retention and defense provisions of this policy, but the **Company** shall not have any obligation to pay any fees, costs or expenses incurred as a result of any order, award or judgment in any form other than for compensatory **Damages**, including but not limited to orders, awards or judgments for injunctive or declaratory relief.

**22.** Arising out of duties performed by any **Insured** for anyone other than the **Named Insured**.

**23.** Arising out of a **Claim**, proceeding or other circumstance for which the **Named Insured** gave notice under any policy of insurance in effect prior to the inception date of this policy, including any prior policy issued by the **Company** or any other insurer.

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 197 of 230   CONFIDENTIAL

24. Arising out of the rendering of or failure to render medical professional services, including but not limited to services provided by doctors, physicians, surgeons or dentists.

25. Seeking fines or punitive, exemplary, treble or multiplied damages or other awards that are uninsurable under the law or public policy. However, if a **Claim** made against the **Insured** also seeks compensatory **Damages**, the **Company** will afford a defense to such action pursuant to the Self-Insured Retention and defense provisions of this policy, but the **Company** shall not have any obligation to pay for fines or punitive, exemplary, treble or multiplied damages awards or any costs or interest associated therewith.

26. Arising out of any actual or alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 USC section 1961-68 et sequential, any amendments thereto, or any rules or regulations promulgated thereunder.

27. Arising out of self-dealing or gaining of any profit, remuneration or advantage to which an **Insured** is or was not legally entitled.

28. Arising out of any strike, riot or civil commotion, including but not limited to a lockout, picket line, replacement, or other similar action resulting from labor disputes or labor negotiations or any protections contained within the National Labor Relations Act.

29. Arising out of:

    A. War, including undeclared or civil war; or

    B. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any governmental sovereign or other authority using military personnel or other agents; or

    C. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

30. Arising out of the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988) or any amendment thereto, or any similar federal, state or Law

31. Arising out of any claim for which an **Insured** or other insurer may be held liable under any workers compensation law, unemployment law, unemployment compensation law, disability benefits law, or attributable to any obligations pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law

## SECTION VII - DEFINITIONS

Whenever used in this policy, the following words have these meanings:

1. **Automobile means**:

    A. Any land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment; or

    B. Any other land vehicle that is subject to a compulsory financial responsibility law.

2. **Bodily Injury** means physical injury, including death, sickness or disease and includes mental distress, anguish or suffering arising from such physical injury.

3. **Claim** means any of the following received by an **Insured** and alleging a **Wrongful Act** during the **Policy Period** or subsequent to the Retroactive Date, if applicable:

    A. A written demand for **Damages** or a notice advising an **Insured** of an intent to sue for **Damages** or a right to sue for **Damages**;

    B. Notice of an arbitration or alternative dispute proceeding seeking **Damages** to which the **Insured** must submit or does submit with the **Company's** consent; or

    C. A civil proceeding alleging **Damages** commenced by the service of a summons, complaint or similar pleading

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 198 of 230   Meek-000098
CONFIDENTIAL

4. **Claims Expenses** means reasonable and necessary fees, costs and expenses charged by an attorney designated by the **Company,** or designated by the **Insured** with the prior written consent of the **Company,** in the investigation and defense of any **Claim** against the **Insured**, and all other fees, costs, and expenses resulting from the investigation, adjustment and defense of a **Claim**. **Claims Expenses** shall not include wages or salaries of employees of the **Company** or the **Insured**.

5. The **Company** means the insurer stated in the Declarations of this policy.

6. **Damages** means compensatory damages which the **Insured** is legally obligated to pay as a result of a judgment or settlement for a **Wrongful Act** covered by this policy.

7. **Employee** means a past or present employee of the **Named Insured**. **Employee** also includes a **Leased Worker**, but only if the **Named Insured** provides indemnification to such **Leased Worker** in the same manner as is provided to the **Named Insured's Employees.**

8. **Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by **Fungi**.

9. **Insured** means a person(s) or organization(s) identified in **SECTION II - WHO IS AN INSURED.**

10. **Leased Worker** means a person leased to the **Named Insured** by a labor leasing firm under an agreement between the **Named Insured** and the labor leasing firm, to perform authorized duties for the **Named Insured**.

11. **Named Insured** means the entity named in the Declarations.

12. **Policy Period** means the period of time from the inception date of policy stated in the Declarations to the expiration date of this policy stated in the Declarations or to any earlier cancellation date of this policy.

13. **Policy Territory** means coverage is worldwide provided that the **Claim** is brought within the United States of America.

14. **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

15. **Property Damage** means:
    A. Physical injury to or destruction of tangible property, including loss of use thereof at any time resulting there from; or
    B. Loss of use of tangible property which has been physically injured or destroyed.

16. **Wrongful Act** means any of the following committed by an **Insured** in the performance of the **Insured's** official duties for or on behalf of the **Named Insured**:
    A. Any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty; or
    B. Any **Wrongful Employment Practice**.

    **Wrongful Act** includes a series of connected or interrelated acts, errors, omissions, misstatements, misleading statements, neglect, breaches of duty, or **Wrongful Employment Practices** committed by one or more Insureds in performance of the **Insured's** official duties, all of which shall be considered one **Wrongful Act**.

17. **Wrongful Employment Practice** means any of the following acts or practices:
    A. Discrimination in hiring, promotion, advancement, opportunity, demotion, discipline or pay (including discrimination based on age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability) ;
    B. Harassment, coercion or creation of an intimidating, hostile or offensive work environment;

**C.** Wrongful demotion, discipline, dismissal, reassignment, discharge or termination (whether actual or constructive) ;

**D.** Wrongful failure to employ;

**E.** Employment-related libel, slander, defamation, humiliation or invasion of privacy;

**F.** Failure to provide or enforce adequate or consistent policies or procedures relating to employment practices;

**G.** Employment-related violation of an individual's civil rights;

**H.** Employment-related negligent infliction of emotional distress; and

**I.** Retaliatory treatment due to the actual or attempted exercise of an **Employee's** rights under the law or an **Employee's** disclosure or threatened disclosure of activities by the **Insured** that may violate law or the **Employee's** cooperation in any investigation or proceeding into whether the **Insured's** activities may violate law.

Mark 000409
CONFIDENTIAL

NORTH CAROLINA

MECKLENBURG COUNTY

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 18976

HELEN BARBARA RYAN,

Plaintiff,

vs.

MECKLENBURG COUNTY and THE
KANIA LAW FIRM, P.A.,

Defendants.

2022 DEC 22   A 11: 25

MECKLENBURG CO. C.S.C.

BY_____

**DEFENDANT THE KANIA LAW FIRM,
P.A.'S MOTION TO COMPEL
PLAINTIFF'S DISCOVERY**

NOW COMES Defendant The Kania Law Firm, P.A. (hereinafter "Defendant Kania"),

by and through its undersigned counsel and pursuant to N.C. Gen. Stat. 1A-1, Rules 26, 33, 34

and 37, and respectfully petition this Court for an Order compelling Plaintiff Helen Barbara

Ryan (hereinafter "Plaintiff") to respond fully to outstanding discovery. In support of this

Motion, Defendant Kania shows unto the Court as follows:

1.      This case involves the foreclosure of Plaintiff's property after Plaintiff failed to

pay her taxes to Defendant Mecklenburg County. Plaintiff alleges that she was not provided with

proper notice of the foreclosure process, but that when she became aware of the foreclosure, she

paid her taxes in full in September of 2018 and subsequently told Defendant Mecklenburg

County and Defendant Kania of her payment. Plaintiff alleges that despite Plaintiff's contact

with Defendant Kania informing them of her payment, Defendant Kania falsely told her that her

right of redemption no longer existed. Plaintiff alleges she was then wrongfully evicted from her

property and her family home was demolished.

2.      The subject discovery responses are those of Plaintiff. Defendant Kania served its

first set of interrogatories and requests for production on June 14, 2022. The responses were due

on August 15, 2022. On August 15, 2022, Plaintiff asked for an informal extension of their

responses, which Defendant Kania consented to. On August 19, 2022, Plaintiff Kania served

their responses on Defendant Kania (Exhibit A).

3.      Upon review, Defendant Kania sent a deficiency letter to Plaintiff on September

20, 2022 asking that Plaintiff fully respond to the interrogatories and requests for production.

(See Exhibit B). Defendant Kania gave Plaintiff until October 4, 2022 to respond to the

deficiency letter. Plaintiff subsequently served Defendant Kania with supplemental discovery

responses on October 4, 2022 (Exhibit C). Upon review, Defendant Kania argues that Plaintiff's

responses are still deficient and lacking.

4.      The following are the categories of information requested:

a.      **Interrogatory #3 Plaintiff's Educational Background:** Plaintiff fails to provide

her educational background and objects to Interrogatory 3 stating it is not reasonably calculated

to lead to discovery of admissible evidence, not relevant, and not within the scope of Rule 26 of

the North Carolina Rules of Civil Procedure. Plaintiff had delinquent taxes and also did not

respond to any of the many attempts to notice her that her property was being foreclosed via

telephone and written notice from Mecklenburg County. Defendant Kania argues this

Interrogatory is relevant, important to its defense, and falls within the scope of North Carolina

Rule of Civil Procedure 26(b).

b.      **Interrogatory #10 Plaintiff's Damages:** Plaintiff has failed to provide a

computation of damages in response to Interrogatory 10. She provides that she is still in the

process of itemizing and valuing the losses, and also "recalling all the personal items that were lost." Defendant Kania notes that this case was filed over a year ago. Defendant Kania argues this Interrogatory is relevant, important to its defense, and falls within the scope of North Carolina Rule of Civil Procedure 26(b).

      c.    **Interrogatory # 17 Persons Who Will Support Plaintiff's Allegations:** In Plaintiff's initial responses to Defendant Kania on August 19, 2022, Plaintiff responded to Interrogatory 17 stating that herself and her experts would support her allegations. She however failed to provide a short summary of facts in which she contends each possesses. In her now supplemental responses, Plaintiff has listed two new names, "Casey Simmons" and "Claudia Klontz." Plaintiff again fails to provide a short summary of each persons listed. Defendant Kania argues this Interrogatory is relevant, important to its defense, falls within the scope of North Carolina Rule of Civil Procedure 26(b).

      d.    **Interrogatory 21 Medical Care:** Plaintiff fails to provide information on her medical care and objects to Interrogatory 21 stating it is not reasonably calculated to lead to discovery of admissible evidence, not relevant, and not within the scope of Rule 26 of the North Carolina Rules of Civil Procedure. Plaintiff provides that she was hospitalized from the incident alleged in the Complaint, but fails to provide the nature of the issue for why she sought care and does not identify the health care provider, which was requested. Defendant Kania argues this Interrogatory is relevant, important to its defense, and falls within the scope of North Carolina Rule of Civil Procedure 26(b).

      e.    **Interrogatory 22 Prescription Medication:** Plaintiff fails to provide information about prescription medications she "may" have taken and objects to Interrogatory 22 stating it is not reasonably calculated to lead to discovery of admissible evidence, not relevant,

and not within the scope of Rule 26 of the North Carolina Rules of Civil Procedure. Plaintiff provides an inconclusive answer to this interrogatory stating that she "may" have taken medications and "may have done so in that time period." Defendant Kania argues this Interrogatory is relevant, important to its defense, and falls within the scope of North Carolina Rule of Civil Procedure 26(b).

f. **Interrogatory 23 Itemized List of Medical Bills:** Plaintiff does not object to Interrogatory 23 but has simply stated "[i]t will include the bills incurred with Dr. Boyce and any prescribed treatment she recommends." It is unclear if "it" means a supplemental of an itemized list or specifically what "it" refers to. Additionally, Plaintiff did not include any information about the bills from her hospitalization that she refers to in prior Interrogatories allegedly as a result of her eviction. Defendant Kania argues this Interrogatory is relevant, important to its defense, and falls within the scope of North Carolina Rule of Civil Procedure 26(b).

g. **Interrogatory 30 Trusts:** Plaintiff fails to provide information regarding trusts and objects to Interrogatory 30 stating it is not reasonably calculated to lead to discovery of admissible evidence, not relevant, and not within the scope of Rule 26 of the North Carolina Rules of Civil Procedure. However, it is Defendant Kania's understanding upon information and belief that Plaintiff was paying for her taxes through a trust. Defendant Kania argues this Interrogatory is relevant, important to its defense, and falls within the scope of North Carolina Rule of Civil Procedure 26(b).

h. **Interrogatory 31 Financial Advisor:** Plaintiff fails to provide an information about any financial advisors and objects to Interrogatory 31 stating it is not reasonably calculated to lead to discovery of admissible evidence, not relevant, and not within the scope of Rule 26 of the North Carolina Rules of Civil Procedure. As previously stated, Plaintiff was delinquent on

her taxes. Defendant Kania argues this interrogatory is relevant, important to its defense, and falls within the scope of North Carolina Rule of Civil Procedure 26(b).

      i.    **Requests for Production 4 Medical Records:** Plaintiff fails to produce her medical records and objects to Requests for Production 4 stating that the information sought is protected by attorney-client privilege and/or attorney's work product. Plaintiff simply states that she is "in the process of seeking mental health professionals at this time but has not yet received any documentation in that regard." Plaintiff's responses to Defendant's Interrogatories provides that she was hospitalized as a result of the alleged incident; however, she fails to produce any medical records form this hospitalization. Defendant Kania argues this request for production is relevant, important to its defense, and falls within the scope of North Carolina Rule of Civil Procedure 26(b).

      j.    **Requests for Production 5 Medical Bills:** Plaintiff provides in her response to Requests for Production 5 that she does not have any medical bills despite stating in her responses to Defendant's Interrogatories that she was hospitalized and also seeing Dr. Boyce as a result of this incident. Plaintiff simply states in her response to Requests for Production 5 that she will be requesting "medical records" from her hospital stay after the eviction, but does not address requesting her medical bills. Defendant Kania argues this request for production is relevant, important to its defense, and falls within the scope of North Carolina Rule of Civil Procedure 26(b) and Rule 414.

      k.    **Requests for Production 10 Tax Returns:** Plaintiff fails to produce her tax returns and objects Requests for Production 10 stating that it is confidential, unduly harassing, and not likely to lead to admissible evidence. Defendant Kania does not intend to harass Plaintiff and is willing to sign a protective order for said documents. At the center of this case is the fact

that Plaintiff was delinquent on her taxes leading to the foreclosure process. Defendant Kania argues this request for production is relevant, important to its defense, and falls within the scope of North Carolina Rule of Civil Procedure 26(b).

l.      **Requests for Production #16 SSDI:** Plaintiff fails to produce her SSDI information and objects to Requests for Production 16 stating that it is confidential, not reasonably calculated to lead to the discovery of admissible evidence, is not relevant, and is not within the Scope of Rule 26 of the North Carolina Rules of Civil Procedure. Plaintiff alleges that she was not able to receive the foreclosure notices on her house due to her medical condition. Defendant Kania argues this request for production is relevant, important to its defense, and falls within the scope of North Carolina Rule of Civil Procedure 26(b).

m.      **Requests for Production # 21 Bank Statements:** Plaintiff fails to provide her bank statements and objects to Requests for Production 21 stating that it is not reasonably calculated to lead to the discovery of admissible evidence, is not relevant, and is not within the Scope of Rule 26 of the North Carolina Rules of Civil Procedure. As previously stated, the nature of this case involves Plaintiff failing to pay her taxes leading to the foreclosure process of her home. Defendant Kania argues this request for production is relevant, important to its defense, and falls within the scope of North Carolina Rule of Civil Procedure 26(b).

13.     The documents requested are necessary to the defense of this action and to the analysis of Plaintiff's claims. Defendant Kania is materially prejudiced by Plaintiff's failure to produce this information.

14. Defendant Kania, by and through its undersigned counsel, hereby certifies that it has in good faith, conferred or attempted to confer, with Plaintiffs' counsel in an effort to secure the requested information without court action but has been unable to do so

WHEREFORE, Defendant Kania respectfully requests the Court enter an Order compelling Plaintiff to provide complete responses, all documents, and information responsive to Defendant Kania's discovery, for the costs and fees incurred to obtain said Order, and for such relief as the Court may deem just and proper.

This the 22nd day of December, 2022.

**CRANFILL, SUMNER LLP**

BY: _Samuel Poole by JLB_

Samuel H. Poole, Jr. NC Bar #13659
Taylor J. Sweet NC Bar #55101
*Attorneys for Defendant Kania Law Firm*
Post Office Box 30787
Charlotte, North Carolina 28230
Telephone: (704) 332-8300
Facsimile: (704)332-9994
Email: shp@cshlaw.com
Email: tsweet@cshlaw.com

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the attached **DEFENDANT THE KANIA LAW FIRM, P.A.'S MOTION TO COMPEL PLAINTIFF'S DISCOVERY** on all of the parties to this cause by:

☐ Hand delivering a copy hereof to the attorney for each said party addressed as follows:

☒ Depositing a copy hereof, postage prepaid, in the United States Mail, addressed to the attorney for each said party as follows:

☐ Depositing a copy hereof with a nationally recognized overnight courier service, for overnight delivery, addressed to the attorney for each said party as follows:

James P. Galvin
Ryan B. Tiede
**Thurman, Wilson, Boutwell & Galvin, P.A.**
301 S. McDowell Street, Ste. 608
Charlotte, NC 28204

W. Clark Goodman
B. Chad Ewing
**Womble, Bond, Dickinson, LLP**
301 S. College St. Ste. 3500
Charlotte, NC 28202

This the 22nd day of December, 2022.

**CRANFILL, SUMNER LLP**

BY: _Samuel Poole by JLB_

Samuel H. Poole, Jr. NC Bar #13659
Taylor J. Sweet NC Bar #55101
*Attorneys for Defendant Kania Law Firm*
Post Office Box 30787
Charlotte, North Carolina 28230
Telephone: (704) 332-8300
Facsimile: (704)332-9994
Email: shp@cshlaw.com
Email: tsweet@cshlaw.com

NORTH CAROLINA

MECKLENBURG COUNTY

HELEN BARBARA RYAN,

    Plaintiff,

    vs.

MECKLENBURG COUNTY and THE
KANIA LAW FIRM, P.A.,

    Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 18976

2022 DEC 22 A 11: 25

MECKLENBURG CO., C.S.C.
BY **NOTICE OF HEARING**

    NOW COMES Defendant The Kania Law Firm, P.A. and gives notice that it will bring its

Motion to Compel before the Civil Superior Court Division for Mecklenburg County, North

Carolina on Wednesday February 1st, 2023 at 11:30 a.m. or as soon thereafter as it may be heard

via WebEx.

    This the 22nd day of December, 2022.

                         **CRANFILL, SUMNER LLP**

    BY:    _Samuel Poole_ by JLB

            Samuel H. Poole, Jr. NC Bar #13659
            Taylor J. Sweet NC Bar #55101
            *Attorneys for Defendant Kania Law Firm*
            Post Office Box 30787
            Charlotte, North Carolina 28230
            Telephone: (704) 332-8300
            Facsimile: (704)332-9994
            Email: shp@cshlaw.com
            Email: tsweet@cshlaw.com

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served the attached **NOTICE OF HEARING** on all of the parties to this cause by:

☐    Hand delivering a copy hereof to the attorney for each said party addressed as follows:

☒    Depositing a copy hereof, postage prepaid, in the United States Mail, addressed to the attorney for each said party as follows:

☐    Depositing a copy hereof with a nationally recognized overnight courier service, for overnight delivery, addressed to the attorney for each said party as follows:

James P. Galvin
Ryan B. Tiede
**Thurman, Wilson, Boutwell & Galvin, P.A.**
301 S. McDowell Street, Ste. 608
Charlotte, NC 28204

W. Clark Goodman
B. Chad Ewing
**Womble, Bond, Dickinson, LLP**
301 S. College St. Ste. 3500
Charlotte, NC 28202

This the 22nd day of December, 2022.

**CRANFILL, SUMNER LLP**

BY:    *Samuel Poole by JLB*

Samuel H. Poole, Jr. NC Bar #13659
Taylor J. Sweet NC Bar #55101
*Attorneys for Defendant Kania Law Firm*
Post Office Box 30787
Charlotte, North Carolina 28230
Telephone: (704) 332-8300
Facsimile: (704)332-9994
Email: shp@cshlaw.com
Email: tsweet@cshlaw.com

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION         CASE NO. 21-CVS-018976
MECKLENBURG COUNTY

RYAN,HELEN,BARBARA

    V.                    **NOTICE OF CIVIL MOTION HEARING**
                          **TO BE HELD REMOTELY VIA WEBEX**

MECKLENBURG CO
KANIA LAW FIRM PA THE

| LOCATION | DATE OF HEARING | TIME | JUDGE |
|---|---|---|---|
| **https://nccourts.webex.com/meet/meckcr6310.sh** **Mecklenburg County Courthouse** **832 East Fourth Street** **Charlotte, NC 28202** | **02/01/2023** | **11:30 AM** | **To Be Announced** |

**NATURE OF HEARING: MOTION TO COMPEL (POOLE, JR.), TIME ALLOWED FOR HEARING: 1 HR**

**WEBEX HEARING – Parties/Attorneys must type the URL into their browser and click "Join" to sign into the hearing five minutes before the designated date and time listed above. The URL is https://nccourts.webex.com/meet/meckcr6310.sh (type link into browser and click "Join"). If you are unable to attend by video, you may join via phone by calling: 1-415-655-0001 US Toll and using Access code: 126 653 3213**

YOU ARE HEREBY NOTIFIED that your case is set for a remote hearing at the above date, time.  Parties are **REQUIRED** to appear via Webex meeting and are **NOT** to appear in person. **Failure to attend the Webex hearing will not be cause for a continuance and the hearing will move forward as scheduled and may result in the entry of dismissal, judgment or other ruling by the presiding judge.**

**Once the link is clicked, you will see a preview of your connection. Make certain your microphone is muted and your video is on. Click "Join Meeting".**
**If you have any issues getting into the hearing, you should contact Richard Lockard, courtroom clerk, immediately at (704) 805 -7899 for assistance.** No one other than named litigants and attorneys of record will be allowed to participate in the video conference.

For questions not answered by this notice, contact:  Superior Court Caseflow Coordinator
Mecklenburg.Caseflow.Superior.Motions@nccourts.org  or  (704)-686-0190

                                     Date of Notice: 12/29/2022

GOODMAN,W,CLARK
301 S COLLEGE ST, SUITE 3500
CHARLOTTE, NC  28202-6037

See Other Side for Important Information

The audio-video conferencing platform will be Cisco Webex. A Webex account is not needed to participate. The application may be downloaded here: https://help.webex.com/en-us/Otow9g/Download-the-Cisco-Webex-Meetings-Desktop-App for devices using Windows and there is a link to the App Store for IOS devices. Instructions for joining a meeting can be found here: https://help.webex.com/en-us/n62wi3c/Get-Started-with-Cisco-Webex-Meetings-for-Attendees and here: https://www.youtube.com/watch?v=re85544RveA

If a reason exists that makes it impossible to participate in a hearing by Webex. The motion for Exemption from Remote Proceeding shall follow the same rules and submission deadlines as a motion for continuance. A motion for exemption (form CCF-85A) and proposed Order (form CCF-85B) must be submitted to the Caseflow Coordinator **by Noon on the Wednesday prior to the start of the session**.

Questions prior to the beginning of the session should be directed to: The Caseflow Management Division; Superior Caseflow Coordinator, 832 E. Fourth Street, Suite 3420, Charlotte, NC 28202. Mecklenburg.Caseflow.Superior.Motions@nccourts.org Phone: 704-686-0190 / Fax: 704-686-0310.

Note: All changes in the calendar are due by the end of the day on the Thursday before the beginning of the session. If you have a change that occurs after Thursday, you must contact the clerk and state the change.

**Calendars are available on the internet at www.nccourts.gov   Local Rules and Forms are available at https://www.nccourts.gov/locations/mecklenburg-county/mecklenburg-county-local-rules-and-forms**

**All Briefs** in Superior Court cases must be emailed to Julie Mulhall at D26.Briefs@nccourts.org no later than two business days prior to the hearing on the motion. **The subject line of the email must contain the session date and the case number and caption.** All counsel of record and pro se parties shall be served in compliance with Rule 5 of the NC Rules of Civil Procedure absent stipulation or agreement otherwise.

**PARTIES SHOULD NOTIFY THE CASEFLOW MANAGEMENT DIVISION OF THE TRIAL COURT ADMINISTRATOR'S OFFICE IF THEIR CASE HAS BEEN SETTLED AND FILE THE APPROPRIATE DISPOSITIONAL PAPERS, AS WELL AS UPDATE THE STATUS IN JUSTICE INITIATIVE'S COURT CALENDAR.**

**NOT LATER THAN 2:00 p.m. ON THE LAST BUSINESS DAY PRECEDING THE SESSION AT WHICH CASES ARE CALENDARED FOR A MOTION HEARING, THE CASEFLOW MANAGEMENT DIVISION WILL MAKE AVAILABLE ON THE COURT'S WEBSITE A CALENDAR WITH THE CURRENT STATUS OF ALL CASES APPEARING ON THE FINAL MOTION CALENDAR.**

**PLEASE REVIEW THE CALENDAR ON-LINE TO CONFIRM REMOVAL FROM OR CHECK THE POSITION OF YOUR CASE ON THE CALENDAR. THE FINAL CALENDAR WILL BE LABELED AS THE MOTIONS CALENDAR FOR THAT SESSION DATE.**

NORTH CAROLINA

MECKLENBURG COUNTY

HELEN BARBARA RYAN,

                    Plaintiff,

        v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

                    Defendants.

FILED IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

2023 JAN -4 ⊃ 3: 46

MECKLENBURG CO.. C.S.C

BY_____

**NOTICE OF WITHDRAWAL**

PLEASE TAKE NOTICE that, effective January 1, 2023, W. Clark Goodman was no

longer associated with the firm Womble Bond Dickinson (US) LLP and is hereby withdrawn as

counsel of record for Defendant Mecklenburg County. Please remove W. Clark Goodman (N.C.

Bar No. 19927) from the service list for this action and note that he is no longer counsel of record

for Mecklenburg County in this matter.

Mecklenburg County will continue to be represented by B. Chad Ewing of Womble Bond

Dickinson (US) LLP.

This the 4th day of January, 2023.

                    **WOMBLE BOND DICKINSON (US) LLP**

                    B. Chad Ewing (N.C. State Bar No. 27811)
                    301 South College Street, Suite 3500
                    Charlotte, North Carolina  28202-2037
                    Telephone: (704) 331-4996
                    Facsimile: (704) 338-7854
                    E-Mail: chad.ewing@wbd-us.com
                    *Attorneys for Defendant Mecklenburg County*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2023, I caused a copy of the foregoing **NOTICE OF WITHDRAWAL** to be served by First Class United States Mail and email to:

James P. Galvin
Ryan B. Tiede
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, NC 28204
*Attorneys for Plaintiff*

Samuel H. Poole Jr.
Taylor J. Sweet
Cranfill Sumner, LLP
P.O. Box 30787
Charlotte, NC 28230
*Attorneys for The Kania Law Firm, P.A.*

B. Chad Ewing

NORTH CAROLINA

MECKLENBURG COUNTY

HELEN BARBARA RYAN,

          Plaintiff,

   v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

         Defendants.

FILED

2023 JAN 19 ☐ 2:59

MECKLENBURG CO.. C.S.C

BY_____

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 19, 2023, a copy of the (1) **Order Granting Judgment**

**on the Pleadings** and (2) **Order to Amend Complaint**, attached hereto as Exhibits A and B,

respectively, were served upon parties to this civil action pursuant to N.C. R. Civ. P. 5 via U.S.

Mail as follows:

James P. Galvin
Ryan B. Tiede
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Suite 608
Charlotte, North Carolina 28204
*Attorneys for Plaintiff*

Samuel H. Poole Jr.
Taylor J. Sweet
Cranfill Sumner, LLP
P.O. Box 30787
Charlotte, North Carolina 28230
*Attorneys for Defendant*
*The Kania Law Firm, P.A.*

This the 19th day of January, 2023.

                    **WOMBLE BOND DICKINSON (US) LLP**

                    _B. Chad Ewing (N.C. State Bar No. 27811)_
                    301 South College Street, Suite 3500
                    Charlotte, North Carolina 28202-6037
                    Telephone: (704) 331-4996
                    Facsimile: (704) 338-7854
                    E-Mail: Chad.Ewing@wbd-us.com
                    *Attorneys for Defendant Mecklenburg County*

# EXHIBIT A

DNORTH CAROLINA

MECKLENBURG COUNTY

HELEN BARBARA RYAN,

        Plaintiff,

   v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

**ORDER GRANTING MOTON FOR
JUDGMENT ON THE PLEADINGS**

This case came on for hearing before the undersigned on October 6, 2022 at 11:30 a.m. on Defendant Mecklenburg County's (the "County") Motion for Judgment on the Pleadings (the "Motion"). The County was represented at the hearing by B. Chad Ewing of Womble Bond Dickinson (US), LLP. Plaintiff Helen Barbara Ryan was represented at the hearing by James P. Galvin of Thurman, Wilson, Boutwell & Galvin, P.A. Defendant The Kania Law Firm, P.A. was represented by Taylor J. Sweet. The County argued that Ryan's Complaint was barred by the doctrine of governmental immunity. At the conclusion of the October 6, 2022 hearing, the Court ordered the County to produce certain insurance policies to Ryan's counsel for review and ordered both parties to provide post-hearing briefing on the matter. The County provided said insurance policies to Ryan's counsel on October 11, 2022. Ryan served her post-hearing Brief in Opposition to Defendant Mecklenburg County's Motion for Judgment on the Pleadings on November 1, 2022. The County served its Post-Hearing Response Brief in Support of Motion for Judgment on the Pleadings on November 8, 2022.

The Court scheduled an additional hearing on the County's Motion for Judgment on the Pleadings on January 6, 2023. At the January 6, 2023 hearing, the County again was represented by Mr. Ewing, and Ryan again was represented by Mr. Galvin. After reviewing the pleadings

and the briefing on the Motion and after hearing the arguments of counsel, the Court is of the opinion that Defendant Mecklenburg County's Motion for Judgment on the Pleadings should be and, hereby is, **GRANTED** because the doctrine of governmental immunity bars Plaintiff's claims against Mecklenburg County for (i) Fraud, (ii) Negligent Misrepresentation, (iii) Negligence, and (iv) Negligent Infliction of Emotional Distress.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT JUDGMENT** is hereby **ENTERED** in favor of Mecklenburg County and against Plaintiff Helen Barbara Ryan on Ryan's claims against the County for (i) Fraud, (ii) Negligent Misrepresentation, (iii) Negligence, and (iv) Negligent Infliction of Emotional Distress. This Order makes no findings or conclusions with respect to and is not addressed to Ryan's amended claims pursuant to 42 U.S.C. §1983 and the North Carolina Constitution.

This the 11th day of January, 2023

HONORABLE ROBERT C. ERVIN
SUPERIOR COURT JUDGE

# EXHIBIT B

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

HELEN BARBARA RYAN )
)
     Plaintiff, )
)
vs. )
)
MECKLENBURG COUNTY, and )
THE KANIA LAW FIRM, P.A. )
)
     Defendants )
_____ )

**ORDER GRANTING
MOTION TO AMEND
COMPLAINT**

    This cause came on pursuant to Plaintiff's Motion to Amend before the undersigned Robert C. Ervin, Superior Court Judge on January 6, 2023, Plaintiff being represented by James P. Galvin of Thurman, Wilson, Boutwell and Galvin and Defendant Mecklenburg County being represented by B. Chad Ewing of Womble, Bond, Dickinson, LLP and having considered arguments and briefs and the court record, the Court Orders as follows:

    Plaintiff's Motion to Amend its Complaint is granted and Plaintiff has leave to amend its Complaint to add two claims against Mecklenburg County pursuant to 42 U.S.C. §1983 and N.C. Const. Art 1 §19.

    IT IS THEREFORE, ORDERED, that Plaintiff's Motion to Amend Its Complaint be allowed as indicated above and that Plaintiff shall file it's amended complaint on or before January 27, 2023. To the extent that the County contends that the Complaint, as amended, fails to state a claim upon which relief can be granted, it may file a motion to dismiss pursuant to the applicable rules of civil procedure.

This the  11th  day of  January , 2023.

The Honorable Robert C. Ervin Superior
Court Judge Presiding

DNORTH CAROLINA

MECKLENBURG COUNTY

HELEN BARBARA RYAN,

Plaintiff,

v.

MECKLENBURG COUNTY and
THE KANIA LAW FIRM, P.A.,

Defendants.

FILED

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21-CVS-18976

2023 JAN 19 ⊃ 2: 59

MECKLENBURG CO., C.S.C

BY

**ORDER GRANTING MOTON FOR
JUDGMENT ON THE PLEADINGS**

This case came on for hearing before the undersigned on October 6, 2022 at 11:30 a.m. on Defendant Mecklenburg County's (the "County") Motion for Judgment on the Pleadings (the "Motion"). The County was represented at the hearing by B. Chad Ewing of Womble Bond Dickinson (US), LLP. Plaintiff Helen Barbara Ryan was represented at the hearing by James P. Galvin of Thurman, Wilson, Boutwell & Galvin, P.A. Defendant The Kania Law Firm, P.A. was represented by Taylor J. Sweet. The County argued that Ryan's Complaint was barred by the doctrine of governmental immunity. At the conclusion of the October 6, 2022 hearing, the Court ordered the County to produce certain insurance policies to Ryan's counsel for review and ordered both parties to provide post-hearing briefing on the matter. The County provided said insurance policies to Ryan's counsel on October 11, 2022. Ryan served her post-hearing Brief in Opposition to Defendant Mecklenburg County's Motion for Judgment on the Pleadings on November 1, 2022. The County served its Post-Hearing Response Brief in Support of Motion for Judgment on the Pleadings on November 8, 2022.

The Court scheduled an additional hearing on the County's Motion for Judgment on the Pleadings on January 6, 2023. At the January 6, 2023 hearing, the County again was represented by Mr. Ewing, and Ryan again was represented by Mr. Galvin. After reviewing the pleadings

and the briefing on the Motion and after hearing the arguments of counsel, the Court is of the opinion that Defendant Mecklenburg County's Motion for Judgment on the Pleadings should be and, hereby is, **GRANTED** because the doctrine of governmental immunity bars Plaintiff's claims against Mecklenburg County for (i) Fraud, (ii) Negligent Misrepresentation, (iii) Negligence, and (iv) Negligent Infliction of Emotional Distress.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT JUDGMENT** is hereby **ENTERED** in favor of Mecklenburg County and against Plaintiff Helen Barbara Ryan on Ryan's claims against the County for (i) Fraud, (ii) Negligent Misrepresentation, (iii) Negligence, and (iv) Negligent Infliction of Emotional Distress. This Order makes no findings or conclusions with respect to and is not addressed to Ryan's amended claims pursuant to 42 U.S.C. §1983 and the North Carolina Constitution.

This the 10 day of January, 2023

HONORABLE ROBERT C. ERVIN
SUPERIOR COURT JUDGE

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

HELEN BARBARA RYAN )
)
      Plaintiff, )
)
vs. )
)
MECKLENBURG COUNTY, and )
THE KANIA LAW FIRM, P.A. )
)
      Defendants )
_____ )

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 18976
2023 JAN 19 ☐ 2: 59

MECKLENBURG CO.. C.S.C

BY _____

**ORDER GRANTING
MOTION TO AMEND
COMPLAINT**

     This cause came on pursuant to Plaintiff's Motion to Amend before the undersigned Robert C. Ervin, Superior Court Judge on January 6, 2023, Plaintiff being represented by James P. Galvin of Thurman, Wilson, Boutwell and Galvin and Defendant Mecklenburg County being represented by B. Chad Ewing of Womble, Bond, Dickinson, LLP and having considered arguments and briefs and the court record, the Court Orders as follows:

     Plaintiff's Motion to Amend its Complaint is granted and Plaintiff has leave to amend its Complaint to add two claims against Mecklenburg County pursuant to 42 U.S.C. §1983 and N.C. Const. Art 1 §19.

     IT IS THEREFORE, ORDERED, that Plaintiff's Motion to Amend Its Complaint be allowed as indicated above and that Plaintiff shall file it's amended complaint on or before January 27, 2023. To the extent that the County contends that the Complaint, as amended, fails to state a claim upon which relief can be granted, it may file a motion to dismiss pursuant to the applicable rules of civil procedure.

This the _11th_ day of _January_ , 2023.

_____
The Honorable Robert C. Ervin Superior
Court Judge Presiding

Case 3:23-cv-00064   Document 1-1   Filed 02/03/23   Page 223 of 230

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

HELEN BARBARA RYAN,

Plaintiff,

vs.

MECKLENBURG COUNTY, and
THE KANIA LAW FIRM, P.A.,

Defendants.

FILED IN THE GENERAL COURT OF JUSTICE
MECKLENBURG COURT DIVISION
21-CVS-18976

2023 FEB -2 ⊃ 4: 10

MECKLENBURG CO.. C S C
BY.

AMENDED
COMPLAINT

 

**NOW COMES,** Plaintiff Helen Barbara Ryan, by and through the undersigned counsel, and with leave of Court, hereby submit its Amended Complaint complaining of Defendants Mecklenburg County and The Kania Law Firm ("Kania"), seeking relief as follows:

## PARTIES AND JURISDICTION AND VENUE

1.  Plaintiff Helen Barbara Ryan is a citizen and resident of Mecklenburg County, North Carolina.

2.  Defendant Mecklenburg County is a Body Politic and Corporate located in Mecklenburg County, North Carolina.

3.  Upon information and belief, The Kania Law Firm, P.A. is a Professional Association located in Asheville, North Carolina.

4.  This is an action for negligent misrepresentation, negligence, fraud, negligent infliction of emotional distress, and punitive damage.

5.  The real estate and improvements located at 4810 Drakestone Court, Charlotte, North Carolina 28037 (the "Property") is the subject matter of this Complaint.

6.  This Court has proper jurisdiction and is the appropriate venue for the adjudication of Plaintiff's claims.

## FACTUAL ALLEGATIONS

7.  On or about January 8, 2018, Defendants instituted a tax foreclosure under case caption 18-CVD-495 (the "Foreclosure Action") on the Property.

1

8. Defendant Kania was at all times relevant to this Complaint acting as the agent of Defendant Mecklenburg County for the purposes of conducting a foreclosure sale of the Property.

9. Plaintiff was not provided proper notice of the Foreclosure Action and that procedural failure is subject to a current appeal pending before the North Carolina Court of Appeals.

10. The Court of Appeals' purview regards whether the sale pursuant to the Foreclosure Action should be set aside. It will not take up the consideration of the civil damages related to the claims pled herein.

11. The instant action concerns matters outside of the consideration of the Foreclosure Action.

12. Specifically, this action concerns the conduct of the Defendants regarding their refusal to allow Plaintiff to exercise her right of redemption regarding her Property and the Foreclosure Action.

13. Conduct and dates relevant to the claims of this action include but are not limited to the following:

    a. On or about September 12, 2018, Plaintiff first became aware of the Foreclosure Action and contacted the Mecklenburg County Tax Office and was informed that she owed a past due tax amount of $21,438.25.

    b. On or about September 14, 2018, Plaintiff paid (via telephone) $21,438.25 and was told by the Mecklenburg Tax Office's authorized representative that this amount constituted payment in full. The payment was debited from Plaintiff's account that day and was posted as received on September 17, 2018.

    c. On September 18, 2018, the Defendants proceeded to conduct the foreclosure sale on the Property anyway.

    d. On October 15, 2018, a Jacob Belk filed a notice of final upset bid in the amount of $407,925.00.

    e. On October 31, 2018, Jacob Belk was the first to inform Plaintiff that a foreclosure sale was conducted on the Property.

    f. After several unsuccessful attempts to make live contact with a representative from Kania's office, Plaintiff sent an email on November 23, 2018 communicating that the tax debt regarding the Property had been paid and that the foreclosure sale proceeded in error and that she otherwise wished to exercise her redemption rights.

    g. On or about November 28, 2018, Elisabeth Nelson, a tax collections paralegal for Kania, responded to Plaintiff and confirmed receipt of the prior communications and

2

represented to Plaintiff that the "bid has closed as of 10/25/18, and your right of redemption no longer exists" and that "the payment that you had made for that year [2018] appears to be refunded".

h. Upon information and belief, Jacob Belk tendered payment of the high bid to Kania on November 28, 2018, the same day that Ms. Nelson decided to respond to Plaintiff.

i. Kania did not file a motion to confirm the foreclosure sale until December 4, 2018.

j. By order of the court the foreclosure sale was confirmed on December 6, 2018.

14. Subsequent to the above events, Plaintiff was evicted from the Property and her family home was demolished.

15. On January 3, 2019, Plaintiff was refunded the taxes for 2014, 2015, and 2016 that had been previously paid.

## COUNT ONE: FRAUD
### *(Defendant The Kania Law Firm, P.A.)*

16. Plaintiff herein re-alleges and incorporates by reference all prior paragraphs of this Complaint.

17. Defendant Kania, by and through one or more of its agents and representatives, represented to Plaintiff that she could not exercise her right of redemption on the Property.

18. Defendant Kania" representations were false at the time they were made. The false representations and/or concealment by Defendants concerned material past or existing facts.

19. Defendant Kania's false representations and/or concealment were reasonably calculated to deceive and were made with the intent to deceive Plaintiff and to induce Plaintiff to act on them.

20. Defendant Kania was the only one who could communicate about and/or process the payments required to be made by Plaintiff in order for her to exercise her right of redemption.

21. Defendant Kania knew the representations were false at the time they made them.

22. Defendant Kania's false representations and/or concealment of material facts did in fact deceive Plaintiff, and Plaintiff reasonably relied upon Defendants' false representation and/or concealment and she acted on them.

3

23. As a result of Defendant Kania's false and fraudulent representations and/or concealment, Plaintiffs have suffered damages, including being fraudulently induced into entering the Agreement, which Plaintiffs would not have done absent the false representations, which has actually and proximately caused damage to Plaintiff's in an amount exceeding $25,000.00, and Plaintiff is entitled to a Judgment against Defendants directing Defendants to pay damages in excess of $25,000.00.

24. Defendant Kania's actions as described herein were willful, wanton, and in reckless disregard of Plaintiff's rights, and entitle Plaintiff to an award of punitive damages and attorneys' fees in an amount to be determined by this Court.

## COUNT TWO: NEGLIGENT MISREPRESENTATION
### (Defendant The Kania Law Firm, P.A.)

25. Plaintiff hereby incorporates all prior paragraphs.

26. Defendant Kania made representations to Plaintiff regarding the status of the Property, payment of taxes, and Plaintiff's redemption rights.

27. Defendant Kania concealed or otherwise omitted proper representations by not allowing the Plaintiff to redeem the Property.

28. The representations, concealment and/or omissions were false and were reasonably calculated to deceive.

29. At the time the representations, concealment and/or omissions were made Defendant Kania knew or should have known they were false.

30. The representations, concealment and/or omissions were made with the intent to deceive Plaintiff.

31. Plaintiff reasonably relied upon those representations, concealment and/or omissions to their detriment and was in fact deceived.

32. The negligent misrepresentations of Defendant Kania damaged Plaintiff in excess of $25,000.00.

## COUNT THREE: NEGLIGENCE
### (Defendant The Kania Law Firm, P.A.)

33. Plaintiff herein re-alleges and incorporates by reference all prior paragraphs of this Complaint.

34. Defendant Kania owed a duty to Plaintiff to conduct a foreclosure sale and processing both redemption payments and further requests to exercise redemption rights with the exercise of reasonable care.

4

35. Defendant Kania breached that duty as described in this Complaint.

36. As a direct and proximate result of Defendant Kania's negligence, Plaintiff has been damaged and is entitled to a Judgment against both Defendants in the amount of Plaintiff's actual damages, consequential damages, attorneys fees, costs, interest and additional damages that may be discovered.

## COUNT FOUR: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Defendant The Kania Law Firm, P.A.)

37. The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

38. Defendant Kania was negligent as stated above.

39. It was foreseeable to Defendant Kania that this negligence would cause Plaintiff severe emotional distress.

40. The conduct of Defendant Kania in fact caused Plaintiff severe emotional distress.

41. As a proximate result of the negligence of Defendant Kania, Plaintiff sustained emotional damages and is entitled to recover a sum in excess of $25,000.00.

## COUNT FIVE: 42 U.S.C. § 1983
### (Against Defendant Mecklenburg County)

42. The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

43. Defendant Mecklenburg County engaged in a policy or custom of failing to properly train or instruct those responses for receiving property tax payments on the effect of payment of the amount owed on the validity of the tax lien and the proper procedure to halt pending foreclosure actions. Upon information and belief, Mecklenburg County provided no training to Defendant Kania regarding the intricacies of conducting a tax foreclosure.

44. Defendant Mecklenburg County's policy and custom as stated above demonstrates Defendant Mecklenburg County's indifference to the rights of its citizens, like Plaintiff.

45. Had Defendant Mecklenburg County provided proper training and instruction to those responsible for receiving tax payments, Plaintiff would not have lost her home through the improper foreclosure.

46. Defendant Mecklenburg County engaged in a policy or custom of failing to properly train or instruct those responsible for collecting property tax payments.

47. Defendant Mecklenburg County engaged in a policy or custom of failing to properly train or instruct on the impact of full payment of property taxes on the validity of a tax lien.

5

48. Defendant Mecklenburg County engaged in a policy or custom of failing to properly train or instruct on the necessary steps to cease a tax foreclosure upon payment in full of the amount owed.

49. Defendant Mecklenburg County's policy or custom with respect to collection and enforcement of tax liens demonstrates an indifference to the rights of its citizens, such as Plaintiff.

50. As a direct and proximate result of Defendant Mecklenburg County's policy or custom, Plaintiff was deprived of her rights, including her due process rights and her right to the Property.

51. By and through Defendant Mecklenburg County's actions, Plaintiff was impeded, estopped, and/or otherwise prevented from exercising her rights over the Property.

52. As direct and proximate result of Defendant Mecklenburg County's policy or custom, Plaintiff has suffered damages and is entitled to recover a sum in excess of $25,000.00.

## COUNT SIX: DUE PROCESS VIOLATION
### (U.S. Const. amend XIV and N.C. Const. art. I, § 19)
### (*Against Defendant Mecklenburg County*)

53. The foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

54. Defendant Mecklenburg County's actions as described elsewhere in this Complaint deprived Plaintiff of the Property (her home) without due process of law.

55. Plaintiff was deprived of her due process rights when Defendant Mecklenburg County proceeded with the Foreclosure Action:

   a. Without providing proper notice of the same to Plaintiff.

   b. Despite having no enforceable tax lien following Plaintiff's timely exercise of her redemption rights and/or having tendered payment in full of amounts owed.

56. By and through Defendant Mecklenburg County's actions, Plaintiff was impeded, estopped, and/or otherwise prevented from exercising her rights over the Property.

57. As a direct and proximate result of Defendant Mecklenburg County's deprivation of Plaintiff's due process rights, Plaintiff has suffered damages and is entitled to recover a sum in excess of $25,000.00.

**WHEREFORE,** Plaintiff respectfully pray the Court for relief as follows:

6

1. That the Court find in favor of Plaintiff on all counts with Defendants being liable for damages;

2. That Plaintiffs have and recover from Defendant Kania punitive damages;

3. That Plaintiffs have and recover the costs of expenses of this action, including reasonable attorney's fees;

4. That Plaintiffs be granted a trial by jury on all issues of fact arising herein; and

5. That Plaintiffs have such other and further relief that the Court deems just and proper.

This the 1 day of February, 2023.

James P. Galvin
State Bar No. 33933
Ryan B. Tiede
State Bar No. 43258
Thurman, Wilson, Boutwell & Galvin, P.A.
301 S. McDowell Street, Ste. 608
Charlotte, North Carolina 28204
(704) 377-4164
james@twbglaw.com
ryan@twbglaw.com
*Attorneys for the Plaintiff*

7